1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

***Attorneys for Plaintiff and the Proposed Class***

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, individually, and on behalf of all others similarly situated, | Case No.  25-cv-1138 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | DEMAND FOR JURY TRIAL |
| v. | |
| THE J.M. SMUCKER COMPANY, | |
| Defendant. | |

CROSNER LEGAL, P.C.

1   Plaintiff Adina Ringler ("Plaintiff") individually, and on behalf of all others
2   similarly situated, by and through undersigned counsel, hereby brings this action
3   against The J.M. Smucker Company ("Defendant"), and upon information and
4   belief and investigation of counsel, alleges as follows:

5   ### INTRODUCTION

6   1.    This is a consumer class action for violations of the California
7   Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"),
8   California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*
9   ("UCL"), and breach of express warranties.

10  2.    Defendant manufactures, distributes, advertises, and sells a line of
11  Smucker's Natural Fruit Spread products, available in both jar and squeezable
12  packaging. The Products at issue include Smucker's Natural Apricot Fruit Spread,
13  Smucker's Natural Blackberry Fruit Spread, Smucker's Natural Blueberry Fruit
14  Spread, Smucker's Natural Tart Red Cherry Fruit Spread, Smucker's Natural
15  Concord Grape Fruit Spread, Smucker's Natural Orange Marmalade Fruit Spread,
16  Smucker's Natural Red Raspberry Fruit Spread, Smucker's Natural Strawberry
17  Fruit Spread, Smucker's Natural Triple Berry Fruit Spread, Smucker's Natural
18  Concord Grape Squeezable Fruit Spread, Smucker's Natural Red Raspberry
19  Squeezable Fruit Spread, and Smucker's Natural Strawberry Squeezable Fruit
20  Spread (the "Products").

21  3.    The Products' front labels contain images of fresh fruit and
22  prominently represent that the Products are "**natural**" and "**made with
23  ingredients FROM NATURAL SOURCES.**"

24  4.    These representations are false because the Products contain citric
25  acid, an artificial ingredient not made from natural sources.

26  5.    Defendant's packaging, labeling, and advertising scheme is intended
27  to give consumers the reasonable belief that they are buying premium Products
28  that are natural, made with ingredients from natural sources, and free from

1

artificial ingredients.

6.    Like other reasonable consumers, Plaintiff was deceived by Defendant's unlawful conduct and brings this action individually and on behalf of all similarly situated consumers to remedy Defendant's unlawful acts.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate, exclusive of interest and costs. The Products are sold at numerous retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111 F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection action was $6,806,031.96). Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

8.    This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California and supplies goods within the State of California. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this county. The marketing of the Products, including the decision of what to include and not include on the label, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California,

2

CROSNER LEGAL, P.C.

including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff purchased the Products within this District.

**PARTIES**

10.     Defendant is an Ohio company with its principal place of business located at 1 Strawberry Lane, Orrville, OH 44667. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

11.     Plaintiff Adina Ringler purchased the Smucker's Natural Triple Berry Fruit Spread product from a Smart & Final store in Northridge, California in or around May 2024. When purchasing the Product, Plaintiff did not expect that the Product's front label "natural" and "made with ingredients from natural sources" representations were false. Plaintiff did not expect Defendant to publicly place deceptive statements about the contents of its Products on the front label of the Product.

12.     Plaintiff saw and relied on the "natural" and "made with ingredients from natural sources" claims on the front label of the Product. Plaintiff would not have purchased the Product, or would have paid less for the Product, had she known that the Product contains an artificial ingredient in direct contradiction to the "natural" and "made with ingredients from natural sources" statements on the

1   Product's label. As a result, Plaintiff suffered injury in fact when she spent money
2   purchasing a Product she would not have purchased, or would have paid less for,
3   absent Defendant's misconduct.

4          13.    Plaintiff desires to, and would, purchase the Products again if the
5   Products' labels were accurate and if the Products truthfully contained only natural
6   ingredients. However, as a result of Defendant's ongoing misrepresentations,
7   Plaintiff is unable to rely on the Products' labeling when deciding in the future
8   whether to purchase the Products. Considering that the Plaintiff continues to see
9   the Products for sale, she is at an imminent risk of future injury.

