**CROSNER LEGAL, P.C.**
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH(KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Date:  May 7, 2025<br>Time:  1:30 p.m.<br>Ctrm:  7D<br>Judge:  Hon. Anne Hwang<br><br>Complaint Filed: Feb. 10, 2025<br>Trial Date:  None Set |

# TABLE OF CONTENTS

I. INTRODUCTION...................................................................................................1

II. BACKGROUND..................................................................................................1

III. LEGAL STANDARD...........................................................................................3

IV. ARGUMENT .......................................................................................................3

A. Plaintiff Plausibly Alleges the Products Contain Artificial Citric Acid ..........................................................................................................3

B. Reasonable Consumers are Likely to be Deceived by the Products' Labels....................................................................................7

    1. Plaintiff Sufficiently Alleges a Misrepresentation Theory ........7

    2. The Products' Rear Labels Do Not Shield Defendant From Liability .........................................................................10

    3. Plaintiff Adequately Alleges an Omission Theory...................11

C. Plaintiff States a Claim for Breach of Implied Warranty ...................13

D. The Economic Loss Doctrine Does Not Bar Plaintiff's Misrepresentation Claims ...................................................................15

E. Plaintiff Has Standing to Sue for Substantially Similar Products ......15

F. Plaintiff Has Standing to Seek Injunctive Relief................................16

G. Plaintiff's Request for Punitive Damages is Proper ...........................19

H. Plaintiff's Nationwide Class Claims Should Be Addressed at Class Certification.................................................................................20

V. CONCLUSION .................................................................................................21

-i-

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

*Allred v. Kellogg Company*,
No. 17-cv-1354, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) .........................18

*Anderson v. Apple Inc.*,
500 F. Supp. 3d 993 (N.D. Cal. 2020) ..................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................3, 7

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
2012 WL 2990766 (N.D. Cal. July 20, 2012) ......................................16

*Battle v. Taylor James, LLC*,
607 F.Supp.3d 1025 (C.D. Cal. 2022)..................................................21

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................3

*Bitton v. Gencor Nutrientes, Inc.*,
654 Fed.Appx. 358 (9th Cir. 2016) ....................................................13

*Branca v. Bai Brands, LLC*,
No. 3:18-cv-00757, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) .....................18

*Brazil v. Dole Packaged Foods, LLC*,
660 Fed. Appx. 531 (9th Cir. 2016) ..................................................8, 9

*Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*,
No. 1:16-cv-00371, 2016 WL 3519294 (E.D. Cal. June 27, 2016) ...................15

*Bryan v. Del Monte Foods, Inc.*,
No. 23-3685, 2024 WL 4866952 (9th Cir. Nov. 22, 2024)..............................11

*Carbine v. Target Corporation*,
No. 24-cv-03721, 2025 WL 501829 (C.D. Cal. Feb. 13, 2025) ............1, 4, 6, 19

*Cho v. Hyundai Motor Company, Ltd.*,
636 F.Supp.3d 1149 (C.D. Cal. 2022)..................................................16

-ii-

*Corpuz v. Bayer Corp.*,
 No. 22-cv-1085, 2023 WL 2292579 (S.D. Cal. Feb. 28, 2023) ......................... 7

*Dana v. Hershey Co.*,
 180 F. Supp. 3d 652 (N.D. Cal. 2016) ...................................................... 11, 12

*Davidson v. Kimberly-Clark Corporation*,
 889 F.3d 956 (9th Cir. May. 9, 2018) ...................................................... 17, 18

*Davis v. HSBC Bank Nevada, N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ......................................................................... 9

*DiGiacinto v. RB Health (US), LLC*,
 668 F.Supp.3d 950 (N.D. Cal. 2023) ...................................................... 14, 15

*Doe v. SuccessfulMatch.com*,
 70 F. Supp. 3d 1066 (N.D. Cal. 2014) ......................................................... 12

*Eminence Capital, LLC v. Aspeon, Inc.*,
 316 F.3d 1048 (9th Cir. 2003) ...................................................................... 21

*In re Ferrero Litigation*,
 794 F.Supp.2d 1107 (S.D. Cal. 2011) .......................................................... 14

*Fitzhenry-Russell v. Coca-Cola Co.*,
 No. 5:17-cv-00603, 2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) ................. 20

*Fried v. Snapple Beverage Corp.*,
 753 F.Supp.3d 1145 (S.D. Cal. 2024) .....................................................*passim*

*Gaige v. Exer Holding Co., LLC*,
 No. 2:24-CV-06099, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .................... 21

*Gonzalez v. Drew Indus. Inc.*,
 750 F. Supp. 2d 1061 (C.D. Cal. 2007) ........................................................ 14

*Gottsdanker v. Cutter Laboratories*,
 182 Cal.App.2d 602 (1960) ........................................................................... 14

*Gunaji v. State Farm General Insurance Company*,
 No. EDCV 24-759, 2024 WL 3468838 (C.D. Cal. June 4, 2024) ................... 20

-iii-

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022)................................................................19

*Hammerling v. Google LLC*,
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................12

*Hannibal Pictures, Inc. v. Sonja Prods. LLC*,
   432 Fed.Appx. 700 (9th Cir. 2011) ........................................................15

*Harmsen v. Smith*,
   693 F.2d 932 (9th Cir. 1982)..................................................................20

*Hayes v. Kraft Heinz Company*,
   No. 1:23-cv-16596, 2024 WL 4766319 (N.D. Ill. Nov. 13, 2024) ..............4, 5, 6

*Hilsley v. Gen. Mills, Inc.*,
   376 F. Supp. 3d 1043 (S.D. Cal. 2019) ...................................................7

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th
   Cir. 2018).........................................................................................12, 13

*Jou v. Kimberly–Clark Corp.*,
   13–03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013).....................8, 9

*Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*,
   No. 2:20-cv-00690, 2022 WL 172315 (E.D. Cal. Jan. 19, 2022) .................20

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005)..................................................................6

*Lemus v. Rite Aid Corp.*,
   613 F.Supp.3d 1269 (C.D. Cal. 2022).......................................................15

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014)...................................................................10

*Lorentzen v. Kroger Co.*,
   532 F. Supp. 3d 901 (C.D. Cal. 2021)......................................................16

-iv-

*Lozano v. Walmart, Inc.*,
   No. CV 23-4500, 2024 WL 412606 (C.D. Cal. Feb. 1, 2024)...........................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)...............................................................................3

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023)........................................................................10, 11

