UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-01138-AH-(KESx) | Date | May 13, 2025 |
|---|---|---|---|
| Title | *Adina Ringler v. The J.M. Smucker Company* | | |

| Present: The Honorable | Anne Hwang, United States District Judge |
|---|---|

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   (IN CHAMBERS) ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS (DKT. NO. 16)

The matter before the Court is Defendant The J.M. Smucker Company's ("Defendant") Motion to Dismiss Plaintiff Adina Ringler's ("Plaintiff") Class Action Complaint. Plaintiff has filed this suit on behalf of herself and all others similarly situated ("Class Members"). Plaintiff opposes the Motion. Opp'n, Dkt. No. 20. This matter is fully briefed, and the Court heard oral argument on May 7, 2025. For the reasons set forth below, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion.

I.     **BACKGROUND**

Defendant manufactures, distributes, advertises, and sells a line of Smucker's Natural Fruit Spread products, available in both jar and squeezable packaging (the "Products"). Compl. ¶ 2, Dkt. No. 1. The Products' front labels contain images of fresh fruit and prominently represent that the Products are "natural" and "made with ingredients FROM NATURAL SOURCES." *Id.* ¶ 3 (internal quotation marks and emphasis omitted). The Products' front and back labels also contain a list of undesired items that the Products do not contain, stating "Non-GMO," "NO High Fructose Corn Syrup," and "NO artificial flavors or

colors." *Id.* ¶¶ 15, 16 (internal quotation marks omitted).  Below is an image of one of the Products:



*Id.* ¶ 16.  Plaintiff alleges these representations are false because the Products contain citric acid, an artificial ingredient not made from natural sources.  *Id.* ¶ 4. Plaintiff further alleges that Defendant's packaging, labeling, and advertising scheme is intended to give consumers the reasonable belief that they are buying premium Products that are natural, made with ingredients from natural sources, and free from artificial ingredients.  *Id.* ¶ 5.  Plaintiff alleges that Defendant uses

artificially manufactured citric acid in the Products, as commercially produced citric acid is produced using a black mold called *Aspergillus niger*. *Id.* ¶ 18.

Plaintiff purchased the Smucker's Natural Triple Berry Fruit Spread product in or around May 2024 from a California grocery store. *Id.* ¶ 11. Plaintiff alleges that she saw and relied on the "natural" and "made with ingredients from natural sources" claims on the front label of the Product. *Id.* ¶ 12 (internal quotation marks omitted). Plaintiff further alleges that she would not have purchased the Product, or would have paid less for the Product, had she known that the Product contained an artificial ingredient. *Id.*

On February 10, 2025, Plaintiff filed this putative class action lawsuit against Defendant, alleging the following causes of action: (1) violation of California's Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1750, *et seq.*); (2) violation of the Unfair Competition Law ("UCL") (Cal. Bus & Prof. Code § 17200, *et seq.*); (3) violation of the False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500, *et seq.*); (4) breach of express warranty (Cal. Com. Code § 2313(1)); (5) breach of implied warranty (Cal. Com. Code § 2314); (6) negligent misrepresentation; and (7) intentional misrepresentation/fraud. *See generally id.*

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of a "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A dismissal under a 12(b)(6) motion can be based on either a "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citation omitted). On a 12(b)(6) motion, courts accept as true all well-pleaded allegations of material fact and construe them in a light most favorable to the non-moving party. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not" suffice. *Id.* (internal quotation marks and citation omitted). "Factual allegations

must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted).

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); *see also Manzarek*, 519 F.3d at 1031. A "district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Otherwise, leave to amend shall be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2).

## III.   DISCUSSION

Defendant moves to dismiss all of Plaintiff's seven causes of action. *See generally* Mot. to Dismiss, Dkt. No. 16. Defendant also argues that Plaintiff lacks standing to sue based on Products she did not purchase; that Plaintiff lacks standing to pursue injunctive relief and equitable relief; that the Court should dismiss Plaintiff's request for punitive damages; and that Plaintiff's class allegations should be stricken. *See generally id.* The Court addresses each of Defendant's arguments.

### A.   Judicial Notice

A review of a motion to dismiss is generally "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted). The court may judicially notice facts that are not subject to reasonable dispute because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, the Court finds that the academic articles cited in the Complaint are incorporated by reference, as they are referenced extensively throughout the Complaint and form the basis of Plaintiff's claims.

Moreover, Defendant requests that the Court take judicial notice of the *Biotechnological production of citric acid* article, which is not mentioned specifically in the Complaint. Mot. to Dismiss at 7 n.4. Plaintiff does not oppose the request. This article is publicly available on a website that hosts scientific/academic journal articles. Thus, the Court grants the request for judicial notice of this article. *See Varela v. Walmart, Inc.*, 2021 WL 2172827, at *1 n.4 (C.D. Cal. May 25, 2021).

## B.    Plaintiff Plausibly Alleges the Products Contain Artificial Citric Acid

Defendant first argues that Plaintiff has failed to plausibly allege that the citric acid it uses is artificial, which would doom each of Plaintiff's claims. Mot. to Dismiss at 5–8. Defendant explains that Plaintiff makes only general allegations about the world's production of citric acid and that she fails to make any non-conclusory allegations about Defendant's use of citric acid in its Products. *Id.* at 5. Defendant further argues that Plaintiff only makes allegations about generic industry standards and fails to tie this to the citric acid in the Products. *Id.* at 6–7.

