Lilach H. Klein (SBN 323202)
lilach@crosnerlegal.com
Craig W. Straub (SBN 249032)
craig@crosnerlegal.com
Michael T. Houchin (SBN 305541)
mhouchin@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
**CROSNER LEGAL, P.C.**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-763
Fax: (310) 510-6429

Attorneys for Plaintiff Adina Ringler

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No.:  2:25-cv-01138-AH-E<br><br>**STIPULATED AND ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>[Discovery Document: Referred to Magistrate Judge Charles F. Eick]<br><br>Action Filed: February 10, 2025 |

## I.     PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this Court's Standing Order on Discovery Disputes, and any other applicable orders and rules. Nothing in this order is intended to alter or affect any party's rights or obligations under any order by the assigned District Judge, but shall be construed instead, wherever possible, as consistent with any order by the assigned District Judge.

## II.    COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.

## III.   GENERAL TERMS

A.     The ESI Protocol shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party.  Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

B.     To the extent a technical term is not defined herein, those technical terms shall be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management," Fifth Ed., February 2020.

C.     To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

1

2    **IV.    DEFINITIONS**

3         A.      "Document" is defined to be synonymous in meaning and equal in

4    scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil

5    Procedure.

6         B.      "Electronically stored information" or "ESI," as used herein has the

7    same meaning as in Federal Rules of Civil Procedure 26 and 34.

8         C.      "Hard-Copy Document" means Documents existing in paper form at

9    the time of collection.

10        D.      "Native Format" means and refers to an electronic document's

11   associated file structure defined by the original creating application.  For example,

12   the native format of an Excel workbook is a .xls or .xslx file.

13        E.      "Metadata" refers to application and system information of a file that

14   contains data about the file, as opposed to describing the content of a file, as the

15   term is described and used in "The Sedona Conference Glossary: E-Discovery and

16   Digital Information Management," Fifth Ed., February 2020.

17        F.      "Optical Character Recognition" or "OCR" means the process of

18   recognizing, and creating a file containing, visible text within an image.

19        G.      "Hash Value" is a unique numerical identifier that can be assigned to a

20   file, a group of files, or a portion of a file, based on a standard mathematical

21   algorithm applied to the characteristics of the data set.

22        H.      "Confidentiality Designation" means the legend affixed to

23   "Confidential" or "Highly Confidential – Attorneys' Eyes Only" Discovery Material

24   as defined by, and subject to, the terms of the Stipulated Protective Order.

25        I.      "Searchable Text" means the native text extracted from ESI and any

26   Optical Character Recognition text ("OCR text") generated from a Hard-Copy

27   Document or electronic image.

28

## V.    ESI PERSON(S) MOST KNOWLEDGEABLE

The parties have identified ESI Person(s) Most Knowledgeable ("ESI PMK") to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI PMK will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the ESI PMK, as needed, to confer about ESI and to help resolve disputes without court intervention.

## VI.    PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

A.    The parties have exchanged a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

B.    The parties have agreed/will agree on the number of custodians per party for whom ESI will be preserved;

1.    The parties have agreed that data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced

## VII.    SEARCH

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI to

identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

To the extent that keyword or other methodologies are used in limiting the universe of potentially responsive documents to be reviewed, the parties shall meet and confer to try to develop a mutually agreeable list of search terms and protocols prior to the production of documents. Any search methodology employed must support the use of stemmed searches (e.g., using * to include variations on a keyword), fuzzy, and Boolean searches. The documents on which the search terms hit and that are within the date and custodian restrictions are referred to as the "Review Set."

The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. The parties anticipate that they will agree on search terms, date restrictions, and custodian restrictions.

## VIII. PRODUCTION FORMATS

The parties agree to produce documents in PDF, TIFF, and native, or a combination thereof file formats. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process.

The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person.

### A.    PAPER FORMAT

For documents originating in paper format, the following specifications should be used for their production:

- **TIFFs**. All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and 8½ X 11 inch page size, except for documents requiring different resolution or page size. Each imaged version of an electronic document will be created directly from the original electronic document.

- **Color**. TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court.  Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

- **Unique IDs**. Each image should have a unique filename, which is the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example, ABC0000001).

- **Concordance Delimited Load File/Opticon Cross-Reference File**. Documents should be provided with a Concordance Delimited File and an Opticon Cross- Reference File. Every TIFF in each production delivery must be referenced in the production's corresponding Load File. The total number of images referenced in a production delivery's Load File should match the total number of TIFF files in the production. The Concordance Delimited Load File should contain available fielded data, including Beginning Bates Number, Ending Bates Number, and Number of Pages.

