**CROSNER LEGAL, P.C.**
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Adina Ringler, Krista Robles, Jay Smith, and Jana Rabinowitz ("Plaintiffs") individually and on behalf of all others similarly situated, by and through undersigned counsel, hereby brings this action against The J.M. Smucker Company ("Defendant"), and upon information and belief and investigation of counsel, alleges as follows:

### INTRODUCTION

1.    This is a consumer class action for violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and breach of express warranties.

2.    Defendant manufactures, distributes, advertises, and sells a line of Smucker's Natural Fruit Spread products, available in both jar and squeezable packaging. The Products at issue include Smucker's Natural Apricot Fruit Spread, Smucker's Natural Blackberry Fruit Spread, Smucker's Natural Blueberry Fruit Spread, Smucker's Natural Tart Red Cherry Fruit Spread, Smucker's Natural Concord Grape Fruit Spread, Smucker's Natural Orange Marmalade Fruit Spread, Smucker's Natural Red Raspberry Fruit Spread, Smucker's Natural Strawberry Fruit Spread, Smucker's Natural Triple Berry Fruit Spread, Smucker's Natural Concord Grape Squeezable Fruit Spread, Smucker's Natural Red Raspberry Squeezable Fruit Spread, and Smucker's Natural Strawberry Squeezable Fruit Spread (the "Products").

3.    The Products' front labels contain images of fresh fruit and prominently represent that the Products are "**natural**" and "**made with ingredients FROM NATURAL SOURCES."**

4.    These representations are false because the Products contain citric acid, an artificial ingredient not made from natural sources.

5.    Defendant's packaging, labeling, and advertising scheme is intended to give consumers the reasonable belief that they are buying premium Products

CROSNER LEGAL, P.C.

1  that are natural, made with ingredients from natural sources, and free from
2  artificial ingredients.

3      6.      Like other reasonable consumers, Plaintiffs were deceived by
4  Defendant's unlawful conduct and brings this action individually and on behalf of
5  all similarly situated consumers to remedy Defendant's unlawful acts.

6                          **JURISDICTION AND VENUE**

7      7.      This Court has original jurisdiction over this action pursuant to 28
8  U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100
9  members in the proposed class; (2) members of the proposed class have a different
10  citizenship from Defendant; and (3) the claims of the proposed class members
11  exceed $5,000,000 in the aggregate, exclusive of interest and costs. The Products
12  are sold at numerous retail stores and Plaintiffs are seeking to represent a
13  nationwide class. Thus, there are over 100 members in the proposed class and the
14  proposed class has different citizenships from Defendant. Plaintiffs seek
15  compensatory and statutory damages, disgorgement and restitution. Plaintiff also
16  seeks attorneys' fees and costs. *See Montera v. Premier Nutrition Corp., No.* 16-
17  CV-06980-RS, 2022 WL 10719057, at *3 (N.D. Cal. Oct. 18, 2022), *aff'd,* 111
18  F.4th 1018 (9th Cir. 2024) (noting lodestar after jury trial in consumer protection
19  action was $6,806,031.96). Thus, Plaintiffs estimate that the amount in
20  controversy exceeds $5 million.

21     8.      This Court has personal jurisdiction over Defendant because
22  Defendant conducts and transacts business in the State of California, contracts to
23  supply goods within the State of California and supplies goods within the State of
24  California. Defendant, on its own and through its agents, is responsible for the
25  distribution, marketing, labeling, and sale of the Products in California,
26  specifically in this county. The marketing of the Products, including the decision
27  of what to include and not include on the label, emanates from Defendant. Thus,
28  Defendant has intentionally availed itself of the markets within California through

CROSNER LEGAL, P.C.

its advertising, marketing, and sale of the Products to consumers in California, including Plaintiffs. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiffs' claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiffs and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiffs and the Class that Defendant knows is likely to be suffered by Californians.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District since Plaintiff Ringler purchased the Products within this District.

<u>PARTIES</u>

10.     Defendant is an Ohio company with its principal place of business located at 1 Strawberry Lane, Orrville, OH 44667. At all times during the class period, Defendant was the manufacturer, distributor, marketer, and seller of the Products.

11.     Plaintiff Adina Ringler purchased the Smucker's Natural Triple Berry Fruit Spread product from a Smart & Final store in Northridge, California in or around May 2024. When purchasing the Product, Plaintiff Ringler did not expect that the Product's front label "natural" and "made with ingredients from natural sources" representations were false. Plaintiff Ringler did not expect Defendant to publicly place deceptive statements about the contents of its Products on the front label of the Product.

12.     Plaintiff Krista Robles occasionally purchased the Smucker's Natural Strawberry Fruit Spread Product from retail stores near her home in Anaheim, California during the putative class period. Plaintiff Robles last purchased the Smucker's Natural Strawberry Fruit Spread Product in the Summer of 2025. When

1  purchasing the Product, Plaintiff Robles did not expect that the Product's front
2  label "natural" and "made with ingredients from natural sources" representations
3  were false. Plaintiff Reed did not expect Defendant to publicly place deceptive
4  statements about the contents of its Product on the front label of the Product.