10                          **FACTUAL ALLEGATIONS**

11         14.    The Products' front labels contain images of fresh fruit and
12  prominently represent that the Products are "natural" and "made with ingredients
13  from natural sources" thereby misleading reasonable consumers into believing that
14  the Products contain only natural ingredients and are free from artificial
15  ingredients. However, the Products contain citric acid, an artificial ingredient not
16  made from natural sources.

17         15.    The Products' front labels also contain a list of undesired items that
18  the Products boastfully do not contain, including "Non-GMO," "NO High
19  Fructose Corn Syrup," and "NO artificial flavors or colors."

20         16.    True and correct copies of the Smucker's Natural Triple Berry Fruit
21  Spread product's front and rear labels are shown below:

22  //
23  //
24  //
25  //
26  //
27  //
28  //

CROSNER LEGAL, P.C.

4
CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19




20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

5

17.    True and correct copies of the Smucker's Natural Concord Grape Squeezable Fruit Spread product's front and rear labels are shown below:

 

//

//

//

//

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

## THE CITRIC ACID IN THE PRODUCTS IS NOT NATURAL

18.     Defendant uses artificial manufactured citric acid in the Products.[1] Commercial food manufacturers use a synthetic form of citric acid that is derived from heavy chemical processing.[2] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[3] Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[4] Defendant does not use natural citric acid extracted from fruit in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919." *Id*. As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is *not* the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergillus*

---

[1] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[3] *Id*; Pau Loke Show, *et al*., *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[4] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

7

1  *niger* is a known allergen.[5]

2      19.    A technical evaluation report for citric acid compiled by the United

3  States Department of Agriculture Marketing Servies ("USDA AMS") further

4  explains that it is not commercially feasible to use natural citric acid extracted from

5  fruits:

> "Traditionally by extraction from citrus juice, [is] no longer
> commercially available. It is now extracted by fermentation of a
> carbohydrate substance (often molasses) by citric acid bacteria,
> *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast).
> Citric acid is recovered from the fermentation broth by a lime
> and sulfuric acid process in which the citric acid is first
> precipitated as a calcium salt and then reacidulated with sulfuric
> acid."[6]

12      20.    When asked "Is this substance Natural or Synthetic?" USDA AMS

13  reviewers state: "synthetic."[7]

14      21.    The FDA has determined that manufactured citric acid is not natural;

15  it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak

16  Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy

17  involving the use of the word natural means that nothing artificial or synthetic has

18  been added to the product, and that a product that labels itself "100% Natural" or

19  "All Natural" violates that policy if it contains citric acid, and that the presence of

20  citric acid precludes the use of the term natural to describe the product.[8]

21      22.    The FDA explains that the "Solvent extraction process for citric acid"

22  is accomplished via "recovery of citric acid from conventional *Aspergillus*

---

[5] *Id*. (emphasis added)

[6] **Exhibit D** at page 6.

[7] **Exhibit D** at pages 4-5.

[8] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

*niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n*- octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

23.     The *Toxicology Reports Journal* study explains that "the potential presence of impurities or fragments from the *Aspergillus niger* in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[9] The study further explains:

"Given the thermotolerance of A. niger, there is great potential that byproduct of A. niger remain in the final [manufactured citric acid] product. Furthermore, given the pro-inflammatory nature of A. niger even when heat-killed, repetitive ingestion of [manufactured citric acid] may trigger sensitivity or allergic reactions in susceptible individuals. Over the last two decades, there has been a significant rise in the incidence of food allergies" *Id*.

24.     The EPA provides the following simply schematic of the manufacturing process for citric acid which includes the use of synthetic solvents

---

[9] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1  like Sulfuric Acid:[10]



10  25.  Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[11]

26.  Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of Products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[12]

---

[10] https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf.

[11] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source (Last visited May 15, 2024).

[12] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at*

CROSNER LEGAL, P.C.

CLASS ACTION COMPLAINT

27.    Clinical nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[13] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the *Aspergillus niger* used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."