*McKinney v. Corsair Gaming, Inc.*,
   No. 22-CV-00312, 2022 WL 2820097 (N.D. Cal. July 19, 2022)....................12

*Meintser v. T-Mobile USA, Inc.*,
   No. 2:23-cv-02562, 2024 WL 4289579 (E.D. Cal. Sept. 25, 2024) ..................20

*Miller v. Ghiradelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ..............................................................16

*Mollicone v. Universal Handicraft, Inc.*,
   No. 16-CV-07322, 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ......................16

*Moore v. Mars Petcare U.S., Inc.*,
   966 F.3d 1007 (9th Cir. 2020)............................................................................18

*Muldoon v. DePuy Orthopaedics, Inc.*,
   2024 WL 3522204 (N.D. Cal. July 23, 2024)....................................................20

*Murphy v. Olly Public Benefit Corp.*,
   651 F.Supp.3d 1111 (N.D. Cal. 2023) ...............................................................19

*Musgrave v. Taylor Farms Pac., Inc.*,
   No. 18-CV-02841, 2019 WL 8230850 (N.D. Cal. 2019) ..................................14

*Nacarino v. Chobani, LLC*,
   No. 20-cv-7437, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022) ...........................19

*Oh v. Fresh Bellies, Inc.*,
   2024 WL 4500727 (C.D. Cal. Oct. 15, 2024) ...................................................16

*Oppenheimer v. Southwest Airlines Co.*,
   No. 13-260, 2013 WL 3149483 (S.D. Cal. June 17, 2013)...............................19

-v-

*Pelayo v. Conagra Brands, Inc.*,

    No. 23-cv-05833, 2024 WL 3544621 (N.D. Cal. May 2, 2024)......................3, 9

*Pelayo v. Nestle USA, Inc.*,

    989 F. Supp. 2d 973 (C.D. Cal. 2013)..................................................................8

*Plotts v. Am. Honda Motor Co.*,

    No. CV 22-04529, 2023 WL 4843342 (C.D. Cal. June 9, 2023)......................21

*Precht v. Kia Motors Am., Inc.*,

    No. CV 14-1148, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014)....................21

*Rojas v. General Mills, Inc.*,

    No. 12-cv-05099, 2014 WL 1248017 (N.D. Cal. March 26, 2014)....................9

*Roper v. Big Heart Pet Brands, Inc.*,

    510 F.Supp.3d 903 (E.D. Cal. 2020) ..................................................1, 8, 14, 18

*Segedie v. Hain Celestial Group, Inc.*,

    No. 14–cv–5029, 2015 WL 2168374 (S.D. N.Y. May 7, 2015) ..........................8

*Shank v. Presidio Brands, Inc.*,

    No. 17-cv-00232, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018)......................17

*Sidhu v. Bayer Healthcare Pharm. Inc.*,

    No. 22-cv-01603, 2023 WL 6541865 (N.D. Cal. Oct. 5, 2023) ........................20

*Sonner v. Premier Nutrition Corp.*,

    971 F.3d 834 (9th Cir. 2020)............................................................................19

*Souter v. Edgewell Personal Care Co.*,

    No. 20-cv-1486, 2022 WL 485000 (S.D. Cal. Feb. 16, 2022)..........................18

*Spirtos v. Allstate Inc., Co.*,

    No. CV 02–8798, 2003 WL 25900368 (C.D. Cal. 2003) .................................18

*Squeo v. Campbell Soup Company*,

    No. 24-cv-02235, 2024 WL 4557680 (N.D. Cal. Oct. 22, 2024) ............1, 3, 4, 6

*Surzyn v. Diamond Foods, Inc.*,

    No. C 14–0136, 2014 WL 2212216 (N.D. Cal. May 28, 2014)..........................9

-vi-

*Tsan v. Seventh Generation, Inc.*,
  No. 15-cv-00205, 2015 WL 6694104 (N.D. Cal. Nov. 3, 2015) ........................ 8

*Tucker v. Post Consumer Brands, LLC*,
  No. 19-cv-03993, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ..................... 17

*Vance v. Church & Dwight Co.*,
  No. 2:22-cv-00044, 2023 WL 2696826 (E.D. Cal. Mar. 29, 2023) .................. 21

*Ward v. Pepperidge Farm, Inc.*,
  No. 1:24-cv-00078, 2025 WL 919516 (S.D. N.Y. Mar. 26, 2025) .............. 4, 6, 7

*Whiteside v. Kimberly Clark Corp.*,
  108 F.4th 771 (9th Cir. July 17, 2024) .............................................................. 10

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................... 9, 10, 17

*Windham at Carmel Mtn. Ranch Assn. v. Super. Ct.*,
  109 Cal.App.4th 1162 (2003) ............................................................................ 13

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
  No. 17-cv-06591, 2018 WL 2298963 (N.D. Cal. May 21, 2018) ..................... 21

*Young v. Neurobrands, LLC*,
  No. C 18-05907, 2019 WL 13247942 (N.D. Cal. 2019) .................................... 15

**Statutes**

Cal. Civ. Code §§ 1750, *et seq.* ..................................................................... 2, 13

Cal. Bus. & Prof. Code §§ 17500, *et seq.* ............................................. 2, 11, 12, 13

Cal. Bus. & Prof. Code §§ 17200, *et seq.* ..................................................... 2, 13

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ................................................................................ 19, 20

Fed. R. Civ. P. 23 ......................................................................................... 20, 21

## I.    <u>INTRODUCTION</u>

In this consumer protection class action, Plaintiff Adina Ringler ("Plaintiff") alleges Defendant The J.M. Smucker Company's ("Defendant") Smucker's Natural Fruit Spread products ("Products") are deceptively labeled as "natural" and "made with ingredients from natural sources" because the Products contain the artificial ingredient citric acid. *See* ECF No. 1 ("Compl."), at ¶¶ 2-4.

In its motion to dismiss ("MTD"), Defendant argues (1) Plaintiff has not plausibly alleged the Products contain artificial citric acid, (2) reasonable consumers would not be deceived by Defendant's misrepresentations, (3) Plaintiff's implied warranty claim fails, (4) the economic loss doctrine bars Plaintiff's misrepresentation claims, (5) Plaintiff lacks standing to sue for products of a different flavor she did not purchase, (6) Plaintiff's request for punitive damages should be dismissed, and (7) Plaintiff's class allegations should be stricken. *See* ECF No. 16. Courts routinely reject these arguments and have declined to dismiss cases with nearly identical allegations. *See, e.g.*, *Carbine v. Target Corporation*, No. 24-cv-03721, 2025 WL 501829, at *3 (C.D. Cal. Feb. 13, 2025); *Fried v. Snapple Beverage Corp.*, 753 F.Supp.3d 1145, 1152-1153 (S.D. Cal. 2024); *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d 903, 924 (E.D. Cal. 2020); *Squeo v. Campbell Soup Company*, No. 24-cv-02235, 2024 WL 4557680, at *4 (N.D. Cal. Oct. 22, 2024). This Court should reach a similar conclusion and deny Defendant's motion.