The Court disagrees. The Court finds that Plaintiff has drawn a sufficient connection between the industry practice of using artificial citric acid and Defendant's practices. Plaintiff alleges that Defendant uses artificially manufactured citric acid in the Products, which is manufactured using a black mold called *Aspergillus niger*. Compl. ¶ 18. Plaintiff also adds that "[c]hemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Products from *aspergillus niger* fermentation liquor" and that the "citric acid that Defendant uses in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents." *Id.* ¶ 22. Plaintiff also cites to numerous academic articles regarding citric acid and ultimately alleges that it "is not commercially feasible to use natural citric acid extracted from fruits[.]" *Id.* ¶ 19.

Accordingly, the Court finds that Plaintiff's Complaint goes beyond conclusory allegations of a common industry practice and is sufficiently detailed to provide enough factual support to raise Plaintiff's right to relief above a speculative level. *See, e.g., Hayes v. Kraft Heinz Co.*, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024) (finding that the plaintiffs had drawn a sufficient connection between the industry practice of using artificial citric acid and the defendants' practices when "Plaintiffs' complaint goes beyond simple allegations

of a common industry practice" and "Plaintiffs incorporate by reference several
academic studies and articles describing the history of citric acid and how the
artificial variety derived from *Aspergillus niger* has overtaken the natural variety")
(cleaned up); *Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *4 (N.D. Cal.
Oct. 22, 2024) ("Plaintiffs' well-supported allegations render it highly likely that
the citric acid included in the [food product] was artificially produced"); *Carbine v.
Target Corp.*, 2025 WL 501829, at *3 (C.D. Cal. Feb. 13, 2025) ("Plaintiff…has
established a plausibility that the citric acid in the products is artificially produced"
by alleging that the citric acid used is produced using heavy chemical processing
and relying on the same *Toxicology Reports Journal* article Plaintiff cites in her
Complaint).

Defendant also questions the articles and academic studies cited by Plaintiff,
including that the court in *Carbine* did "not consider the context (or appreciate the
irrelevance) of the *Toxicology Reports Journal*" article.  Mot. to Dismiss at 7–8.
However, *Carbine* explained that "[t]here is no magic source of information to
which Plaintiff needs access, so long as the allegations on the whole meet the
plausibility standard."  2025 WL 501829, at *3.  "[T]aking the allegations in the
Complaint as true and drawing all inferences in favor of Plaintiff, she has
established a plausibility that the citric acid in the products is artificially
produced."  *Id.*  The Court agrees and does not weigh factual challenges to articles
and academic studies relied upon in a complaint at the pleading stage.[1]

Thus, the Court finds that Plaintiff has sufficiently alleged that the Products
contain artificial citric acid that is sufficient to "raise a right to relief above the
speculative level[.]"  *Twombly*, 550 U.S. at 555 (citation omitted).

---

[1] As *Carbine* observes, "parties are permitted to make allegations on the basis of
their information and belief.  If such allegations turn out to be false, this is an issue
that relates more to Rule 11 than Rule 8 or Rule 12."  2025 WL 501829, at *3.
Moreover, Defendant acknowledges that it is "not arguing that the article is wrong
as a factual matter," but rather argues that the statistics do not "permit a plausible
inference as to [Defendant's] specific practices."  Reply at 4, Dkt. No. 21.
However, Defendant does not explain why the broader rate in other industries,
including the food industry, could not permit the inference sought by Plaintiff here,
at this pleading stage.

### C.    CLRA, UCL, FAL, and Breach of Express Warranty (Counts One, Two, Three, and Four)

Plaintiff brings her claims under the CLRA, UCL, and FAL[2] under a material misrepresentation and an omission theory, while she brings her breach of express warranty claim only under a misrepresentation theory. *See generally* Compl. The Court examines both theories below.

Because Plaintiff's misrepresentation and omission claims are grounded in fraud, they must also meet the heightened pleading standard outlined in Federal Rule of Civil Procedure 9(b). "The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud." *In re Trader Joe's Tuna Litig.*, 289 F.Supp.3d 1074, 1091 (C.D. Cal. 2017*)* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). "To satisfy Rule 9(b), '[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Id.* (quoting *Vess*, 317 F.3d at 1106).

### 1.    <u>Plaintiff Sufficiently Alleges a Misrepresentation Theory</u>

The consumer protection statutes under which Plaintiff states her claims "are governed by the reasonable consumer standard." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (internal quotation marks and citation omitted). "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks and citation omitted). "Generally, the issue of whether a business practice is deceptive is a fact question that cannot properly be resolved on a motion to dismiss." *Madenlian*, 2014 WL 7723578, at *2 (citing *id.*).

---

[2] "As a general matter, the UCL prohibits any unlawful, unfair or fraudulent business act or practice. The FAL prohibits any unfair, deceptive, untrue, or misleading advertising. The CLRA makes actionable unfair methods of competition and unfair or deceptive acts or practices." *Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *2 n.2 (C.D. Cal. Mar. 31, 2014) (cleaned up).