- **Objective Coding Fields**. The load files accompanying any scanned paper documents will include the following objective coding fields:

| Field | Description |
|---|---|
| Bates_Begin | The Bates number of the first page of the document |

| Bates_End | The Bates number of the last page of the document |
|---|---|
| Custodians | The custodian or source where the document was found |
| OCR/Text Path | The relative path to the OCR/Txt Files |
| Redaction | Whether the document is redacted (Yes/No) |
| Redaction_Reason | Reason for redaction |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to any protective order in the case |
| Prod_Volume | Production volume |

B.    **EMAIL AND ELECTRONIC DOCUMENTS**

The TIFF, Unique ID, and Opticon Cross- Reference File specifications above also apply to electronic information. In the alternative, electronic information may be provided solely in its native or "near-native" format. The table below supplies examples of agreed-upon native or near-native forms in which specific types of ESI should be produced:

| Source ESI | Native or Near-Native Form or Forms Sought |
|---|---|
| Word Processing Documents | .DOC, .DOCX, .ODT, .RTF, .WPD, .Pages |
| Spreadsheets | .XLS, .XLSX, .ODS, .Numbers |
| Presentations | .PPT, .PPTX, .ODP, .Keynote |
| Microsoft Access Databases | .MDB, .ACCDB |
| Documents | .PDF, .JPG, .GIF, .TIF, .TIFF, .PNG |
| Audio or Video Files | .MP3, .MOV., MP4, .AVI, .WAV, .WMA |

| E-mail | Messages should be produced in a form(s) that readily supports import into standard e-mail client programs; that is, the form of production should adhere to the conventions set out in RFC 5322 (the internet e-mail standard). For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source foldering data is preserved and identified in the metadata in the load file. For Lotus Notes mail, furnish .NSF files or convert to .PST. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced in a Concordance Delimited Load File. |
|---|---|

If production in native or near-native forms is preferred, the parties should further meet and confer regarding whether any data is encrypted or password-protected (in which case the producing party shall provide a means to gain access to those files), requires proprietary or legacy software for review, as well as any other format-related issues reasonably foreseeable due to the native or near-native production formatting. Moreover, the file names for electronic information produced in native or near-native format should be their Unique ID number. The native or near-native production should also include Concordance delimited load files containing the metadata associated with each electronic document, including those metadata fields identified below, along with the extracted text and a link to the produced native file.

**Parent-Child Relationships.** Attachments, enclosures, and/or exhibits to any parent document should also be produced and proximately linked to the respective parent document (and vice-versa). The child-document should be produced

8

*Ringler v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E
Stipulated and Order Re: Discovery of Electronically Stored Information

1  immediately after the parent-document.

2  **Tracked Changes and Comments.** To the extent that a document contains
3  tracked changes or comments, the document should be imaged showing tracked
4  changes and comments.

5  **Embedded Documents.** If reasonably possible, embedded ESI documents
6  (*e.g.,* a spreadsheet embedded within a word processing document) will be extracted,
7  produced as independent document records and related back to the respective top level
8  parent document (*e.g.*, standalone file, email message, *etc*.) via the Attach_Begin and
9  Attach_End fields referenced below. Related documents will be produced within a
10 continuous Bates range.

11 **Concordance Delimited Text File / Metadata.** Using the delimiters detailed
12 above, the Concordance Delimited Text file applicable to electronic documents
13 produced in TIFF should also contain all available metadata, but at a minimum and to
14 the extent applicable, available and/or unredacted, the following extracted metadata
15 fields should be included:

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | X | X |
| Duplicate Custodian (or similar name) | Name of duplicate custodian(s) of email(s) or file(s) produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |

9

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| From | From field extracted from an email message | X | |
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| EmailSubject | Subject line extracted from an email message | X | |
| Filename | File name — Original name of file as appeared in original location | | X |
| Title | Title field extracted from the metadata of a non-email document | | X |
| DateSent | Sent date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| DateRcvd | Received date of an email message (mm/dd/yyyy format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |
| DateCreated | Date that a non-email file was created  (mm/dd/yyyy format) | | X |
| DateLastModified | The application recorded time on which the document was last modified | | X |
| TimeSent | Time e-mail was sent (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |

*Ringler v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E
Stipulated and Order Re: Discovery of Electronically Stored Information

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| TimeRcvd | Time e-mail was received (hh:mm:ss format) (a given email will have either a TimeSent or Time Recvd, but not both) | X | |
| FileExtension | The file extension for the document | | X |
| FilePath | File path storage location of the document or email if the source application allows for the creation of folders | X | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| TextLink | Relative path to any OCR/extracted text files in the production set | X | X |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |
| Redaction | Identifies if a document has been redacted | X | X |

If a producing party intentionally withholds some or all of the metadata that was contained in the electronic documents, the producing party shall inform all other parties of this fact, in writing, at or before the time of production.