5  13.    Plaintiff Jay Smith occasionally purchased the Smucker's Natural
6  Red Raspberry Fruit Spread Product from retail stores near his home in Dixon,
7  California during the putative class period. Plaintiff Smith last purchased the
8  Smucker's Natural Red Raspberry Fruit Spread Product in approximately June of
9  2025. When purchasing the Product, Plaintiff Smith did not expect that the
10 Product's front label "natural" and "made with ingredients from natural sources"
11 representations were false. Plaintiff Smith did not expect Defendant to publicly
12 place deceptive statements about the contents of its Product on the front label of
13 the Product.

14 14.    Plaintiff Jana Rabinowitz purchased the Smucker's Natural
15 Strawberry Fruit Spread product from a retail store near her home in Bayville, New
16 York around the beginning of 2025. When purchasing the Product, Plaintiff
17 Rabinowitz did not expect that the Product's front label "natural" and "made with
18 ingredients from natural sources" representations were false. Plaintiff Rabinowitz
19 did not expect Defendant to publicly place deceptive statements about the contents
20 of its Products on the front label of the Product.

21 15.    Plaintiffs saw and relied on the "natural" and "made with ingredients
22 from natural sources" claims on the front label of the Products.  Plaintiffs would
23 not have purchased the Products, or would have paid less for the Products, had
24 they known that the Products contains an artificial ingredient in direct
25 contradiction to the "natural" and "made with ingredients from natural sources"
26 statements on the Products' label.

27 16.    As a result, Plaintiffs suffered injury in fact when they spent money
28 purchasing Products they would not have purchased, or would have paid less for,

CROSNER LEGAL, P.C.

4                Case No. 2:25-cv-01138-AH-E
FIRST AMENDED CLASS ACTION COMPLAINT

1    absent Defendant's misconduct.

2                                    **FACTUAL ALLEGATIONS**

3           17.     The Products' front labels contain images of fresh fruit and

4    prominently represent that the Products are "natural" and "made with ingredients

5    from natural sources" thereby misleading reasonable consumers into believing that

6    the Products contain only natural ingredients and are free from artificial

7    ingredients. However, the Products contain citric acid, an artificial ingredient not

8    made from natural sources.

9           18.     The Products' front labels also contain a list of undesired items that

10   the Products boastfully do not contain, including "Non-GMO," "NO High

11   Fructose Corn Syrup," and "NO artificial flavors or colors."

12          19.     True and correct copies of the Smucker's Natural Triple Berry Fruit

13   Spread product's front and rear labels are shown below:

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

CROSNER LEGAL, P.C.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

CROSNER LEGAL, P.C.

20.    True and correct copies of the Smucker's Natural Concord Grape Squeezable Fruit Spread product's front and rear labels are shown below:

22  //
23  //
24  //
25  //
26  //
27  //
28  //

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22




23    **THE CITRIC ACID IN THE PRODUCTS IS NOT NATURAL**

24    21.    Defendant uses artificial manufactured citric acid in the Products.[1]

25
26
27
28

---

[1] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured
citric acid in eliciting significant inflammatory reactions contributing to serious*

Commercial food manufacturers use a synthetic form of citric acid that is derived from heavy chemical processing.[2] Commercially produced citric acid is manufactured using a type of black mold called *Aspergillus niger* which is modified to increase citric acid production.[3] Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[4] Defendant does not use natural citric acid extracted from fruit in the Products. This is because "[a]proximately 99% of the world's production of [citric acid] is carried out using the fungus *Aspergillus niger* since 1919." *Id*. As explained by a study published in the *Toxicology Reports Journal*:

> Citric acid naturally exists in fruits and vegetables. However, **it is *not* the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food and beverage additive**. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger* is a known allergen.[5]

22.    A technical evaluation report for citric acid compiled by the United

---

*disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/

[3] *Id*; Pau Loke Show, *et al*., *Overview of citric acid production from Aspergillus niger,* FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), *available at* https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

[4] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[5] *Id*. (emphasis added)

CROSNER LEGAL, P.C.

States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[6]

23.    When asked "Is this substance Natural or Synthetic?" USDA AMS reviewers state: "synthetic."[7]

24.    The FDA has determined that manufactured citric acid is not natural; it is artificial. The FDA sent warning letters to Hirzel Canning Company and Oak Tree Farm Dairy, Inc., for similar violations, saying that the FDA's policy involving the use of the word natural means that nothing artificial or synthetic has been added to the product, and that a product that labels itself "100% Natural" or "All Natural" violates that policy if it contains citric acid, and that the presence of citric acid precludes the use of the term natural to describe the product.[8]

25.    The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional *Aspergillus niger* fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of *n-* octyl alcohol meeting the requirements of § 172.864 of this chapter, **synthetic** isoparaffinic petroleum hydrocarbons meeting the

---

[6] **Exhibit D** at page 6.