28.    "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis." *Id*.

29.    "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001)."[14]

30.    Below is a schematic representation of the metabolic reactions

---

https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source.

[13] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

[14] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. FRONTIERS IN LIFE SCIENCE, 8(3), 271–283, *available at* https://doi.org/10.1080/21553769.2015.1033653

1   involved in citric acid production, the enzymes (italics), the known feedback loops
2   (dashed lines) and their locations within the cellular structure of *Aspergillus*
3   *niger*:[15]



31.    Dictionary definitions define "artificial" as something made by man.
For example, "artificial" is defined as "made by human skill; produced by humans
…"[16] Merriam-Webster's online dictionary states that "artificial" means "humanly

---

[15] *Id.* at Figure 3.

[16]    *Artificial,* DICTIONARY.COM, *available at*
https://www.dictionary.com/browse/artificial

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

contrived …"[17] Cambridge Dictionary states that "artificial" means "made by people, often as a copy of something natural."[18]

32.    Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:

 



33.    Citric acid acts as an artificial flavoring and preserving agent when

---

[17]*Artificial*,    MERRIAM-WEBSTER'S    DICTIONARY,    *available    at*
https://www.merriam-webster.com/dictionary/artificial

[18]*Artificial*, CAMBRIDGE DICTIONARY, *available at*
https://dictionary.cambridge.org/us/dictionary/english/artificial

added to food products, including the Products at issue.[19] Citric acid has a sour, acidic, and slightly tart flavor. *Id*.

34.    The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[20]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

35.    In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain Products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[21]

_____

[19] https://www.webstaurantstore.com/blog/3350/what-is-citric-acid.html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and%20acidic.

[20] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[21] *See* **Exhibit A** at page 2 (highlighted).

CLASS ACTION COMPLAINT

36.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common *chemical* preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[22]

**REASONABLE CONSUMERS ARE DECEIVED AND SUFFERED ECONOMIC INJURY**

37.    Consumers, like Plaintiff, relied on Defendant's "natural" and "made with ingredients from natural sources" labeling statements. Such representations are material to reasonable consumers.

38.    Plaintiff and putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent.

39.    Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products and/or the price premium associated with the deceptive representations on the Products' labels. Consumers, including Plaintiff, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial ingredient not made from natural sources.

**NO ADEQUATE REMEDY AT LAW**

40.    Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

41.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes

---

[22] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at* https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)

15

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Products' labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiff and class members may also be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

42.    A primary litigation objective in this litigation is to obtain injunctive relief in the form of a label or ingredient change. Injunctive relief is appropriate on behalf of Plaintiff and members of the class because Defendant continues to misrepresent the Products as "natural" and "made with ingredients from natural sources" when the Products actually contain the artificial ingredient citric acid. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

<u>**CLASS ACTION ALLEGATIONS**</u>

43.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure on behalf of the following Classes (or alternative Classes or Subclasses):

**<u>The Nationwide Class</u>**
All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is

16

disseminated.

**The California Subclass**

All California citizens who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

44.    The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

45.    Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

46.    Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

47.    The Class is appropriate for certification because Plaintiff can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

48.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

49.    Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

CLASS ACTION COMPLAINT

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiff and the Class are entitled to injunctive relief;

e. Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

50.    Typicality: Plaintiff is a member of the Class that Plaintiff seeks to represent. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

51.    Adequacy: Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class Members Plaintiff seeks to represent; the consumer fraud claims are common to all other members of the Class, and Plaintiff has a strong interest in vindicating the rights of the class; Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and proposed Class Counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

52.    The Class is properly brought and should be maintained as a class action because a class action is superior to traditional litigation of this controversy. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of hundreds of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions;

    c.  When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

    d.  This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

    e.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

    f.  This class action will assure uniformity of decisions among Class Members;

    g.  The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

    h.  Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action;

53.    Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    the Class thereby making final declaratory and/or injunctive relief with respect to

2    the members of the Class as a whole, appropriate.