## II.    <u>BACKGROUND</u>

Plaintiff alleges the Products' front labels "prominently represent that the Products are 'natural' and 'made with ingredients FROM NATURAL SOURCES.'" Compl., ¶¶ 3, 16-17. "Defendant's packaging, labeling, and advertising scheme is intended to give consumers the reasonable belief that they are buying premium Products that are natural, made with ingredients from natural sources, and free from artificial ingredients." *Id.*, ¶ 5. Yet, "[t]hese representations are false because the Products contain citric acid, an artificial ingredient not made from natural sources."

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
<small>Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint</small>

Compl., ¶ 4.

Plaintiff alleges "Defendant does not use natural citric acid extracted from fruits in the Products," as extraction from natural citric juice is "no longer commercially available" and instead "uses artificial manufactured citric acid in the Products" derived from heavy chemical processing. Compl., ¶¶ 18-19. The citric acid used in the Products is commercially produced and "is manufactured using a type of black mold called *Aspergillus niger*…" *Id*. "Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor." *Id*., ¶ 22. "The citric acid that Defendant uses in the Products … contains residues of those chemical solvents." *Id*.

Plaintiff "purchased the Smucker's Natural Triple Berry Fruit Spread product from a Smart & Final store in Northridge, California in or around May 2024" *Id*., ¶ 11. "Plaintiff saw and relied on the 'natural' and 'made with ingredients from natural sources' claims on the front label of the Product." *Id*., ¶ 12. "Plaintiff would not have purchased the Product, or would have paid less for the Product, had she known that the Product contains an artificial ingredient in direct contradiction to the 'natural' and 'made with ingredients from natural sources' statements on the Product's label." *Id*.

Plaintiff brings this action on behalf of a nationwide class and California subclass alleging violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL"), California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"), and breach of express and implied warranties, negligent misrepresentation, and intentional misrepresentation/fraud. *Id*., ¶¶ 56-126.

//

//

-2-

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

III.   **LEGAL STANDARD**

A Plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a Plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

IV.   **ARGUMENT**

A.     **Plaintiff Plausibly Alleges the Products Contain Artificial Citric Acid**

Relying on *Pelayo v. Conagra Brands, Inc.*, No. 23-cv-05833, 2024 WL 3544621, at *1 (N.D. Cal. May 2, 2024), Defendant argues Plaintiff fails to plausibly allege the citric acid in the Products is artificial and only pleads allegations of a common industry practice. *See* MTD at 13. In *Pelayo*, the plaintiffs alleged only that "[c]ommercial food manufactures, like [the defendant], use a form of citric acid that is derived from heavy chemical processing," an allegation which the court characterized as "conclusory and unsupported by any facts." *Id*. Notably, the *Pelayo* court granted leave to amend the complaint, finding "[i]t may be that credible reports and studies about food industry practices on that score would be enough to establish plausibility." *Id*. Courts have distinguished *Pelayo* where, as here, plaintiffs offer supported and more-detailed allegations regarding the use of artificial citric acid in the products at issue, including allegations identical to those made in the Complaint.

For example, in *Squeo v. Campbell Soup Company*, the court distinguished *Pelayo* and found it plausible that the products at issue contained artificially produced citric acid where plaintiffs alleged (1) "it is not the naturally occurring citric acid, but the manufactured citric acid . . . that is used extensively as a food and

-3-

beverage additive" and (2) "it is not commercially feasible to use natural citric acid extracted from fruits," with citations to reports from a scientific journal and the United States Department of Agriculture ("USDA"). 2024 WL 4557680, at *4. The Court held, "[t]hese supported facts are sufficient at the pleading stage, even under the heightened requirements of Rule 9(b)—accepting the alleged facts as true, as the Court must, it is highly likely that the citric acid included in the chips was artificially produced." *Id*. (emphasis in original).

In *Fried v. Snapple Beverage Corp*., artificial citric acid allegations were sufficient where plaintiff alleged (1) the manufactured citric acid in the products was derived from *Aspergillus niger*, (2) each of the subject products contained manufactured citric acid, and (3) manufactured citric acid is an industrial chemical. 753 F.Supp.3d at 1152-1153. These allegations—even less detailed than the allegations made by Plaintiff here—were sufficient to show linkage between the defendant's products and manufactured citric acid. *See id*. Other courts routinely reject this same argument. *See, e.g.*, *Carbine*, 2025 WL 501829, at *3-4 (plaintiff plausibly alleged "the citric acid in the products is artificially produced" by alleging it is manufactured using chemical processing and citing articles regarding the chemical process and its prevalence in the food industry); *Hayes v. Kraft Heinz Company*, No. 1:23-cv-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (finding sufficient connection between the industry practice of using artificial citric acid and Defendants' practices where plaintiffs "incorporate by reference several academic studies and articles describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety"); *Ward v. Pepperidge Farm, Inc*., No. 1:24-cv-00078, 2025 WL 919516, at *4 (S.D. N.Y. Mar. 26, 2025) (plaintiff adequately alleged presence of manufactured citric acid where complaint cited articles about declining production of natural citric acid and proliferation of manufactured citric acid in food products).

Similar to *Squeo*, *Fried*, *Carbine*, *Hayes*, and *Ward*, Plaintiff has drawn a

-4-

sufficient connection between the industry practice of using artificial citric acid and Defendant's practices. First, Plaintiff alleges Defendant uses artificial manufactured citric acid in the Products that is derived from heavy chemical processing. Compl., ¶ 18. Plaintiff explains why the citric acid used in the Products is artificial. Plaintiff alleges, "[c]ommercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger*" and "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor." Compl., ¶¶ 18, 22. "The citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents." Compl., ¶ 22.