Plaintiff purchased the Product in or around May 2024.  Compl. ¶ 11.  In the Complaint, Plaintiff alleges that Defendant's packaging, labeling, and advertising is "intended to give consumers the reasonable belief that they are buying premium Products that are natural, made with ingredients from natural sources, and free from artificial ingredients."  *Id.* ¶ 5.  Plaintiff also alleges that the Products' front labels contain images of fresh fruit and prominently represent that the Products are "natural" and "made with ingredients from natural sources[.]"  *Id.* ¶ 14 (internal quotation marks omitted).  However, Plaintiff explains that the Products contain citric acid, an artificial ingredient not made from natural sources.  *Id.*  The Complaint notes that "the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product," *id.* ¶ 21, and that "[l]ike other reasonable consumers, Plaintiff was deceived by Defendant's unlawful conduct[.]"  *Id.* ¶ 6.  Accordingly, the Court finds that Plaintiff has sufficiently alleged that reasonable consumers are likely to be deceived under a misrepresentation theory.  *See, e.g., Corpuz v. Bayer Corp.*, 2023 WL 2292579, at *4 (S.D. Cal. Feb. 28, 2023) ("[n]umerous courts in the Ninth Circuit have found it plausible that a reasonable consumer would understand similar labeling involving 'natural' to mean that a product does not contain any non-natural ingredients"); *Madenlian*, 2014 WL 7723578, at *3 ("if a reasonable consumer shares [the plaintiff's] understanding of the phrase 'All Natural' in this context, then the presence of the allegedly non-natural artificial and synthetic ingredients listed in the Complaint would render the labeling misleading and deceptive") (cleaned up); *Williams*, 52 F.3d at 939 ("the statement that Fruit Juice Snacks was made with 'fruit juice and other all natural ingredients' could easily be interpreted by consumers as a claim that all the ingredients in the product were natural, which appears to be false").

Defendant argues that Plaintiff has failed to plausibly allege what "natural" or "made with ingredients from natural sources" means.  Mot. to Dismiss at 9 (internal quotation marks omitted).  However, as explained above, the Court disagrees.  Moreover, the Court does not find Defendant's reliance on *Pelayo* persuasive.  *Pelayo v. Nestle USA, Inc.*, 989 F.Supp.2d 973 (C.D. Cal. 2013).  In *Pelayo*, the court concluded that the definitions of "natural" offered by the plaintiff were implausible in the context of that particular case.  *See generally id.*  Here, the Complaint plausibly alleges one definition of "natural" in a different context.  Compl. ¶¶ 4, 18, 21.

Defendant next argues that no reasonable consumer would consider the front label's representations to extend to all ingredients.  Mot. to Dismiss at 9.

Defendant cites to *McGinity*, where the court held that when "a front label is
ambiguous, the ambiguity can be resolved by reference to the back label." 69 F.4th
at 1099; Mot. to Dismiss at 10–11. *McGinity* involved a shampoo and conditioner
that displayed the words "Nature Fusion" in bold, capitalized letters, an image of
an avocado on a green leaf, and an image of a gold vitamin. 69 F.4th at 1095–96
(internal quotation marks omitted). The plaintiff argued that the label suggested
the product was "natural," when it really "contain[ed] non-natural and synthetic
ingredients[.]" *Id.* at 1096. The court held that the product's labeling was
ambiguous because "'Nature Fusion' could mean any of a number of things: that
the products are made with a mixture of natural and synthetic ingredients, that the
products are made with a mixture of different natural ingredients, or something
else entirely." *Id.* at 1098.

Plaintiff argues that the term "Fusion" indicates an inherent ambiguity,
whereas the terms "natural" and "made with ingredients from natural sources" do
not. Opp'n at 10–11 (internal quotation marks omitted). However, *McGinity* held
that "[u]nlike a label declaring that a product is '100% natural' or 'all natural,' the
front 'Nature Fusion' label does not promise that the product is wholly natural."
69 F.4th at 1098. Similarly, here, the terms "natural" and "made with ingredients
from natural sources" are ambiguous because "the front label does not make any
affirmative promise about what proportion of the ingredients are natural." *Id.*

The next question is whether the Product's back label clarifies the ambiguity.
The Court holds that, at this pleading stage, it does not. Defendant alleges that the
Product's back label clarifies any ambiguity by stating that the Product is "made
with real fruit, bringing you a delicious fruit taste" and that it has "no artificial
flavors or colors." Mot. to Dismiss at 10–11 (internal quotation marks omitted).
Defendant further argues that a reasonable consumer would understand that the
front label only extends to the fruit in the Product, not all ingredients. *Id.* at 11.

However, as Plaintiff points out, simply reviewing the rear label, unlike in
*McGinity*, cannot as a matter of law dispel the impression formed by the front label
because discovery of the artificial citric acid requires information beyond the
knowledge of the average consumer. Opp'n at 11. The court in *Fried* held:

> Even if reasonable consumers looked to the back label of one of
> Defendant's Products to learn about the ingredients, they could not
> know that the citric acid listed among the ingredients was an artificial,
> industrially-manufactured chemical, especially because citric acid

occurs naturally in fruits as well.  In any event, questions regarding how consumers interpret terms or phrases on product labels are factual inquiries best suited for resolution at a later stage of the litigation and not on a motion to dismiss.

*Fried v. Snapple Beverage Corp.*, 753 F.Supp.3d 1145, 1153 (S.D. Cal. 2024) (cleaned up).