**Extracted Text Files.** For each electronic document, a text file (not OCR text) should be provided along with the TIFF. Electronic text should be extracted directly from the native file and should be delivered on a document level according to the specifications above similar to paper documents. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text

from hidden worksheets, slides, columns and rows.[1]  In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the highest quality setting during processing.  For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

> 1.    Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).
>
> 2.    In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

**Native Format.** All spreadsheets (*e.g.*, MS Excel), presentation files (*e.g.*, PowerPoint files), documents with "macros," electronic information containing audio or visual components, and additional documents of a type which cannot be reasonably converted to useful TIFF images shall be produced in native (unless redacted, in which instance, they will be produced in TIFF), and should be linked to the database by the above metadata field "Path to Native File." The requesting party may ask for certain other documents and/or databases initially produced in their petrified (TIFF or PDF) format to be produced in their native format in the event that the petrified format is not reasonably usable. The requesting party shall identify the documents by their Bates numbers. A unique Bates number and confidentiality designation shall be used

---

[1] To the extent that a producing party deems it not reasonably feasible to provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows in the extracted text, the producing party shall notify the receiving party for what categories of documents or document types it is not feasible for each production.

as the file name and the original file name and file extension shall be preserved in the corresponding load file.  An example of this convention would be: "[BATES PREFIX]_000001_HighlyConfidential.xls." The documents should be produced in their unaltered native format with an accompanying delimited text file (using the delimiters above) containing the metadata associated with each electronic document, including those metadata fields identified above, along with the extracted text and a link to the produced native file. Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.

**Redacted Files.** A producing party may not redact information on the basis that it believes the information to be irrelevant. Redactions may only be used when there is a claim of attorney-client, attorney work product, or any other applicable privilege. Extracted text will not be provided for electronic documents that have been redacted because the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.  Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the producing party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field.

**Deduping Documents, De-NISTing Documents, and Most Inclusive Email Productions.**

> 3.      Each Party may dedupe ESI globally for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level).  This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate

Custodians" (or similar name) field.  The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families.

4.    Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

5.    Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread.  The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production may reduce all Parties' costs of document review, production, and litigation-support hosting.  Threading is therefore permitted, though not required.  For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered less inclusive email messages that need not be produced; if the later message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.  To the extent that an e-mail thread contains privileged communications, such communications can be redacted.  If an e-mail thread contains responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged.

**Proprietary or Third-Party Software**.  To the extent that information

---

14

*Ringler v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E
Stipulated and Order Re: Discovery of Electronically Stored Information

produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

**Production Media**.  The Parties shall produce documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g. CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the otherwise Parties agree on a different method of transmission.

## IX.    DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness and/or privilege or other protection from discovery.

Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

## X.    MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

15

*Ringler v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E
Stipulated and Order Re: Discovery of Electronically Stored Information

1   **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD**.

2   Dated:  July 3, 2025          WINSTON & STRAWN LLP

3

4                         By:  */s/ Ronald Y. Rothstein*

5                              Ronald Y. Rothstein (*pro hac vice*)
                              RRothste@winston.com

6                              35 West Wacker Drive

7                              Chicago, Illinois 60601-9703
                              Telephone: +1 312-558-5600

8

9                              Jared Kessler (*pro hac vice*)
                              JRKessler@winston.com

10                            200 South Biscayne Boulevard, Suite 2400
                              Miami, Florida 33131

11                            Telephone: +1 305-910-0500

12                            Shawn R. Obi (SBN: 288088)
                              SObi@winston.com

13                            333 South Grand Avenue, Suite 3800

14                            Los Angeles, California 90071
                              Telephone: +1 213-615-1700

15

16                            Attorneys for Defendant The J.M. Smucker Company

17   Dated:  July 3, 2025          CROSNER LEGAL, P.C.

18

19                         By:  */s/ Craig W. Straub*

20                            Craig W. Straub (SBN 249032)
                            craig@crosnerlegal.com

21                            9440 Santa Monica Blvd. Suite 301

22                            Beverly Hills, CA 90210
                            Tel: (866) 276-7637

23                            Fax: (310) 510-6429

24                            Attorneys for Plaintiff Adina Ringler

25

26

27

28

1

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

2

3

DATED:  July 3, 2025

4

5

_____

6

Charles F. Eick
United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

SIGNATURE ATTESTATION

2

The filer of this document attests that all signatories have concurred in its filing.

3

Dated: July 3, 2025                                    By:    _____/s/ Craig W. Straub_____

4

CRAIG W. STRAUB

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [**print or type full name**], of _____ [**print or type full address**], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California on [date] in the case of _____ *Adina Ringler. v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action. I hereby appoint _____ [**print or type full name**] of _____ [**print or type full address and telephone number**] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where signed: _____

Printed name: _____

Signature: _____