[7] **Exhibit D** at pages 4-5.

[8] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1   requirements of § 172.882 of this chapter, and tridodecyl amine. 12 C.F.R. §
2   173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and
3   synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid
4   that Defendant uses in the Products from *aspergillus niger* fermentation liquor.
5   *See* 21 C.F.R § 173.280. The citric acid that Defendant uses in the Products is
6   produced through chemical solvent extraction and contains residues of those
7   chemical solvents.

8       26.    The *Toxicology Reports Journal* study explains that "the potential
9   presence of impurities or fragments from the *Aspergillus niger* in [manufactured
10  citric acid] is a significant difference that may trigger deleterious effects when
11  ingested."[9] The study further explains:

> "Given the thermotolerance of A. niger, there is great potential that
> byproduct of A. niger remain in the final [manufactured citric acid]
> product. Furthermore, given the pro-inflammatory nature of A. niger
> even when heat-killed, repetitive ingestion of [manufactured citric acid]
> may trigger sensitivity or allergic reactions in susceptible individuals.
> Over the last two decades, there has been a significant rise in the
> incidence of food allergies" *Id*.

17      27.    The EPA provides the following simply schematic of the
18  manufacturing process for citric acid which includes the use of synthetic solvents
19  like Sulfuric Acid:[10]

20      //

21      //

22      //

---

[9] Iliana E. Sweis, *et al.*, *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

[10] https://www.epa.gov/system/files/documents/2023-03/Citric%20Acid%20Supply%20Chain%20Profile.pdf.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CROSNER LEGAL, P.C.



28.    Dr. Ryan Monahan, a prominent functional medicine practitioner, notes that the "[p]resent day process of creating manufactured citric acid involves feeding sugars derived from GMO corn to black mold, which then ferments to form manufactured citric acid."[11]

29.    Dr. Monahan also notes that "*Aspergillus niger* is associated with systemic inflammatory issues, including respiratory, gastrointestinal, neurological and musculoskeletal. Due to the potential for fragments of *Aspergillus niger* to make their way into the finished product of manufactured citric acid, this toxic inflammatory substance is likely being ingested by consumers of Products containing citric acid. Even with high-heat processing to kill it, research has shown *Aspergillus niger* can still elicit an inflammatory response."[12]

---

[11] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source (Last visited May 15, 2024).

[12] Dr. Ryan Monahan, *Citric Acid: A Common Food Additive With An Uncommon Source* (2024) *available at* https://www.peacefulmountainmedicine.com/post/citric-acid-a-common-food-additive-with-an-uncommon-source.

FIRST AMENDED CLASS ACTION COMPLAINT

30.    Clinical nutritionist Serge Gregoire, notes that [f]ood manufacturers leave out that citric acid is derived from genetically modified black mold grown on GMO corn syrup" and that "[c]ompanies continuously capitalize on an ignorance-based market."[13] Gregoire states, "Citric acid production has become a refined and highly prized industrial process." Gregoire note that the *Aspergillus niger* used to produce citric acid is engineered to increase production of citric acid which has "resulted in countless generations of genetically modified mutant variants, now specialized for industrial-scale economics."

31.    "Further genetic modification in the lab has taken place through the engineering of the glycolytic pathway, resulting in a metabolic-streamlining that facilitates greater citric acid production from sugar while shutting off side avenues of glycolysis." *Id*.

32.    "Mutagenesis has been used in recent years to improve the citric-acid producing strains so that they can be used in industrial applications. The most common methods include the use of mutagens to induce mutations on the parental strains. The mutagens utilized for improvements are gamma radiation, ultraviolet radiation and often chemical mutagens. For hyperproducer strains, a hybrid method that combines ultraviolet and chemical mutagens is used (Ratledge & Kristiansen Citation2001)."[14]

33.    Below is a schematic representation of the metabolic reactions involved in citric acid production, the enzymes (italics), the known feedback loops

---

[13] Serge Gregoire, Avoid citric acid: a mold byproduct! (July 13, 2021) *available at* https://www.linkedin.com/pulse/avoid-citric-acid-mold-byproduct-serge-gregoire/

[14] Show, P. L., Oladele, K. O., Siew, Q. Y., Aziz Zakry, F. A., Lan, J. C. W., & Ling, T. C. (2015). Overview of citric acid production from Aspergillus niger. FRONTIERS IN LIFE SCIENCE, 8(3), 271–283, *available at* https://doi.org/10.1080/21553769.2015.1033653

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

(dashed lines) and their locations within the cellular structure of *Aspergillus niger*:[15]



34.    Dictionary definitions define "artificial" as something made by man. For example, "artificial" is defined as "made by human skill; produced by humans …"[16] Merriam-Webster's online dictionary states that "artificial" means "humanly contrived …"[17] Cambridge Dictionary states that "artificial" means "made by

---

[15] *Id.* at Figure 3.