3        54.    Plaintiff seeks preliminary and/or permanent injunctive and equitable

4    relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin

5    and prevent Defendant from engaging in the acts described, and to require

6    Defendant to provide restitution to Plaintiff and the Class members.

7        55.    Unless the Class is certified, Defendant will retain monies that were

8    taken from Plaintiff and Class members as a result of Defendant's wrongful

9    conduct. Unless a classwide injunction is issued, Defendant will continue to

10   commit the violations alleged and the members of the Class and the general public

11   will continue to be misled.

### FIRST CLAIM FOR RELIEF

**Violation of California's Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq.***

15       56.    Plaintiff realleges and incorporates by reference all allegations

16   contained in this complaint, as though fully set forth herein.

17       57.    Plaintiff brings this claim under the CLRA individually and on behalf

18   of the California Class against Defendant.

19       58.    At all times relevant hereto, Plaintiff and the members of the Class

20   were "consumer[s]," as defined in California Civil Code section 1761(d).

21       59.    At all relevant times, Defendant was a "person," as defined in

22   California Civil Code section 1761(c).

23       60.    At all relevant times, the Products manufactured, distributed,

24   marketed, advertised, and sold by Defendant constituted "goods," as defined in

25   California Civil Code section 1761(a).

26       61.    The purchases of the Products by Plaintiff and the members of the

27   Class were and are "transactions" within the meaning of California Civil Code

28   section 1761(e).

CLASS ACTION COMPLAINT

62. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling that the Products were "natural" and "made with ingredients from natural sources." Defendant failed to disclose that the Products contain an artificial ingredient called citric acid. This is a material misrepresentation and omission as reasonable consumer would find the fact that the Products contain an artificial ingredient to be important to their decision in purchasing the Products. Defendant's representations violate the CLRA in the following ways:

a. Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b. Defendant represented that the Products are of a particular standard, quality, or grade, which it is not (Cal. Civ. Code § 1770(a)(7));

c. Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and

d. Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

63. Defendant violated the CLRA because the Products were prominently advertised as "natural" and "made with ingredients from natural sources" but the Products contain citric acid, an artificial ingredient not made from natural sources. Defendant knew or should have known that consumers would want to know that the Products contained an artificial ingredient.

64. Defendant's actions as described herein were done with conscious disregard of Plaintiff's and the Class members' rights and were wanton and malicious.

65. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still

representing that the Products have characteristics which they do not have.

66.    Pursuant to California Civil Code section 1782(d), Plaintiff and the members of the Class seek an order enjoining Defendant from engaging in the methods, acts, and practices alleged herein.

67.    Pursuant to California Civil Code section 1782, Plaintiff notified Defendant in writing by certified mail of the alleged violations of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of their intent to so act.

68.    More than thirty days has passed since Plaintiff sent Defendant a CLRA letter and Defendant has failed to take the corrective action described in Plaintiff's letter. Wherefore, Plaintiff seeks actual, punitive, and statutory damages as appropriate, as well as attorneys' fees and costs for Defendant's violations of the CLRA.

69.    Pursuant to section 1780(d) of the CLRA, below is an affidavit showing that this action was commenced in a proper forum.

## SECOND CLAIM FOR RELIEF

### Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

70.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

71.    Plaintiff brings this claim under the UCL individually and on behalf of the California Class against Defendant.

72.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising.

73.    Defendant committed unlawful business acts or practices by making the representations and omitted material facts (which constitutes advertising within the meaning of California Business & Professions Code section 17200), as set forth more fully herein, and by violating California's Consumers Legal

CROSNER LEGAL, P.C.

22

1  Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising
2  Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express
3  and implied warranties. Plaintiff, individually and on behalf of the other Class
4  members, reserves the right to allege other violations of law, which constitute other
5  unlawful business acts or practices. Such conduct is ongoing and continues to this
6  date.