The Complaint also incorporates by reference several academic articles describing the history of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety. Compl., ¶¶ 18-36. Citing the USDA, Plaintiff alleges "Defendant does not use natural citric acid extracted from fruit in the Products" because "it is not commercially feasible to use natural citric acid extracted from fruits." Compl., ¶¶ 18-19. Plaintiff cites peer-reviewed research explaining the difference between naturally occurring citric acid and the artificial citric acid in the Products:

> Citric acid naturally exists in fruits and vegetables. However, **it is <u>*not*</u> the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive.** Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergillus niger* is a known allergen.

*Id*., ¶ 18 (emphasis added).

These allegations go "beyond simple allegations of a common industry practice and are sufficient to 'provide enough factual support to raise [Plaintiff's] right to relief above a speculative level.'" *Hayes*, 2024 WL 4766319, at *3. The

-5-

Court should follow *Squeo*, *Fried*, *Carbine*, *Hayes*, and *Ward* and hold Plaintiff has adequately alleged the citric acid in the Products is artificial.

Defendant next attacks the academic studies and articles cited by Plaintiff (*see* MTD at 14-15), but Defendant's factual challenges are inappropriate at this stage. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Defendant's factual challenges are also meritless. Defendant argues the citation that "99% of the world's production of [Citric Acid] is carried out using the fungus *Aspergillus niger*" is "irrelevant" because the statistic includes the food industry as well as other industries and "leaves open the possibility that using natural citric acid is, in fact, common in certain industries." MTD at 14-15. However, the same article reads, "it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive" and "approximately 70% [of manufactured citric acid] is used as a food or beverage additive."[1, 2, 3] Defendant also argues that Plaintiff's cited source by the USDA—which states that citric acid extracted from citrus juice is no longer commercially available—"does not address current commercial practices." MTD at 15. Defendant cites no support for this conclusory argument. *See id*. That a relevant article was published several years ago does not undermine its validity, particularly when there is no evidence that the underlying commercial realities have changed.

---

[1] *See* Compl., ¶ 18 & fn. 1, 4-5.

[2] Defendant also argues, "Plaintiff's entire theory depends on a misquoted study" because a source referenced in the *Toxicology Reports Journal* states that "'99% of world production of citric acid occurs via microbial processes' using either '*A. niger* and *A. wentii*.'" MTD at 15, fn. 4. However, the article cited by Defendant specifies, "[a]lthough many microorganisms can be employed to produce citric acid, *A. niger* is still the main industrial producer" which is not inconsistent with the *Toxicology Reports Journal*. *See id*.

[3] Defendant argues *Carbine* is distinguishable because the *Carbine* court did not "appreciate the irrelevance" of the 99% statistic. MTD at 15-16. For the same reasons described above, this argument fails.

-6-

In sum, Plaintiff's allegations are plausible and "'[d]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Notwithstanding, courts have held that whether a particular ingredient is natural or artificial is a question of fact that cannot be resolved on a motion to dismiss. *See, e.g.*, *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1047 (S.D. Cal. 2019) (artificialness "of malic acid . . . are issues of fact that cannot be resolved at the pleading stage.").

**B.    Reasonable Consumers are Likely to be Deceived by the Products' Labels**

**1.    *Plaintiff Sufficiently Alleges a Misrepresentation Theory***

Defendant argues, "Plaintiff has failed to show that a reasonable consumer would interpret the label as asserting that the product was free from artificial ingredients." MTD at 16. Specifically, Defendant contends Plaintiff does not allege what "'natural' or 'made with ingredients from natural sources' means." MTD at 17:8-9. However, Defendant admits Plaintiff offers the ordinary, dictionary definition of natural: "Plaintiff alleges the Products' front label misled 'reasonable consumers into believing that the Products contain only natural ingredients and are free from artificial ingredients.'" *Id.*, at 17:10-11.

Here, reasonable consumers understand the Products' "natural" representation to mean the Products contain "natural" ingredients, *i.e.* non-artificial ingredients. *See* Compl., ¶ 5. The "made with ingredients from natural sources" representation reinforces this belief and confirms that the Products contain "ingredients" from "natural" sources. *Id.* This definition is consistent with the FDA's longstanding policy that "the word natural means that nothing artificial or synthetic has been added to the product." Compl., ¶ 21.[4] Courts are in accord. *See, e.g., Corpuz v. Bayer*

---

[4] The FDA has also issued warning letters stating products labeled as "natural" are misbranded because they contain artificial citric acid. *See* Compl., ¶ 21 & Ex. C (FDA warning letter stating, "the addition of . . . citric acid to these products preclude

*Corp.*, No. 22-cv-1085, 2023 WL 2292579, at *4 (S.D. Cal. Feb. 28, 2023) ("[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer would understand similar labeling involving "natural" to mean that a product does not contain any non-natural ingredients."); *Segedie v. Hain Celestial Group, Inc.*, No. 14–cv–5029, 2015 WL 2168374, at *11 (S.D. N.Y. May 7, 2015) (rejecting argument that plaintiffs "do not rely on a plausible, objective definition of 'natural'" and finding "it is enough that Plaintiffs allege that 'natural' communicates the absence of synthetic ingredients.")

Courts routinely find it plausible that reasonable consumers could be misled by similar "natural" claims. *See*, *e.g.*, *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 533-34 (9th Cir. 2016) ("All Natural Fruit" representation plausibly misleading where product alleged to contain artificial citric acid); *Roper v. Big Heart Pet Brands, Inc.*, 510 F.Supp.3d at 914 (artificial citric acid case finding "plaintiff's claim that a reasonable consumer would find the label 'natural' to be misleading … to be plausible"); *Fried*, 753 F.Supp.3d at 1153 (same); *Jou v. Kimberly–Clark Corp.*, 13–03075 JSC, 2013 WL 6491158, at *5–8 (N.D. Cal. Dec. 10, 2013) ("pure & natural" could lead a reasonable consumer to believe product is free of non-natural ingredients); *Tsan v. Seventh Generation, Inc.*, No. 15-cv-00205, 2015 WL 6694104, at *5-6 (N.D. Cal. Nov. 3, 2015) (finding adequately alleged "a reasonable consumer is likely to be deceived by the term 'natural,'"); *Segedie*, 2015 WL 2168374, at *11 ("It is not unreasonable as a matter of law to expect that a product labeled 'natural' or 'all natural' contains only natural ingredients."). The Court should follow these on-point cases.

Defendant's cited cases are distinguishable. In *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013), the plaintiff offered "several conflicting use of the term 'natural' to describe this product."); *id.*, at Ex. B (FDA warning letter stating product could not bear "100% Natural" or "All Natural" claims because it contains citric acid).