Thus, at the pleading stage, the Court finds that Plaintiff has sufficiently alleged a misrepresentation theory.

## 2. <u>Plaintiff Fails to Sufficiently Allege an Omission Theory</u>

"To plausibly allege a fraudulent omission, the omission must either (1) 'be contrary to a representation actually made by the defendant,' or (2) 'an omission of a fact the defendant was obliged to disclose.'" *McKinney v. Corsair Gaming, Inc.*, 2022 WL 2820097, at *9 (N.D. Cal. July 19, 2022) (quoting *Anderson v. Apple Inc.*, 500 F.Supp.3d 993, 1012 (N.D. Cal. 2020)).  "The phrase 'contrary to a representation actually made by the defendant' is also known as a 'partial omission.'"  *Id.* (quoting *Anderson*, 500 F.Supp.3d at 1013).  "Thus, a duty to disclose may be 'triggered' by affirmative representations."  *Id.* (citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018)).  "The other type of omission implies a freestanding obligation to disclose, regardless of whether the defendant makes any misleading representation (a so-called 'pure omissions' claim)."  *Id.* (citing *Anderson*, 500 F.Supp.3d at 1012).

Here, Plaintiff is alleging a claim under the partial omission theory.  Plaintiff argues that the Products' front labels affirmatively represent that the Products are "natural" and "made with ingredients from natural sources," leading reasonable consumers to believe that the Products do not contain artificial ingredients.  Opp'n at 13 (internal quotation marks omitted); Compl. ¶ 62.  However, Plaintiff alleges that the citric acid in the Products is an artificial ingredient not made from natural sources.  Compl. ¶ 4.

Defendant argues that Plaintiff did not mention partial omission in her Complaint.  Reply at 7.  Defendant also argues that Plaintiff's omission theory fails because she alleges the labels on the Products were outright false, not partially true.  *Id.*  "[T]he entire theory of a case based on partial omissions is that what is disclosed is in some sense true but that the whole truth is missing."  *Anderson*, 500

F.Supp.3d at 1013.  "Plaintiffs cannot allege a partial omission triggering a duty to disclose where they only claim that Defendant's marketing materials are outright false."  *Hamman v. Cava Grp., Inc.*, 2023 WL 3450654, at *9 (S.D. Cal. Feb. 8, 2023).

The Court agrees with Defendant's arguments here.  Indeed, Plaintiff alleges in her Complaint that the "representations are false because the Products contain citric acid, an artificial ingredient not made from natural sources."  Compl. ¶ 4. The allegations in the Complaint make clear that Plaintiff is arguing that the labels are outright false.  Thus, the Court finds that Plaintiff fails to allege her claims under a partial omission theory.  *See Hamman*, 2023 WL 3450654, at *9 (finding that a partial omission theory fails when the plaintiffs allege that "Defendant holds its Products out as healthy and safe when, in fact, they are not because they contain PFAS") (cleaned up).  Given that Plaintiff does not argue any other theory of omission in her Opposition, Plaintiff's omission theory fails.

Nonetheless, Defendant's Motion to Dismiss Counts One, Two, Three, and Four is denied because Plaintiff has sufficiently alleged her claims under a misrepresentation theory.[3]

### D.    Breach of Implied Warranty (Count Five)

"To state a claim under the implied warranty of merchantability, a party must plead that the product in question 'lacks even the most basic fitness for ordinary use.'"  *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12, 2014) (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir.2009)). "'Vertical privity is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.'"  *In re NVIDIA GPU Litig.*, 2009 WL 4020104, at *6 (N.D. Cal. Nov. 19, 2009) (quoting *All West Elecs., Inc. v. M–B–W, Inc.*, 64 Cal.App.4th 717, 724 (1998)).  An exception to the vertical privity requirement in an implied warranty claim arises "when the plaintiff relies on written labels or advertisements of a manufacturer."  *Clemens v.*

---

[3] The breach of express warranty claim also relies on a misrepresentation theory here.  *See DiGiacinto v. RB Health (US) LLC*, 668 F.Supp.3d 950, 966 (N.D. Cal. 2023) ("As the court has already found that these allegations are sufficient to state a claim under the reasonable consumer standard, they are likewise sufficient to state a claim for breach of express warranty.") (internal quotation marks and citation omitted).

*DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Privity is also "not
required for breach of warranty claims for consumable goods."  *Bitton v. Gencor
Nutrientes, Inc.*, 654 F.App'x 358, 363 (9th Cir. June 28, 2016); *see also
Hammock v. Nutramarks, Inc.*, 2016 WL 4761784, at *5 (S.D. Cal. Sept. 12, 2016)
("for implied warranty claims, an exception has been made in cases involving
foodstuffs") (internal quotation marks and citation omitted).

Defendant argues that Plaintiff's implied warranty claim fails because
Plaintiff does not allege vertical privity between Plaintiff, the consumer, and
Defendant, the manufacturer.  Mot. to Dismiss at 14.  Moreover, Defendant argues
that Plaintiff includes no allegations about the ordinary use of what she was sold.
*Id.*  Defendant, in its Reply, also argues that the exception to the privity
requirement only applies when Plaintiff alleges a physical injury or when the
products were not safe for consumption.  Reply at 8.  However, this does not apply
to the exception involving written representations.  *See Van Mourik v. Big Heart
Pet Brands, Inc.*, 2018 WL 1116715, at *5 (N.D. Cal. Mar. 1, 2018).