[16]    *Artificial,*    DICTIONARY.COM,    *available    at* https://www.dictionary.com/browse/artificial

[17] *Artificial*,    MERRIAM-WEBSTER'S    DICTIONARY,    *available    at* https://www.merriam-webster.com/dictionary/artificial

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

people, often as a copy of something natural."[18]

35.    Below are images of the chemical process used to create citric acid
for use in food – a process that is visibly artificial:






36.    Citric acid acts as an artificial flavoring and preserving agent when
added to food products, including the Products at issue.[19] Citric acid has a sour,
acidic, and slightly tart flavor. *Id.*

---

[18]*Artificial*, CAMBRIDGE DICTIONARY, *available at*
https://dictionary.cambridge.org/us/dictionary/english/artificial
[19] https://www.webstaurantstore.com/blog/3350/what-is-citric-
acid.html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and
%20acidic.

CROSNER LEGAL, P.C.

37.    The Food and Drug Administration ("FDA") defines a preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). The FDA has listed citric acid as a preservative in its "Overview of Food Ingredients, Additives and Colors" as shown below:[20]

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, citric acid, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

38.    In a warning letter sent to Chiquita Brands International, Inc. and Fresh Express, Inc., the FDA warned that certain Products were misbranded under the Federal Food Drug and Cosmetics Act because they "contain the *chemical preservatives ascorbic acid and citric acid* but their labels fail to declare these *preservatives* with a description of their functions. 21 C.F.R. [§] 101.22" (emphasis added).[21]

39.    The USDA's Food Safety Inspection Service's "Guideline for Label Approval" states that "common *chemical* preservatives include BHA, BHT, calcium propionate, citric acid, natamycin and sodium propionate."[22]

---

[20] *Overview of Food Ingredients, Additives & Colors,* FOOD AND DRUG ADMINISTRATION, *available at* https://web.archive.org/web/20220901032454/http://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-additives-colors

[21] *See* **Exhibit A** at page 2 (highlighted).

[22] FSIS Guideline for Label Approval, UNITED STATES DEPARTMENT OF AGRICULTURE, *available at*

CROSNER LEGAL, P.C.

**REASONABLE CONSUMERS ARE DECEIVED AND SUFFERED ECONOMIC INJURY**

40.    Consumers, like Plaintiffs, relied on Defendant's "natural" and "made with ingredients from natural sources" labeling statements. Such representations are material to reasonable consumers.

41.    Plaintiffs and putative class members suffered economic injury as a result of Defendant's actions. Plaintiffs and putative class members spent money that, absent Defendant's actions, they would not have spent.

42.    Plaintiffs and putative class members are entitled to damages and restitution for the purchase price of the Products and/or the price premium associated with the deceptive representations on the Products' labels. Consumers, including Plaintiffs, would not have purchased Defendant's Products, or would have paid less for the Products, if they had known the Products actually contain an artificial ingredient not made from natural sources.

**NO ADEQUATE REMEDY AT LAW**

43.    Plaintiffs and members of the class are entitled to equitable relief as no adequate remedy at law exists. The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.

44.    The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes Defendant's overall unfair marketing scheme to promote and brand the Products, across a multitude of media platforms, including the Products' labels, packaging, and online advertisements, over a long period of time, in order to gain an unfair advantage over competitor products. Plaintiffs and class members may also be

---

https://www.fsis.usda.gov/sites/default/files/media_file/documents/FSIS-GD-2023-0001.pdf (emphasis added)

CROSNER LEGAL, P.C.

entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

### CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure on behalf of the following Classes (or alternative Classes or Subclasses):

**The Nationwide Class**
All U.S. citizens who purchased the Products in their respective state of citizenship for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**The California Subclass**
All California citizens who purchased the Products in California for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

**The New York Subclass**
All persons who purchased the Products in New York for personal and household use and not for resale within the applicable statute of limitations and until the date class notice is disseminated.

46.    The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

47.    Plaintiffs and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

CROSNER LEGAL, P.C.

48.     Excluded from the Class are: (i) Defendant and its officers, directors, and employees; (ii) any person who files a valid and timely request for exclusion; (iii) judicial officers and their immediate family members and associated court staff assigned to the case; (iv) individuals who received a full refund of the Products from Defendant.

49.     The Class is appropriate for certification because Plaintiffs can prove the elements of the claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

51.     Commonality: There is a well-defined community of interest in the common questions of law and fact affecting all Class Members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

c. Whether Defendant made misrepresentations concerning the Products that were likely to deceive the public;

d. Whether Plaintiffs and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

52.     Typicality: Plaintiffs are members of the Class that Plaintiffs seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that

1    every member of the Class was susceptible to the same deceptive, misleading

2    conduct and purchased the Products. Plaintiffs are entitled to relief under the same

3    causes of action as the other Class Members.