7      74.    Defendant committed "unfair" business acts or practices by: (1)
8  engaging in conduct where the utility of such conduct is outweighed by the harm
9  to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral,
10  unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the
11  members of the Class; and (3) engaging in conduct that undermines or violates the
12  intent of the consumer protection laws alleged herein. There is no societal benefit
13  from deceptive advertising. Plaintiff and the other Class members paid for
14  Products that are not as advertised by Defendant. Further, Defendant failed to
15  disclose a material fact (that the Products contain an artificial ingredient) of which
16  it had exclusive knowledge. While Plaintiff and the other Class members were
17  harmed, Defendant was unjustly enriched by its false misrepresentations and
18  material omissions. As a result, Defendant's conduct is "unfair," as it offended an
19  established public policy. There were reasonably available alternatives to further
20  Defendant's legitimate business interests, other than the conduct described herein.

21      75.    Defendant committed "fraudulent" business acts or practices by
22  making the representations of material fact regarding the Products set forth herein.
23  Defendant's business practices as alleged are "fraudulent" under the UCL because
24  they are likely to deceive customers into believing the Products only contain
25  natural ingredients.

26      76.    Plaintiff and the other members of the Class have in fact been
27  deceived as a result of their reliance on Defendant's material representations and
28  omissions. This reliance has caused harm to Plaintiff and the other members of the

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Products and Defendant's unlawful, unfair, and fraudulent practices.

77.    Defendant's wrongful business practices and violations of the UCL are ongoing.

78.    Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

79.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the California Class, seeks (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California that do not comply with California law; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

### THIRD CLAIM FOR RELIEF
### Violation of the False Advertising Law
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

80.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

81.    Plaintiff brings this claim under the FAL individually and on behalf of the California Class against Defendant.

82.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to

24

1  disseminate any statement "which is untrue or misleading, and which is known, or

2  which by the exercise of reasonable care should be known, to be untrue or

3  misleading" Cal. Bus. & Prof. Code § 17500.

4       83.    It is also unlawful under the FAL to disseminate statements

5  concerning property or services that are "untrue or misleading, and which is

6  known, or which by the exercise of reasonable care should be known, to be untrue

7  or misleading." *Id*.

8       84.    As alleged herein, Defendant falsely advertised the Products by

9  falsely representing that the Products are "natural" and "made with ingredients

10 from natural sources," when in fact, the Products contain citric acid, an artificial

11 ingredient.

12      85.    Plaintiff has standing to pursue this claim as Plaintiff has suffered

13 injury in fact as a result of Defendant's actions as set forth herein. Specifically,

14 prior to the filing of this action, Plaintiff purchased one of the Products in reliance

15 on Defendant's false and misleading labeling claim that the Products were

16 "natural" and "made with ingredients from natural sources."

17      86.    Defendant's business practices as alleged herein constitute deceptive,

18 untrue, and misleading advertising pursuant to the FAL because Defendant has

19 advertised the Products in a manner that is untrue and misleading, which

20 Defendant knew or reasonably should have known, and omitted material

21 information from its advertising.

22      87.    Defendant profited from its sale of the falsely and deceptively

23 advertised Products to unwary consumers.

24      88.    As a result, Plaintiff, the Class, and the general public are entitled to

25 public injunctive and equitable relief, restitution, and an order for the

26 disgorgement of the funds by which Defendant was unjustly enriched.

27      89.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of

28 herself and the Classes, seeks an order enjoining Defendant from continuing to

CROSNER LEGAL, P.C.

25

engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth herein.

### FOURTH CLAIM FOR RELIEF

### Breach of Express Warranty

### Cal. Com. Code § 2313(1)

90.     Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

91.     Plaintiff brings this claim for breach of express warranty individually and on behalf of all Classes against Defendant.

92.     As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were "natural" and "made with ingredients from natural sources."

93.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representations that the Products were "natural" and "made with ingredients from natural sources."

94.     Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Class.

95.     In fact, the Products do not conform to Defendant's representations because the Products contain citric acid, an artificial ingredient. By falsely representing the Products in this way, Defendant breached express warranties.

96.     Plaintiff relied on Defendant's representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

97.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class were injured because they: (1) paid money for Products that were not as Defendant represented; (2) were deprived of the benefit of the bargain

CROSNER LEGAL, P.C.

because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful.

98.    Had Defendant not breached express warranties by making false representations as alleged herein, Plaintiff and Class Members would not have purchased the Products or would not have paid as much as they did for them.