-8-

definitions" of the term "natural." Here, however, Plaintiff has offered a single definition of the term natural that means "not artificial." Courts note this distinction. *See Rojas v. General Mills, Inc.*, No. 12-cv-05099, 2014 WL 1248017, at *6 (N.D. Cal. March 26, 2014) (*Pelayo* distinguishable where plaintiff offered definition of "natural" to mean "not artificial, not synthetic, and no more than minimally processed"). Numerous courts affirmatively reject *Pelayo*, finding its conclusion "at odds with basic logic" and "in conflict with the holdings of many other courts, including the Ninth Circuit." *See, e.g., Jou*, 2013 WL 6491158, at *8; *Surzyn v. Diamond Foods, Inc.*, No. C 14–0136, 2014 WL 2212216, at *3–4 (N.D. Cal. May 28, 2014) ("[n]othing in the FTC's analysis either directly or inferentially supports the *Pelayo* court's conclusion that it is 'implausible' that consumers would be misled or confused by the use of 'All Natural' on food product packaging.").

Defendant next claims, "no reasonable consumer would consider the front labels' representations [] to extend to all ingredients" and the Products' "natural" representations "may only extend to the fruit ingredients." MTD at 17:21-22. This interpretation is contrary to the plain language on the Products' labels which read: "natural" and "made with ingredients from natural sources." Compl., ¶ 3, 16-17. Indeed, the Products do not state they are natural "and artificial" or that "only some" or "only the fruit" ingredients are made from natural sources. *See id*. Even assuming *arguendo* that the Products' "natural" claims meant "only natural fruit," the Ninth Circuit has held that the representation "All Natural Fruit" could mislead reasonable consumers where the product contains artificial citric acid. *See Brazil*, 660 Fed. Appx. at 533.

The Court should decline to make the factual determination urged by Defendant as to how consumers understand the Products' labels. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("whether or not a reasonable consumer would be misled is usually "a question of fact not appropriate for determination [on a motion to dismiss]."); *Davis v. HSBC Bank Nevada, N.A.*, 691

-9-

F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014).

**2.    *The Products' Rear Labels Do Not Shield Defendant From Liability***

Defendant also argues that because the rear labels state the Products are "made with real fruit…" reasonable consumers would understand that the front label's natural statements were "directed toward the fruit in the Product, not to all ingredients." MTD at 19. However, the Products' rear labels do not refute or disclaim the front label claims.

The Ninth Circuit has made clear that "reasonable consumers" should not "be expected to look beyond misleading representations on the front of the box to discover the truth from" the products' side or rear labels. *Williams*, 553 F.3d at 939-40. The Ninth Circuit recently confirmed, "if a product's front label is plausibly misleading to reasonable customers, then the court does not consider the back label at the pleadings stage. Whether the back label ultimately defeats the plaintiff's claims is a question left to the fact-finder." *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771, 778 (9th Cir. July 17, 2024).

Relying on *McGinity*, Defendant argues the front labels are ambiguous and that reasonable consumers must review the Products' rear labels to resolve any ambiguity. *See* MTD at 18-19, citing *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023). In *McGinity*, the term "Nature Fusion" presented inherent ambiguity because the term "Fusion" indicates a mix of natural and artificial ingredients—putting the consumer on notice that the product might include both. 69 F.4th at 1095-99; *see also Whiteside*, 108 F.4th at 780 (finding "Nature Fusion" so devoid of any concrete meaning that there was nothing "from which *any* inference could be drawn or on which *any* reasonable belief could be based about") (italics in original). Here, the Products' "natural" and "made with ingredients from natural sources" representations do not communicate two different meanings,

-10-

leaving a consumer to investigate which applies. Additional information that could be investigated—that the Products contain artificial and non-natural ingredients—is contradictory to and not a mere clarification of an ambiguity on the front label.[5]

Moreover, while citric acid can be derived from natural sources like fruit, the Product labels do not explain to consumers that the citric acid in the Products is *not* extracted from citrus fruits and is instead artificially manufactured. *See* Compl., ¶¶ 16-18. Thus, unlike in *McGinity*, simply reviewing the rear label cannot dispel the impression formed by the front label because discovery of the artificial citric acid requires investigation beyond the retail store and knowledge of chemistry beyond that of the average consumer. *See Fried*, 753 F.Supp.3d at 1153 ("Even if reasonable consumers looked to the back label of one of Defendant's Products to learn about the ingredients, they 'could not know that the "citric acid" listed among the ingredients was an artificial, industrially-manufactured chemical,' especially because citric acid occurs naturally in fruits as well."). "In any event, 'questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.'" *Id*.

### 3.    *Plaintiff Adequately Alleges an Omission Theory*

Relying on *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 668 (N.D. Cal. 2016), Defendant argues Plaintiff's FAL claim cannot be premised on an omission. *See*

---

[5] Defendant cites to the unpublished opinion in *Bryan v. Del Monte Foods, Inc.*, No. 23-3685, 2024 WL 4866952, at *1 (9th Cir. Nov. 22, 2024). *See* MTD at 18. In *Bryan*, the phrase "fruit naturals®" did not lead consumers to believe that all ingredients in the product were natural because (1) the registered-trademark symbol after "fruit naturals" suggested it was just the trade name of the product, (2) in the phrase "fruit naturals®," "naturals" is a noun, not a descriptive adjective, and (3) the front labels stated "in extra light syrup," which conveyed the syrup was not natural. *Id*. Here, the Products' "natural" and "made with ingredients from natural sources" representations are not brand or trade names, are not followed by any qualifying information, and are not ambiguous as to their meaning.

-11-

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

MTD at 19. But that is not what the *Dana* court held. It held that while an FAL claim cannot be based on a "pure omission," an omission claim under the FAL can proceed where there is some affirmative misrepresentation. *Dana*, 180 F. Supp. 3d, at 669. Here, Plaintiff does not plead a pure omission claim, but rather, alleges affirmative misrepresentations and partial omissions. An FAL claim can proceed under these allegations. *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th Cir. 2018) ("a plaintiff may state a claim under the FAL if the defendant actually made a statement, but omitted information that undercuts the veracity of the statement."), citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 991 (S.D. Cal. 2014) (permitting FAL claim for omissions where plaintiffs alleged defendant made misrepresentations which omitted certain information about the product).

Plaintiff's claims "prohibit not only affirmative misrepresentations, but also material omissions that deceive reasonable consumers." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (citing *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 925 (N.D. Cal. 2012)). "To plausibly allege a fraudulent omission, the omission must either (1) 'be contrary to a representation actually made by the defendant,' or (2) 'an omission of a fact the defendant was obliged to disclose.'" *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022) (quoting *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020) and citing *Hodsdon*, 891 F.3d at 861). Accordingly, fraudulent omission claims based on a "partial omission" are proper regardless of whether there is an independent duty to disclose. *McKinney v. Corsair Gaming, Inc.*, No. 22-CV-00312-CRB, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022) (citing *Anderson*, 500 F. Supp. 3d at 1013)). In other words, "a duty to disclose may be 'triggered' by affirmative representations." *Id.* (citing *Hodsdon*, 891 F.3d at 863 and *Rutledge v. Hewlett-Packard Co*, 238 Cal. App. 4th 1164, 1176 (2015)).

Defendant argues "Plaintiff has failed to plead that any material fact was

-12-

omitted" because "a reasonable consumer would not have expected the statements 'natural' or 'made with ingredients from natural sources' to be a representation excluding any artificial ingredients in the Products." MTD at 20. This argument was refuted in Section IV(B)(1), *supra*.

In sum, the Products' front labels affirmatively represent that the Products are "natural" and "made with ingredients from natural sources," leading reasonable consumers to believe that the Products do not contain artificial ingredients. Defendant's omissions that the Products contain an artificial ingredient is important to consumers and are likely to affect their purchase decisions, rendering the omission "material." Compl., ¶ 62. Plaintiff plausibly alleges a partial omission based on a partial misrepresentation theory. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1013 (N.D. Cal. 2020) (partial omission claims are "more straightforward," "well-settled under California law," based on a duty to disclose "aris[ing] from the fact that the omission is 'contrary to a representation actually made by the defendant.'"); *Burchfield v. Prestige Consumer Healthcare*, Inc., 534 F. Supp. 3d 1192, 1202 (C.D. Cal. 2021) (UCL, CLRA, and FAL claims based on an omission theory adequately pled where defendant made "partial representations that are misleading because some other material fact has not been disclosed.").[6]

### C.    Plaintiff States a Claim for Breach of Implied Warranty

Defendant argues Plaintiff lacks privity with Defendant. *See* MTD at 22. However, California law recognizes exceptions to the privity rule, including "in cases involving foodstuffs" or where there has been reliance on a manufacturer's representations on labels or advertising. *See Windham at Carmel Mtn. Ranch Assn. v. Super. Ct.*, 109 Cal.App.4th 1162, 1169 (2003); *Bitton v. Gencor Nutrientes, Inc.*,

---

[6] Defendant's arguments that Plaintiff does not allege "'physical defects that affect the central function' of the product" or "exclusive knowledge" (MTD at 20-21) are inapplicable because Plaintiff's omission-based claims are based on a partial misrepresentation rather than a pure omission theory. *See Hodsdon*, 891 F.3d at 861, fn. 3; *Anderson*, 500 F. Supp. 3d at 1012-1013.

-13-

654 Fed.Appx. 358, 363 (9th Cir. 2016) ("Privity is not required for breach of warranty claims for consumable goods."); *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-CV-02841-JSW, 2019 WL 8230850, at *4 (N.D. Cal. 2019) (privity exception "where a plaintiff relies on representations on a manufacturer's label"); *Gottsdanker v. Cutter Laboratories*, 182 Cal.App.2d 602, 607 (1960). These exceptions are applicable here because Plaintiff alleges Defendant (the manufacturer) made misrepresentations to Plaintiff and class members with respect to the Products (foodstuffs). *See Roper*, 510 F.Supp.3d at 924 (artificial citric acid case involving "All Natural" representation; finding "privity rule does not bar plaintiff's implied warranty claim."); *see also Gonzalez v. Drew Indus. Inc.*, 750 F. Supp. 2d 1061, 1072–73 (C.D. Cal. 2007) (declining to dismiss implied warranty claim based on privity exception that plaintiff relied on label misrepresentations).

Defendant next argues Plaintiff fails to allege the Products were unfit for their ordinary purpose. MTD at 22. This argument ignores that the "California Supreme Court has explained that '[m]erchantability has several meanings,'" one of which is "the product must '[conform] to the promises or affirmations of fact made on the container or label,'" *In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1118 (S.D. Cal. 2011) (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 118 (1975) (citing Cal. Com. Code § 2314(2)(f))); *DiGiacinto v. RB Health (US), LLC*, 668 F.Supp.3d 950, 966 (N.D. Cal. 2023) (plaintiff "'does not have to allege that the [product is] unfit for [its purpose] in order to make out an implied warranty of merchantability claim.'"). Here, Plaintiff alleges Defendant made affirmations of fact, or description of goods, that, *inter alia*, the Products are "natural," and Defendant breached that implied warranty because the Products contain the artificial ingredient citric acid. Compl., ¶¶ 3-4. Plaintiff has adequately alleged breach of implied warranty. *See Fried*, 753 F.Supp.3d at 1153-54 (plaintiffs adequately alleged breach of implied warranty where defendant has not conformed with "all natural" representation).

//

-14-

**D.   The Economic Loss Doctrine Does Not Bar Plaintiff's Misrepresentation Claims**

Defendant's position regarding the economic loss doctrine is incorrect. *See* MTD at 23. The economic loss doctrine does not apply to claims of misrepresentation that are grounded in fraud, such as the allegations in Plaintiff's Complaint.

The Complaint alleges Plaintiff "relied on the 'natural' and 'made with ingredients from natural sources' claims and she and other consumers "would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial ingredient not made from natural sources." Compl., ¶¶ 12, 39. Thus, the purchases were fraudulently induced by Defendant's deceptive advertising. This conduct rises from principles of tort law and amounts to tortious conduct, permitting tort damages. *See DiGiacinto*, 2023 WL 2918745, at *10 ("[T]he Ninth Circuit has held 'that California law classifies negligent misrepresentation as a species of fraud for which economic loss is recoverable.'") (citing *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 Fed. App'x. 603, 607 (9th Cir. 2008)); *Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 Fed.Appx. 700, 701 (9th Cir. 2011) (claim not precluded by economic loss rule where "one party has lied to the other"); *Young v. Neurobrands, LLC*, No. C 18-05907, 2019 WL 13247942, at *6 (N.D. Cal. 2019) ("Because Plaintiffs allege that they were fraudulently induced to purchase the Products, they have stated a claim under tort principles[.]"); *Lemus v. Rite Aid Corp.*, 613 F.Supp.3d 1269, 1282 (C.D. Cal. 2022) ("economic loss rule does not apply to claims of affirmative misrepresentation"); *Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc.*, No. 1:16-cv-00371, 2016 WL 3519294, at *5 (E.D. Cal. June 27, 2016).

**E.   Plaintiff Has Standing to Sue for Substantially Similar Products**

Defendant argues Plaintiff only has standing to sue over Products she purchased. MTD at 23-24. However, Plaintiff has standing to assert class claims for

-15-

products she did not purchase so long as the Products and misrepresentations are substantially similar. *See Miller v. Ghiradelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012). Defendant argues there is a split in authority, citing *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 908 (C.D. Cal. 2021) and *Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15, 2024). MTD at 24. However, the "'prevailing view' in the Ninth Circuit is that plaintiffs can bring class claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'" *See Cho v. Hyundai Motor Company, Ltd.*, 636 F.Supp.3d 1149, at 1179-80 (C.D. Cal. 2022) (declining to follow *Lorentzen*).

Defendant also argues Plaintiff fails to "'delve[] into the substantial similarity' of each of the Products…" MTD at 24. Not so. Plaintiff alleges the Smucker's Products are available in both jar and squeezable packaging. Compl., ¶¶ 16-17. Each of the Products prominently display the same front-label claims— "natural" and "made with ingredients FROM NATURAL SOURCES." Compl., ¶ 3. Yet, "[t]hese representations are false because the Products contain citric acid, an artificial ingredient not made from natural sources." *Id.*, ¶ 4. The only differences are the flavors. *See id.*, ¶¶ 2-4. Courts have consistently held these allegations of substantial similarity are sufficient. *See, e.g.*, *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 at *13 (N.D. Cal. July 20, 2012) ("[D]ifferent ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors."); *Mollicone v. Universal Handicraft, Inc.*, No. 16-CV-07322, 2017 WL 440257, at *8 (C.D. Cal. Jan. 30, 2017).

## F.    Plaintiff Has Standing to Seek Injunctive Relief

Defendant argues that Plaintiff is aware of the artificial citric acid in the Products so there is no risk of future harm and therefore lacks standing to seek injunctive relief. MTD at 25. The Ninth Circuit has rejected this argument that a "previously-deceived-but-now-enlightened plaintiff simply does not have standing

-16-

under Article III to ask a federal court to grant an injunction" in *Davidson v. Kimberly-Clark Corporation*, 889 F.3d 956, 966-69 (9th Cir. May. 9, 2018) ("*Davidson*"). The *Davidson* court held "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.*, at 969. A plaintiff need only make "plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to…" *Davidson*, 889 F.3d at 969–70.

Here, Plaintiff's allegations of the threat of future harm align precisely with *Davidson*. Plaintiff alleges she "desires to, and would, purchase the Products again if the Products' labels were accurate and if the Products truthfully contained only natural ingredients." Compl., ¶ 13. "However, as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products." *Id*. This harm is sufficient to confer standing to seek injunctive relief. *Davidson*, 889 F.3d at 967. Defendant argues Plaintiff can discover the use of artificial citric acid by reviewing the Products' rear label. However, the ingredient list on the rear label says nothing about the ingredient's sourcing, or that the citric acid is artificial and not extracted from citrus fruit. *See* Compl., ¶¶ 16-17. A consumer is not required to conduct detailed analysis to determine whether Defendant's labeling is accurate, nor has Defendant cited any cases that impose this sort of requirement. To the contrary, the Ninth Circuit has held an ingredient list is not intended to "provide a shield for liability for the deception" on the front label. *See Williams*, 553 F.3d at 939; *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (rejecting argument that plaintiff could read labels in the future to determine whether products were "all natural"); *Tucker v. Post Consumer Brands, LLC*, No.

-17-

19-cv-03993, 2020 WL 1929368, *6 (N.D. Cal. Apr. 21, 2020) (noting "onus [is not] on plaintiff to consult the ingredient list").

In *Roper*, "All Natural" products were plausibly deceptive because they contained artificial ingredients, including citric acid. *Roper*, 510 F.Supp.3d at 909, 915-916. The court found standing for injunctive relief because the allegations of future harm "fit squarely into the categories recognized by the Ninth Circuit." *Id.*, citing *Davidson*, 889 F.3d at 969 and *Moore v. Mars Petcare U.S., Inc.*, 966 F.3d 1007, 1021 n.13 (9th Cir. 2020); *see also Lozano v. Walmart, Inc.*, No. CV 23-4500, 2024 WL 412606, at *4 (C.D. Cal. Feb. 1, 2024) (standing for injunctive relief in artificial malic acid case); *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757, 2019 WL 1082562, at *13 (S.D. Cal. Mar. 7, 2019) (Plaintiff "still faces future injury because he will not be able to rely on Defendants' claims about its product's ingredients."); *Allred v. Kellogg Company*, No. 17-cv-1354, 2018 WL 1158885, at *6-7 (S.D. Cal. Feb. 23, 2018) (rejecting argument that "because Plaintiffs now claim to know that Pringles allegedly contain artificial ingredients, they are unlikely to be deceived again").

Defendant next argues Plaintiff has an adequate remedy at law and cannot seek equitable relief. *See* MTD at 26, citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). First, Plaintiff alleges she lacks an adequate remedy at law. *See* Compl., ¶¶ 40-42 (heading "**No Adequate Remedy at Law**"). Second, the equitable remedy of an injunction is appropriate where plaintiffs suffer continuing injury. *See Spirtos v. Allstate Inc., Co.*, No. CV 02–8798, 2003 WL 25900368, at *4 (C.D. Cal. 2003). This is especially true here because halting Defendant's fraudulent advertising is necessary to redress the future risk of harm. *See* Compl., ¶ 42. A legal remedy is not adequate in these circumstances. *See Roper*, 510 F.Supp.3d at 917-918 (in artificial citric acid case challenging "All Natural" representation, finding "plaintiff here lacks an adequate legal remedy for future harm"); *Souter v. Edgewell Personal Care Co.*, No. 20-cv-1486, 2022 WL 485000,

-18-

at *13 (S.D. Cal. Feb. 16, 2022) ("*Sonner* is inapplicable because it does not apply to claims of false advertising that may result in a future harm…").

Moreover, "[a] number of district court cases since *Sonner* have concluded that it has minimal application at the pleading stage." *Murphy v. Olly Public Benefit Corp.*, 651 F.Supp.3d 1111, 1129 (N.D. Cal. 2023). Plaintiffs may seek "relief in the alternative or different types of relief." *Nacarino v. Chobani, LLC*, No. 20-cv-7437-EMC, 2022 WL 344966, at *10 (N.D. Cal. Feb. 4, 2022); *see also id.* (quoting *Sagastume v. Psychemedics Corp.*, No. CV 20-6624 DSF (GJSx), 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.")); *Carbine*, 2025 WL 501829, at *6 (same). The Court should decline to dismiss Plaintiff's claims for equitable relief. *Id.*[7]

### G.    Plaintiff's Request for Punitive Damages is Proper

Defendant argues punitive damages are inappropriate because Plaintiff "fails to include allegations about any Smucker officer, director, or managing agent…" MTD at 26. However, Plaintiff alleges "Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products…" (Compl., ¶ 8) such that Defendant's agents and officers are responsible for the fraud alleged. Notwithstanding, "[b]ecause punitive damages are but a remedy, and thus neither constitutes a claim nor pertains to whether any claim has been stated, requests for punitive damages provide no basis for dismissal under Fed.R.Civ.P. 12(b)(6)." *Oppenheimer v. Southwest Airlines Co.*, No. 13-260, 2013 WL 3149483, at *4 (S.D. Cal. June 17, 2013) (citing cases and finding Fed. R. Civ. P. 54 "underscores the impropriety of dismissing requests for punitive damages" as "Rule 54(c) states: 'final judgment should grant the relief to which each party is

---

[7] If the Court is inclined to dismiss claims for equitable relief, Plaintiff requests it be without prejudice. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1315 (9th Cir. 2022) ("[W]here federal law bars us from considering the merits of state-law claims, we also lack authority to prevent state courts from doing so.").

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

entitled, even if the party has not demanded that relief in its pleadings.'"); *Kirchenberg v. Ainsworth, Pet Nutrition, Inc.*, No. 2:20-cv-00690, 2022 WL 172315, at *6 (E.D. Cal. Jan. 19, 2022) (rejecting argument that plaintiff's "request for punitive damages should be dismissed because [plaintiff] does not allege 'oppression, fraud, or malice' by an 'officer, director, or managing agent;'" finding "[a] Rule 12(b)(6) motion to dismiss is [not] the appropriate vehicle to challenge the sufficiency of a prayer for punitive damages."); *Meintser v. T-Mobile USA, Inc.*, No. 2:23-cv-02562, 2024 WL 4289579, at *8 (E.D. Cal. Sept. 25, 2024) (same); *Muldoon v. DePuy Orthopaedics, Inc.*, 2024 WL 3522204, at *15 (N.D. Cal. July 23, 2024) (same) (citing cases); *Gunaji v. State Farm General Insurance Company*, No. EDCV 24-759, 2024 WL 3468838, at *2, fn. 2 (C.D. Cal. June 4, 2024) ("punitive damages are a remedy, rather than a claim, and therefore 'provide no basis for dismissal'").

### H. Plaintiff's Nationwide Class Claims Should Be Addressed at Class Certification

Defendant argues Plaintiff lacks standing to assert claims under laws outside of California and application of multiple states' laws is "patently unmanageable" under Fed. R. Civ. P. 23. MTD at 26-28. As an initial matter, district courts sitting in diversity "apply the substantive law of the state in which it sits . . ." *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982). Because Plaintiff has individual standing to bring her claims, the "standing inquiry is concluded." *See Sidhu v. Bayer Healthcare Pharm. Inc.*, No. 22-cv-01603, 2023 WL 6541865, at *6-7 (N.D. Cal. Oct. 5, 2023) (denying motion to dismiss nationwide claims).

Notwithstanding, Defendant's nationwide class arguments are premature because these issues are to be considered "in the context of a class certification motion and not a motion to dismiss." *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017). Indeed, this Court agrees "issues related to class suitability should be resolved during a motion for class

-20-

certification, after an opportunity for discovery." *Gaige v. Exer Holding Co., LLC*, No. 2:24-CV-06099-AH-(AJRX), 2025 WL 559719, at *9 (C.D. Cal. Mar. 2, 2025) (Hwang); *see also Plotts v. Am. Honda Motor Co.*, No. CV 22-04529, 2023 WL 4843342, at *13 (C.D. Cal. June 9, 2023) (This argument "is a matter of typicality, adequacy, and predominance under Rule 23, not Article III standing . . ."); *Battle v. Taylor James, LLC*, 607 F.Supp.3d 1025, 1041 (C.D. Cal. 2022) ("[T]he court agrees with recent Ninth Circuit precedent analyzing this issue at the class certification stage under Rule 23.") (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (adopting "the class certification approach"); *Vance v. Church & Dwight Co.*, No. 2:22-cv-00044, 2023 WL 2696826, at *6 (E.D. Cal. Mar. 29, 2023) ("[C]laims under the laws of non-California states is better suited for a motion for class certification."); *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, No. 17-cv-06591, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018) ("premature to address those issues at this early stage[.]").

"Ultimately, the decision to address this issue on a motion to dismiss or defer until a motion for class certification 'is left to the district court's discretion.'" *Vance*, 2023 WL 2696826, at *6. Here, deferring ruling on class-related issues "[e]arly in the pleadings stage" is prudent because "neither the court nor the litigants are sure yet which facts and legal issues are in dispute." *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148, 2014 WL 10988343, at *14 (C.D. Cal. Dec. 29, 2014). The precise scope of the classes and subclasses should be decided at class certification after the development of a factual record in discovery.[8]

## V.    CONCLUSION

Defendant's motion to dismiss should be denied. If the Court dismisses any portion of the complaint, Plaintiff respectfully requests leave to amend. *Eminence*

---

[8] While Defendant contends that state law variations exist regarding privity and notice requirements for the warranty claims, and the economic loss doctrine, it fails to identify any differences. *See* MTD at 28. Further, Plaintiff provided pre-suit notice and alleged recognized exceptions to both.

*Ringler v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH(KESx)
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT

*Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated: April 16, 2025                    CROSNER LEGAL, P.C.


By:      */s/ Lilach H. Klein*
              Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

*Attorneys for Plaintiff and the Proposed
Class*

-22-

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.


Dated: April 16, 2025                    CROSNER LEGAL, P.C.


                                        By:      */s/  Lilach H. Klein*
                                                 LILACH H. KLEIN

-23-