Here, Plaintiff has sufficiently alleged that Defendant has made
misrepresentations to Plaintiff through the labels on the Products and that recovery
is allowed on the theory of express warranty, as discussed above.  Compl. ¶¶ 3, 5.
Accordingly, the exception to the privity requirement would apply on these
grounds.  *See, e.g., Van Mourik*, 2018 WL 1116715, at *5 ("[b]ecause the
representations at issue are written advertisements and because [the plaintiff] has
stated a plausible claim for breach of express warranty, the vertical privity rule
does not bar an implied warranty claim under California law"); *Roper v. Big Heart
Pet Brands, Inc.*, 510 F.Supp.3d 903, 924 (E.D. Cal. 2020) ("because the alleged
representations here are written advertisements and because plaintiff has stated a
plausible claim for breach of express warranty, the vertical privity rule does not bar
plaintiff's implied warranty claim"); *Atkinson v. Elk. Corp. of Texas*, 142
Cal.App.4th 212, 229 (2006) ("[i]t would be inconsistent to recognize privity
existing for breach of express quality warranties under Magnuson–Moss and to
reach the opposite conclusion in the same transaction for breach of the implied
warranty of merchantability").

Moreover, Plaintiff sufficiently alleges a breach of implied warranty of
merchantability.  "The California Supreme Court has explained that
[m]erchantability has several meanings…the product must [conform] to the
promises or affirmations of fact made on the container or label, and must be fit for
the ordinary purposes for which such goods are used."  *In re Ferrero Litig.*, 794

F.Supp.2d 1107, 1118 (S.D. Cal. 2011) (quoting *Hauter v. Zogarts*, 14 Cal.3d 104, 117–18 (1975)) (internal quotation marks omitted).

Here, Plaintiff brings her claim under the theory that the Products did not conform with the promises or affirmations of fact made on the container or label, as Plaintiff is alleging that that Defendant made an affirmation of fact that the Products are "natural," and Defendant breached that implied warranty because the Products contain artificial citric acid.  Compl. ¶¶ 3, 4 (internal quotation marks and emphasis omitted).  Thus, Plaintiff has plausibly alleged that Defendant has not conformed with its affirmation that the Products are "natural" and "made with ingredients from natural sources."  *Id.* ¶ 3 (internal quotation marks and emphasis omitted); *see In re Ferrero*, 794 F.Supp.2d at 1118 ("Although Ferrero argues that Nutella® is fit for its ordinary purpose of consumption, Plaintiffs are bringing their claim under a different definition of merchantability, whether the product conforms with the promises or affirmations of fact made on the container or label.  Accordingly, the Court declines to dismiss Plaintiffs' claim for breach of the implied warranty of merchantability.") (cleaned up); *see also Fried*, 753 F.Supp.3d at 1153–54 (regarding an implied warranty claim, the court held that "[a]t this point in the litigation, Plaintiff has plausibly alleged that Defendant has not conformed with its affirmation that its Products are 'ALL NATURAL'.").

Thus, Defendant's Motion to Dismiss Count Five is denied.

### E.    Negligent and Intentional Misrepresentation/Fraud (Counts Six and Seven)

Defendant next argues that the economic loss rule bars Plaintiff's claims for negligent misrepresentation and intentional misrepresentation/fraud.  Mot. to Dismiss at 15.

"There is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the parties."  *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal.5th 905, 923 (2022) (cleaned up).  "Not all tort claims for monetary losses between contractual parties are barred by the economic loss rule.  But such claims are barred when they arise from – or are not independent of – the parties' underlying contracts."  *Id.* (citations omitted).  "The economic loss rule prevents the law of contract and the law of tort from dissolving one into the other."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (cleaned up).  "If every negligent breach of a contract gives rise to tort damages[,]

the [economic loss rule] would be meaningless, as would the statutory distinction between tort and contract remedies." *Id.* at 990 (internal quotation marks and citation omitted). The economic loss rule applies when "the parties are in contractual privity and the plaintiff's claim arises from the contract (in other words, the claim is not independent of the contract)." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal.App.5th 515, 535 (2022) (citing *Sheen*, 12 Cal.5th at 923).[4]

As an initial matter, the Court notes that the Parties appear to agree that they are not in contractual privity.[5] Moreover, even where there is contractual privity, "the economic loss rule does not act as an *absolute* bar to tort recovery in every case in which the parties have a contractual relationship. Courts generally permit tort suits if the defendant allegedly violated a duty rooted in tort principles that is independent of the parties' contractual rights and obligations and exposed the plaintiff to a risk of harm beyond the parties' reasonable contemplation when they entered into the contract." *Rattagan*, 17 Cal.5th at 23 (cleaned up).

Defendant's Motion focuses solely on the nature of damages or injury at issue. But Defendant does not analyze the nature of the duty or causation. And Defendant does not raise any argument under the broader independent tort principle in light of the warranty theories alleged here or address that one of the claims here involves alleged intentional misrepresentations and both involve affirmative misrepresentations. *See, e.g., Seely v. White Motor Co.*, 63 Cal.2d 9 (1965) (discussing the development of the law of products liability and analyzing the economic loss rule in the context of sale of goods or products where there is contractual privity); *Rattagan*, 17 Cal.5th at 38 ("[T]he economic loss rule does not apply to limit recovery for intentional tort claims like fraud. The doctrine only applies to bar tort recovery for negligently inflicted economic losses unaccompanied by physical or property damage under the limits recognized in *Sheen*.") (citations omitted); *Robinson*, 34 Cal.4th at 991 (explaining that the

---

[4] "The economic loss rule is best understood as a specific application of the same independent tort principle reflected in" prior cases evaluating the independent tort doctrine. *Rattagan v. Uber Technologies, Inc.*, 17 Cal.5th 1, 26 (2024).

[5] Although the absence of contractual privity does not preclude consideration of the economic loss rule, for example, in the context of determining whether a duty of care arises sufficient to state a claim for negligence, *see, e.g., J'Aire Corp. v. Gregory*, 24 Cal.3d 799 (1979), "negligent misrepresentation is a separate and distinct tort from negligence." *Sheen*, 12 Cal.5th at 943 (cleaned up).

economic loss rule does not bar claims based on affirmative misrepresentations
independent of the breach of contract).

Without the benefit of analysis or briefing by the Parties on any of these
issues, the Court finds that at this stage, the negligent and intentional
misrepresentation claims here are not barred.  Rather, Plaintiff sufficiently alleges
that the "injury-causing conduct violated a duty that is independent of [any] duties
and rights assumed by the parties when they entered [any] contract" and that the
conduct "must have caused injury to persons or property that was not reasonably
contemplated by the parties when [any] contract was formed."  *Rattagan*, 17
Cal.5th at 20–21.

As a result, Defendant's Motion to Dismiss Counts Six and Seven based on
the economic loss rule is denied.

### F.    Plaintiff Does Not Have Standing to Sue for Substantially Similar Products

Defendant maintains the position that because Plaintiff only purchased one
of the Products but seeks to bring this lawsuit on behalf of individuals who
purchased other Products, Plaintiff lacks standing to sue based on Products she did
not purchase.  Mot. to Dismiss at 15–17.

"There is a split in authority among district courts in the Ninth Circuit
[regarding] whether plaintiffs have Article III standing to bring claims for products
they did not personally purchase but that were purchased by unnamed class
members."  *Oh v. Fresh Bellies, Inc.*, 2024 WL 4500727, at *4 (C.D. Cal. Oct. 15,
2024).  "The prevailing view in the Ninth Circuit is that class action plaintiffs can
bring claims for products they did not purchase as long as the products and alleged
misrepresentations are substantially similar."  *Clevenger v. Welch Foods Inc.*, 2022
WL 16964009, at *4 (C.D. Cal. Feb. 25, 2022) (cleaned up) (collecting cases).
However, some courts in this circuit have dismissed claims regarding non-
purchased products for lack of standing.  *See e.g., Lorentzen v. Kroger Co.*, 532
F.Supp.3d 901, 908–09 (C.D. Cal. 2021) (dismissing claims based on products not
purchased); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *5 (N.D. Cal. June
14, 2012) (holding that "plaintiffs do not have standing to bring this claim because
they did not purchase the Crescent Rolls and therefore, as a matter of law, could
not have suffered a particularized injury as required by Article III"); *Oh*, 2024 WL
4500727, at *4 ("in light of the analysis in *Lorentzen*, the Court is persuaded that

Plaintiff does not have standing to bring claims for products she did not
purchase").

The Court agrees with the analysis in *Lorentzen*, *Larsen*, and *Oh*, and finds
that Plaintiff does not have standing to bring claims for products she did not
purchase.  The Court finds that "the 'substantial similarity' analysis appears to be
inconsistent with the basic concept of standing.  The standing requirement extends
to each claim and each remedy sought."  *Lorentzen*, 532 F.Supp.3d at 908–09
(citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).  "Plaintiff has
not shown that another's purchase of a different variation of the Product, although
similar, is 'an invasion of [her own] legally protected interest.'"  *Oh*, 2024 WL
4500727, at *4 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).
"The similarity of a product, by itself, does not explain how Plaintiff suffered an
injury traceable to the allegedly wrongful conduct of another."  *Id.*  "[A] class
action ... adds nothing to the question of standing, for even named plaintiffs who
represent a class must allege and show that they personally have been injured, not
that injury has been suffered by other, unidentified members of the class to which
they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343,
357 (1996) (internal quotation marks and citation omitted).

Plaintiff bought only one of the Products named in the Complaint, the
Smucker's Natural Triple Berry Fruit Spread.  Compl. ¶ 11.  She, therefore, did not
suffer any injury related to the other Products mentioned in the Complaint.
Because there is no injury, Plaintiff lacks standing to assert claims on Products she
did not purchase.

Accordingly, Plaintiff has standing to bring claims related to the Smucker's
Natural Triple Berry Fruit Spread she purchased but not to the other Products she
did not purchase.

### G.    Plaintiff Does Not Have Standing to Pursue Injunctive Relief But Sufficiently Pleads the Inadequacy of a Remedy at Law

Defendant argues that Plaintiff is not entitled to injunctive and equitable
relief for two reasons.  Mot. to Dismiss at 17–18.  First, because Plaintiff has
failed to establish she has standing to pursue injunctive relief, as Plaintiff must
show an actual and imminent injury.  *Id.* at 17.  Second, because Plaintiff has not
established that she lacks an adequate remedy at law.  *Id.* at 18.

Defendant's first argument is that Plaintiff has failed to establish any injury because she would now know that whenever commercial products contain citric acid, it must be artificial. *Id.* at 17. In other words, there is no risk of being misled in the future. *Id.*

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). *Davidson* further held that:

> A previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 969–70 (cleaned up).

In *Davidson*, the plaintiff purchased wipes that were advertised as "flushable." *See id.* at 961 (internal quotation marks omitted). The plaintiff then realized the wipes were not flushable. *See id.* The court held that the plaintiff "faces the similar injury of being unable to rely on [the defendant's] representations of its product in deciding whether or not she should purchase the product in the future." *Id.* at 971–72.

Here, Plaintiff has alleged that she "desires to, and would, purchase the Products again if the Products' labels were accurate and if the Products truthfully contained only natural ingredients." Compl. ¶ 13. Plaintiff adds that "as a result of Defendant's ongoing misrepresentations, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products." *Id.*

However, Defendant cites to *Squeo*, where the plaintiffs were deceived by the no-artificial-preservatives representation because they did not expect chips to contain citric acid. 2024 WL 4557680, at *8. The court dismissed the plaintiffs' request for injunctive relief because the court found that in the future, the plaintiffs would now know to check the ingredients list on the packaging to determine if the defendants added citric acid to the chips. *Id.* "Armed with the ability to easily determine whether the chips contain citric acid, there is simply no threat that Plaintiffs will be deceived in the same way again." *Id.* Other California district courts have also followed this reasoning. In *Rahman*, the court distinguished from *Davidson* and held "that there is no future risk that plaintiff will be misled by the 'No Sugar Added' label" when the plaintiff "is able to rely on the packaging now that he understands the 'No Sugar Added' label." *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018). And in *Jackson*, the court explained that because the plaintiff "now knows she can ascertain the amount of cereal she is buying by looking at the label [on a box], she has not shown any likelihood she will be deceived in the future" as to the amount of cereal in that box. *Jackson v. General Mills, Inc.*, 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

Similarly, here, the Court agrees with the reasoning in *Squeo*, *Rahman*, and *Jackson*, and finds that Plaintiff can easily determine whether the Products contain citric acid by simply looking at the ingredients label. In *Davidson*, the plaintiff alleged she had no way of determining whether future representations would be true. *See* 889 F.3d at 972. However, that is not the case here. Plaintiff argues that the ingredient list on the rear label says nothing about the ingredient's sourcing, or that the citric acid is artificial and not extracted from citrus fruit. Opp'n at 17. However, the whole premise of Plaintiff's lawsuit is that citric acid is "an artificial ingredient not made from natural sources." Compl. ¶ 14. Accordingly, by simply looking at the ingredients label, Plaintiff can uncover whether the Product contains citric acid and avoid purchasing it.[6]

---

[6] Plaintiff's own argument connecting the universal and widespread use of artificial citric acid in the food industry to Defendant's practices undermines her argument

Thus, the Court will dismiss Plaintiff's request for injunctive relief, without leave to amend, because Plaintiff "cannot plead around [her] inability to be deceived again without fundamentally changing [her] allegations." *Squeo*, 2024 WL 4557680, at *8; *see also Caldwell v. Nordic Nats., Inc.*, 709 F.Supp.3d 889, 913 (N.D. Cal. 2024) ("Defendant's motion is granted without leave to amend in relation to Plaintiff's claims for injunctive relief because Plaintiffs cannot cure the allegation with additional facts given the nature of the product at issue. In other words, no amount of amending the complaint would render the product more akin to the flushable wipes in *Davidson*.").

However, the Court finds that Plaintiff has sufficiently plead the inadequacy of a remedy at law to seek other forms of equitable relief.[7] "To establish equitable jurisdiction and recover equitable relief, a plaintiff must plead and show a lack of adequate remedies at law." *Crowder v. Shade Store, LLC*, 2025 WL 754067, at *2 (N.D. Cal. Mar. 10, 2025) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)).

Here, Defendant does not address the actual allegations contained in the Complaint regarding the lack of an adequate remedy at law. Therefore, the Court finds that Plaintiff has sufficiently alleged that no adequate remedy at law exists. Compl. ¶¶ 40–41. Accordingly, the Court denies Defendant's Motion to Dismiss Plaintiff's claims to the extent they seek other forms of equitable relief.

## H.    Plaintiff's Request for Punitive Damages Is Dismissed

"California law limits the ability to impose punitive damages on a corporate employer for the acts of an employee." *Bridges v. Kohl's Stores, Inc.*, 2024 WL 584319, at *7 (E.D. Cal. Feb. 13, 2024) (citing Cal. Civ. Code § 3294). "California federal district courts have consistently held that a plaintiff who seeks punitive damages against a corporate defendant must plead more than non-

---

here that she has insufficient information to know that the citric acid continues to be artificial.

[7] In a previous footnote in its Tentative Order, the Court declined to address this argument, although noted that the Defendant had raised it. However, because Defendant argued at the hearing that a finding that all forms of equitable relief are foreclosed results in the dismissal of several causes of action, the Court now addresses it.

conclusory allegations that an officer, director or managing agent of the defendant authorized or ratified the conduct that constitutes malice, fraud or oppression." *Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022) (cleaned up) (collecting cases).

Defendant moves to dismiss Plaintiff's Complaint to the extent it seeks punitive damages because Plaintiff fails to include allegations about any officer, director, or managing agent. Mot. to Dismiss at 18.

Here, Plaintiff alleges that "Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products[.]" Compl. ¶ 8. However, Plaintiff has not sufficiently alleged any facts that would show that an officer, director, or managing agent of Defendant authorized or ratified any conduct that could constitute malice, fraud, or oppression.[8] And "conclusory allegations of authorization or ratification fail to satisfy federal pleading standards" when the plaintiff has not "alleged a single fact tending to show that any officer, director, or managing agent took any action amounting to authorization or ratification of the alleged misconduct[.]" *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011).

The Court takes into account that district courts in California have not uniformly applied whether punitive damages can be dismissed at the pleading stage. However, the Court will apply the *Iqbal* standard to assess whether punitive damages have been sufficiently alleged. And numerous California district courts have followed this approach and dismissed requests for punitive damages at the pleading stage. *See, e.g., Bridges*, 2024 WL 584319, at *7; *Simmons v. Target Corp.*, 2018 WL 6167924, at *4 (C.D. Cal. Aug. 20, 2018); *Gamino v. Spin Master, Inc.*, 2025 U.S.Dist.LEXIS 69898, at *27–*28 (C.D. Cal. Mar. 31, 2025); *Khan v. 7-Eleven, Inc.*, 2015 WL 12743691, at *2–*3 (C.D. Cal. Sept. 15, 2015).

Accordingly, Plaintiff has failed to sufficiently plead a basis for punitive damages, and the Court dismisses the request for punitive damages, with leave to amend.

---

[8] California Civil Code § 3294(b) also provides for punitive damages in other circumstances, also not alleged here, such as an act of oppression, fraud, or malice by an officer, director, or managing agent. Cal. Civ. Code § 3294(b).

## I.      Defendant's Motion to Strike Class Allegations Is Premature

Lastly, Defendant moves to strike Plaintiff's class allegations.  Mot. to Dismiss at 18–20.

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, "[d]etermining whether to certify a class is normally done through a motion for class certification under Rule 23."  *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1179 (S.D. Cal. 2012).  "[S]uch a [Rule 12(f)] motion appears to allow parties a way to circumvent Rule 23 in order to make a determination of the suitability of proceeding as a class action without actually considering the motion for class certification."  *Id.*  Thus, as "long as class action allegations address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent, the court should find that the allegations are sufficient to survive a motion to strike."  *Id.* (internal quotation marks and citation omitted).

Defendant argues that Plaintiff lacks standing to assert claims outside of California and that the application of multiple states' laws is unmanageable under Federal Rule of Civil Procedure 23.  Mot. to Dismiss at 18–20.

First, "'once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.'"  *Sidhu v. Bayer Healthcare Pharms. Inc.*, 2023 WL 6541865, at *7 (N.D. Cal. Oct. 5, 2023) (quoting *Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015)).  District courts sitting in diversity "apply the substantive law of the state in which it sits[.]"  *Harmsen v. Smith*, 693 F.2d 932, 946 (9th Cir. 1982) (citation omitted).

Here, the Court applies California law.  Plaintiff's claims are brought under the laws of California on behalf of the nationwide class and California subclass.  Plaintiff does not assert claims under any law outside of California.  And because Plaintiff has individual standing to bring all of her claims under California law, the "'standing inquiry is concluded.'"  *Sidhu*, 2023 WL 6541865, at *7 (quoting *Arpaio*, 784 F.3d at 1262).[9]

---

[9] Defendant does not dispute that Plaintiff individually lacks standing on any of her causes of action.

Regarding Defendant's second argument that the application of multiple states' laws is unmanageable, the "Court agrees that it is preferable to defer ruling on the scope of the class in the context of a class certification motion and not a motion to dismiss." *Fitzhenry-Russell v. Coca-Cola Co.*, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017); *see also Vance v. Church & Dwight Co.*, 2023 WL 2696826, at *6 (E.D. Cal. Mar. 29, 2023) ("the question of whether [the plaintiff] can bring claims under the laws of non-California states is better suited for a motion for class certification").

Accordingly, Defendant's Motion to strike the class allegations is denied.

## IV.    CONCLUSION

For the reasons stated above, the Court:

- DENIES Defendant's Motion to Dismiss Counts One, Two, Three, Four, Five, Six, and Seven;
- GRANTS Defendant's Motion to Dismiss the request for injunctive relief, without leave to amend;
- DENIES Defendant's Motion to Dismiss Plaintiff's requests for other equitable relief;
- GRANTS Defendant's Motion to Dismiss punitive damages, with leave to amend; and
- DENIES Defendant's Motion to Strike Class Allegations.

Any amended complaint must be filed within **fourteen (14) days** of the date this Order is filed and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the original complaint, Plaintiff must include in it all the claims they wish to present.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Plaintiff may not incorporate material from the original Complaint by reference.

**IT IS SO ORDERED.**