4         53.    <u>Adequacy</u>: Plaintiffs are adequate Class representatives because

5    Plaintiffs' interests do not conflict with the interests of the Class Members

6    Plaintiffs seek to represent; the consumer fraud claims are common to all other

7    members of the Class, and Plaintiffs have a strong interest in vindicating the rights

8    of the class; Plaintiffs have retained counsel competent and experienced in

9    complex class action litigation and Plaintiffs intend to vigorously prosecute this

10   action. Plaintiffs have no interests which conflict with those of the Class. The Class

11   Members' interests will be fairly and adequately protected by Plaintiffs and

12   proposed Class Counsel. Defendant has acted in a manner generally applicable to

13   the Class, making relief appropriate with respect to Plaintiffs and the Class

14   Members. The prosecution of separate actions by individual Class Members would

15   create a risk of inconsistent and varying adjudications.

16        54.    The Class is properly brought and should be maintained as a class

17   action because a class action is superior to traditional litigation of this controversy.

18   A class action is superior to the other available methods for the fair and efficient

19   adjudication of this controversy because:

20        a.  The joinder of hundreds of individual Class Members is impracticable,
21            cumbersome, unduly burdensome, and a waste of judicial and/or
22            litigation resources;

23        b.  The individual claims of the Class Members may be relatively modest
24            compared with the expense of litigating the claim, thereby making it
25            impracticable, unduly burdensome, and expensive to justify individual
26            actions;

27        c.  When Defendant's liability has been adjudicated, all Class Members'
28            claims can be determined by the Court and administered efficiently in a

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1    manner far less burdensome and expensive than if it were attempted

2    through filing, discovery, and trial of all individual cases;

3  d. This class action will promote orderly, efficient, expeditious, and

4    appropriate adjudication and administration of Class claims;

5  e. Plaintiffs know of no difficulty to be encountered in the management of

6    this action that would preclude its maintenance as a class action;

7  f. This class action will assure uniformity of decisions among Class

8    Members;

9  g. The Class is readily definable and prosecution of this action as a class

10    action will eliminate the possibility of repetitious litigation; and

11  h. Class Members' interests in individually controlling the prosecution of

12    separate actions is outweighed by their interest in efficient resolution by

13    single class action;

14    55.    Plaintiffs seek equitable relief on behalf of the Class, on grounds

15 generally applicable to the Class, to require Defendant to provide restitution to

16 Plaintiffs and the Class members.

17    56.    Unless the Class is certified, Defendant will retain monies that were

18 taken from Plaintiffs and Class members as a result of Defendant's wrongful

19 conduct.

20    **FIRST CLAIM FOR RELIEF**

21    **Violation of California's Consumers Legal Remedies Act**

22    **Cal. Civ. Code §§ 1750, *et seq*.**

23    57.    Plaintiffs reallege and incorporate by reference all allegations

24 contained in this complaint, as though fully set forth herein.

25    58.    Plaintiffs Ringler, Robles, and Smith bring this claim under the

26 CLRA individually and on behalf of the California Class against Defendant.

27    59.    At all times relevant hereto, Plaintiffs Ringler, Robles, and Smith and

28 the members of the Class were "consumer[s]," as defined in California Civil Code

1    section 1761(d).

2        60.    At all relevant times, Defendant was a "person," as defined in
3    California Civil Code section 1761(c).

4        61.    At all relevant times, the Products manufactured, distributed,
5    marketed, advertised, and sold by Defendant constituted "goods," as defined in
6    California Civil Code section 1761(a).

7        62.    The purchases of the Products by Plaintiffs Ringler, Robles, and
8    Smith and the members of the Class were and are "transactions" within the
9    meaning of California Civil Code section 1761(e).

10       63.    Defendant disseminated, or caused to be disseminated, through its
11   advertising, false and misleading representations, including the Products' labeling
12   that the Products were "natural" and "made with ingredients from natural sources."
13   Defendant failed to disclose that the Products contain an artificial ingredient called
14   citric acid. This is a material misrepresentation and omission as reasonable
15   consumer would find the fact that the Products contain an artificial ingredient to
16   be important to their decision in purchasing the Products. Defendant's
17   representations violate the CLRA in the following ways:

18       a.   Defendant represented that the Products have characteristics,
19           ingredients, uses, and benefits which they do not have (Cal. Civ. Code §
20           1770(a)(5));

21       b.   Defendant represented that the Products are of a particular standard,
22           quality, or grade, which it is not (Cal. Civ. Code § 1770(a)(7));

23       c.   Defendant advertised the Products with an intent not to sell the Products
24           as advertised (Cal. Civ. Code § 1770(a)(9)); and

25       d.   Defendant represented that the subject of a transaction has been supplied
26           in accordance with a previous representation when it has not (Cal. Civ.
27           Code § 1770(a)(16)).

28       64.    Defendant violated the CLRA because the Products were prominently

CROSNER LEGAL, P.C.

1    advertised as "natural" and "made with ingredients from natural sources" but the
2    Products contain citric acid, an artificial ingredient not made from natural sources.
3    Defendant knew or should have known that consumers would want to know that
4    the Products contained an artificial ingredient.

5        65.    Defendant's actions as described herein were done with conscious
6    disregard of Plaintiffs Ringler, Robles, and Smith's and the Class members' rights
7    and were wanton and malicious.

8        66.    Defendant's wrongful business practices constituted, and constitute,
9    a continuing course of conduct in violation of the CLRA, since Defendant is still
10   representing that the Products have characteristics which they do not have.

11       67.    Pursuant to California Civil Code section 1782, Plaintiff Ringler
12   notified Defendant in writing by certified mail of the alleged violations of the
13   CLRA and demanded that Defendant rectify the problems associated with the
14   actions detailed above and give notice to all affected consumers of their intent to
15   so act.

16       68.    More than thirty days has passed since Plaintiff Ringler sent
17   Defendant a CLRA letter and Defendant has failed to take the corrective action
18   described in Plaintiff's letter. Wherefore, Plaintiffs Ringler, Robles, and Smith
19   seek actual and statutory damages as appropriate, as well as attorneys' fees and
20   costs for Defendant's violations of the CLRA.

21       69.    Pursuant to section 1780(d) of the CLRA, below is an affidavit
22   showing that this action was commenced in a proper forum.

**SECOND CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

26       70.    Plaintiffs reallege and incorporate by reference all allegations
27   contained in this complaint, as though fully set forth herein.

28       71.    Plaintiffs Ringler, Robles, and Smith bring this claim under the UCL

CROSNER LEGAL, P.C.

CROSNER LEGAL, P.C.

1  individually and on behalf of the California Class against Defendant.

2       72.    The UCL prohibits any "unlawful," "fraudulent," or "unfair" business

3  act or practice and any false or misleading advertising.

4       73.    Defendant committed unlawful business acts or practices by making

5  the representations and omitted material facts (which constitutes advertising

6  within the meaning of California Business & Professions Code section 17200), as

7  set forth more fully herein, and by violating California's Consumers Legal

8  Remedies Act, Cal. Civ. Code §§17500, *et seq.*, California's False Advertising

9  Law, Cal. Bus. & Prof. § 17500, *et seq.*, 15 U.S.C. § 45, and by breaching express

10 and implied warranties. Plaintiffs Ringler, Robles, and Smith, individually and on

11 behalf of the other Class members, reserves the right to allege other violations of

12 law, which constitute other unlawful business acts or practices. Such conduct is

13 ongoing and continues to this date.

14      74.    Defendant committed "unfair" business acts or practices by: (1)

15 engaging in conduct where the utility of such conduct is outweighed by the harm

16 to Plaintiffs Ringler, Robles, and Smith and the members of the Class; (2) engaging

17 in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially

18 injurious to Plaintiffs Ringler, Robles, and Smith and the members of the Class;

19 and (3) engaging in conduct that undermines or violates the intent of the consumer

20 protection laws alleged herein. There is no societal benefit from deceptive

21 advertising. Plaintiffs Ringler, Robles, and Smith and the other Class members

22 paid for Products that are not as advertised by Defendant. Further, Defendant failed

23 to disclose a material fact (that the Products contain an artificial ingredient) of

24 which it had exclusive knowledge. While Plaintiffs Ringler, Robles, and Smith

25 and the other Class members were harmed, Defendant was unjustly enriched by its

26 false misrepresentations and material omissions. As a result, Defendant's conduct

27 is "unfair," as it offended an established public policy. There were reasonably

28 available alternatives to further Defendant's legitimate business interests, other

CROSNER LEGAL, P.C.

1    than the conduct described herein.

2        75.    Defendant committed "fraudulent" business acts or practices by

3    making the representations of material fact regarding the Products set forth herein.

4    Defendant's business practices as alleged are "fraudulent" under the UCL because

5    they are likely to deceive customers into believing the Products only contain

6    natural ingredients.

7        76.    Plaintiffs Ringler, Robles, and Smith and the other members of the

8    Class have in fact been deceived as a result of their reliance on Defendant's

9    material representations and omissions. This reliance has caused harm to Plaintiff

10   and the other members of the Class, each of whom purchased Defendant's

11   Products. Plaintiffs Ringler, Robles, and Smith and the other Class members have

12   suffered injury in fact and lost money as a result of purchasing the Products and

13   Defendant's unlawful, unfair, and fraudulent practices.

14       77.    Defendant's wrongful business practices and violations of the UCL

15   are ongoing.

16       78.    Plaintiffs Ringler, Robles, and Smith and the Class seek pre-judgment

17   interest as a direct and proximate result of Defendant's unfair and fraudulent

18   business conduct. The amount on which interest is to be calculated is a sum certain

19   and capable of calculation, and Plaintiffs Ringler, Robles, and Smith and the Class

20   seek interest in an amount according to proof.

21       79.    Pursuant to California Business & Professions Code section 17203,

22   Plaintiffs Ringler, Robles, and Smith, individually and on behalf of the California

23   Class, seeks (1) restitution from Defendant of all money obtained from Plaintiffs

24   Ringler, Robles, and Smith and the other Class members as a result of unfair

25   competition; and (2) all other relief this Court deems appropriate, consistent with

26   California Business & Professions Code section 17203.

27

28

CROSNER LEGAL, P.C.

**THIRD CLAIM FOR RELIEF**

**Violation of the False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*

80.     Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

81.     Plaintiffs Ringler, Robles, and Smith bring this claim under the FAL individually and on behalf of the California Class against Defendant.

82.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" Cal. Bus. & Prof. Code § 17500.

83.     It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

84.     As alleged herein, Defendant falsely advertised the Products by falsely representing that the Products are "natural" and "made with ingredients from natural sources," when in fact, the Products contain citric acid, an artificial ingredient.

85.     Plaintiffs Ringler, Robles, and Smith have standing to pursue this claim as Plaintiffs Ringler, Robles, and Smith have suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiffs Ringler, Robles, and Smith purchased one of the Products in reliance on Defendant's false and misleading labeling claim that the Products were "natural" and "made with ingredients from natural sources."

86.     Defendant's business practices as alleged herein constitute deceptive,

untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

87.    Defendant profited from its sale of the falsely and deceptively advertised Products to unwary consumers.

88.    As a result, Plaintiffs, the Class, and the general public are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**Breach of Express Warranty**

**Cal. Com. Code § 2313(1)**

89.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

90.    Plaintiffs bring this claim for breach of express warranty individually and on behalf of all Classes against Defendant.

91.    As the manufacturer, marketer, distributor, and seller of the Products, Defendant issued an express warranty by representing to consumers at the point of purchase that the Products were "natural" and "made with ingredients from natural sources."

92.    Plaintiffs and the Class reasonably relied on Defendant's misrepresentations, descriptions and specifications regarding the Products, including the representations that the Products were "natural" and "made with ingredients from natural sources."

93.    Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and members of the Class.

94.    In fact, the Products do not conform to Defendant's representations because the Products contain citric acid, an artificial ingredient. By falsely

CROSNER LEGAL, P.C.

representing the Products in this way, Defendant breached express warranties.

95.    Plaintiffs relied on Defendant's representations on the Products' labels and advertising materials which provide the basis for an express warranty under California law.

96.    As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class were injured because they: (1) paid money for Products that were not as Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the  Products they purchased had less value than if Defendant's representations about the characteristics of the Products were truthful.

97.    Had Defendant not breached express warranties by making false representations as alleged herein, Plaintiffs and Class Members would not have purchased the Products or would not have paid as much as they did for them.

**FIFTH CLAIM FOR RELIEF**

**Breach of Implied Warranty**

**Cal. Com. Code § 2314**

98.    Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

99.    Plaintiffs bring this claim for breach of implied warranty individually and on behalf of all Classes against Defendant.

100.    Plaintiffs and the Class purchased the Products manufactured, advertised, and sold by Defendant, as described herein.

101.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, misrepresented the characteristics of the Products to Plaintiffs and the Class.

102.    Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

CROSNER LEGAL, P.C.

103.   However, Defendant breached that implied warranty in that the Products were not "natural" and contained citric acid, an artificial ingredient that is not made "from natural sources."

104.   As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the label of the Products.

105.   Plaintiffs and the Class have sustained damages as a proximate result of the foregoing breach of implied warranties in the amount of the Products' price premium.

**SIXTH CLAIM FOR RELIEF**

**Negligent Misrepresentation**

106.   Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

107.   Plaintiffs bring this claim for negligent misrepresentation individually and on behalf of all Classes against Defendant.

108.   Defendant had a duty to disclose to Plaintiffs and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

109.   During the applicable class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including the fact that the Products do contain artificial ingredients, despite being advertised as "natural" and "made with ingredients from natural sources."

110.   Defendant made such false and misleading statements and omissions with the intent to induce Plaintiffs and Class Members to purchase the Products at

CROSNER LEGAL, P.C.

a premium price.

111.   Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiffs and Class Members would be overpaying for the Products.

112.   Plaintiffs and Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

113.   Plaintiffs and Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

#### SEVENTH CLAIM FOR RELIEF
#### Intentional Misrepresentation/Fraud

114.   Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

115.   Plaintiffs bring this claim for intentional misrepresentation individually and on behalf of all Classes against Defendant.

116.   Defendant had a duty to disclose to Plaintiffs and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiffs and Class Members such that reliance by Plaintiffs and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

117.   During the applicable class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including that the Products contain an artificial ingredient called citric acid, despite the Products' "natural" and "made with ingredients from natural sources" representations. These representations were material and were uniformly made.

118.   As noted in detail above, these representations were false and misleading, as the Products contain citric acid, an artificial ingredient not made

CROSNER LEGAL, P.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CROSNER LEGAL, P.C.

from natural sources. Defendant made these misrepresentations with actual knowledge of their falsity and/or made them with fraudulent intent.

119.   Defendant made such false and misleading statements and omissions with the intent to induce Plaintiffs and Class Members to purchase the Products at a premium price, deprive Plaintiffs and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

120.   Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant knew that consumers would pay more for products if they believed they were natural and made with ingredients from natural sources. For that reason, Defendant misrepresented the Products so that Defendant could realize greater profits. Defendant knew that consumers would place trust and confidence in its Products' claims and rely thereon in their purchases of the Products.

121.   Plaintiffs and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

122.   As a proximate result of Defendant's intentional misrepresentations, Plaintiffs and the Class were induced to purchase the Products at a premium.

123.   Plaintiffs and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

124.   As a result of their reliance, Plaintiffs and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

125.   Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and Class Members.

FIRST AMENDED CLASS ACTION COMPLAINT

1

**EIGHTH CLAIM FOR RELIEF**

2

**Violations of New York General Business Law § 349**

3       126.   Plaintiffs reallege and incorporate by reference all allegations

4   contained in this complaint, as though fully set forth herein.

5       127.   Plaintiff Rabinowitz brings this claim on behalf of the New York

6   Class.

7       128.   New York's General Business Law § 349 prohibits deceptive acts or

8   practices in the conduct of any business, trade, or commerce.

9       129.   In the sale of Products throughout the state of New York, at all

10  relevant times herein, Defendant conducted business and trade within the meaning

11  and intendment of New York's General Business Law § 349.

12      130.   Plaintiff Rabinowitz and the New York Class members are consumers

13  who purchased the Products from Defendants for their personal use.

14      131.   By the acts and conduct alleged herein, Defendant engaged in

15  deceptive, unfair, and misleading acts and practices by conspicuously representing

16  on the packaging of the Products that they are "natural" and "made with

17  ingredients FROM NATURAL SOURCES."

18      132.   Despite these representations, however, the Products contain the non-

19  natural ingredient citric acid.

20      133.   The foregoing deceptive acts and practices were directed at

21  consumers.

22      134.   The foregoing deceptive acts and practices are misleading in a

23  material way because they fundamentally misrepresent the nature and value of the

24  Products.

25      135.   As a result of Defendant's deceptive practices, Plaintiff Rabinowitz

26  and the New York Class members suffered an economic injury because they would

27  not have purchased or would have paid less for the Products had they known the

28  veracity of Defendants' misrepresentations.

CROSNER LEGAL, P.C.

136.   On behalf of herself and the New York Class members, Plaintiff Rabinowitz seeks to recover actual damages or fifty dollars per unlawful transaction (i.e., for each sale of the Products), whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### NINTH CLAIM FOR RELIEF

### Violations of New York General Business Law § 350

137.   Plaintiffs reallege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

138.   Plaintiff Rabinowitz brings this claim on behalf of the New York Class.

139.   New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

140.   Defendant violated New York General Business Law § 350 by representing on the packaging of the Products that they are "natural" and "made with ingredients FROM NATURAL SOURCES."

141.   Despite these representations, however, the Products contain the non-natural ingredient citric acid.

142.   The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

143.   Defendants' misrepresentations have resulted in consumer injury or harm to the public interest.

144.   As a result of Defendants' false advertising, Plaintiff Rabinowitz and the New York Class members suffered an economic injury because they would not have purchased or would have paid less for the Products had they known the veracity of Defendants' misrepresentations.

145.   On behalf of herself and the New York Class members, Plaintiff Rabinowitz seeks to recover their actual damages or five hundred dollars per

CROSNER LEGAL, P.C.

unlawful transaction (i.e., for each sale of the Products), whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### REQUEST FOR RELIEF

146.   Plaintiffs, individually, and on behalf of all others similarly situated, requests for relief pursuant to each claim as follows:

a. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as the Class Representative and appointing the undersigned counsel as Class Counsel;

b. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c. Ordering damages in amount which is different than that calculated for restitution for Plaintiffs and the Class;

d. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

e. Ordering statutory damages in the amount of $50 per transaction pursuant to New York General Business Law § 349 and statutory damages in the amount of $500 per transaction pursuant to New York General Business Law § 350 for the New York Class members;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Ordering other relief as may be just and proper.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

FIRST AMENDED CLASS ACTION COMPLAINT

CROSNER LEGAL, P.C.

Dated: September 8, 2025                    CROSNER LEGAL, P.C.


                                           By:      /s/ Craig W. Straub
                                                    Craig W. Straub

                                           Craig W. Straub (SBN 249032)
                                           *craig@crosnerlegal.com*
                                           Lilach H. Klein (SBN 323202)
                                           *lilach@crosnerlegal.com*
                                           Michael T. Houchin (SBN 305541)
                                           *mhouchin@crosnerlegal.com*
                                           Zachary M. Crosner (SBN 272295)
                                           *zach@crosnerlegal.com* 9440 Santa
                                           Monica Blvd. Suite 301
                                           Beverly Hills, CA 90210
                                           Tel: (866) 276-7637

                                           *Attorneys for Plaintiffs and the Proposed Class*

## Civil Code Section 1780(d) Venue Affidavit

I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiffs. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act. Defendant has done, and is doing business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Products. I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on September 8, 2025, in San Diego, California.

                                   Crosner Legal, P.C.

                                   By:    /s/  Craig W. Staub
                                          CRAIG W. STRAUB

CROSNER LEGAL, P.C.