**FIFTH CLAIM FOR RELIEF**

**Breach of Implied Warranty**

**Cal. Com. Code § 2314**

99.    Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

100.   Plaintiff brings this claim for breach of implied warranty individually and on behalf of all Classes against Defendant.

101.   Plaintiff and the Class purchased the Products manufactured, advertised, and sold by Defendant, as described herein.

102.   Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, misrepresented the characteristics of the Products to Plaintiff and the Class.

103.   Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

104.   However, Defendant breached that implied warranty in that the Products were not "natural" and contained citric acid, an artificial ingredient that is not made "from natural sources."

105.   As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the label of the Products.

CLASS ACTION COMPLAINT

1    106.   Plaintiff and the Class have sustained damages as a proximate result
2    of the foregoing breach of implied warranties in the amount of the Products' price
3    premium.

### SIXTH CLAIM FOR RELIEF
**Negligent Misrepresentation**

6    107.   Plaintiff realleges and incorporates by reference all allegations
7    contained in this complaint, as though fully set forth herein.

8    108.   Plaintiff brings this claim for negligent misrepresentation
9    individually and on behalf of all Classes against Defendant.

10    109.   Defendant had a duty to disclose to Plaintiff and Class Members
11    correct information as to the quality and characteristics of the Products because
12    Defendant was in a superior position than Plaintiff and Class Members such that
13    reliance by Plaintiff and Class Members was justified. Defendant possessed the
14    skills and expertise to know the type of information that would influence a
     consumer's purchasing decision.

15    110.   During the applicable class period, Defendant negligently or
16    carelessly misrepresented, omitted, and concealed from consumers material facts
17    regarding the quality and characteristics of the Products, including the fact that the
18    Products do contain artificial ingredients, despite being advertised as "natural" and
19    "made with ingredients from natural sources."

20    111.   Defendant made such false and misleading statements and omissions
21    with the intent to induce Plaintiff and Class Members to purchase the Products at
22    a premium price.

23    112.   Defendant was careless in ascertaining the truth of its representations
24    in that it knew or should have known that Plaintiff and Class Members would be
25    overpaying for the Products.

26    113.   Plaintiff and Class Members were unaware of the falsity in
27    Defendant's misrepresentations and omissions and, as a result, justifiably relied on
28    them when making the decision to purchase the Products.

114. Plaintiff and Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

### SEVENTH CLAIM FOR RELIEF

### Intentional Misrepresentation/Fraud

115. Plaintiff realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

116. Plaintiff brings this claim for intentional misrepresentation individually and on behalf of all Classes against Defendant.

117. Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

118. During the applicable class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including that the Products contain an artificial ingredient called citric acid, despite the Products' "natural" and "made with ingredients from natural sources" representations. These representations were material and were uniformly made.

119. As noted in detail above, these representations were false and misleading, as the Products contain citric acid, an artificial ingredient not made from natural sources. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

120. Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

121. Defendant's deceptive or fraudulent intent is evidenced by motive

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

and opportunity. Defendant knew that consumers would pay more for products if they believed they were natural and made with ingredients from natural sources. For that reason, Defendant misrepresented the Products so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Products' claims and rely thereon in their purchases of the Products.

122.    Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

123.    As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

124.    Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

125.    As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

126.    Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members Plaintiff and Class Members are therefore entitled to an award of punitive damages.

## REQUEST FOR RELIEF

127.    Plaintiff, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim as follows:

a.  Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.  Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent

30

business practices;

c. Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d. Ordering damages in amount which is different than that calculated for restitution for Plaintiff and the Class;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering other relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 10, 2025              **CROSNER LEGAL, P.C.**


By:      */s/ Lilach H. Klein*
—————————————————
          Lilach H. Klein

Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com* 9440 Santa
Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637

*Attorneys for Plaintiff and the Proposed Class*

CROSNER LEGAL, P.C.

31

CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

## Civil Code Section 1780(d) Venue Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Products. Plaintiff purchased one of the Products at issue in this District.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on February 10, 2025 in Sacramento, California.

Crosner Legal, P.C.

By:    */s/  Lilach H. Klein*
       LILACH H. KLEIN

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT