**CROSNER LEGAL, P.C.**
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF LILACH H. KLEIN IN SUPPORT OF PLAINTIFF ADINA RINGLER'S MOTION TO COMPEL**<br><br>Date:   February 20, 2026<br>Time:  9:30 a.m.<br>Ctrm:  750<br>Judge: Hon. Charles F. Eick<br><br>Action Filed:               Feb. 10, 2025<br>Discovery Cutoff:       Sept. 30, 2026<br>Pretrial Conference: Feb. 3, 2027<br>Trial Date:                  Feb. 23, 2027 |

---

*Ringler, et al. v. The J.M. Smucker Company*, Case No. 2:25-cv-01138-AH-E
DECLARATION IN SUPPORT OF MOTION TO COMPEL

I, Lilach H. Klein, hereby declare the following:

1. I am a member in good standing of the State Bar of California and the Central, Northern, Southern, and Eastern Districts of California, and I, along with my colleagues, represent Plaintiffs Adina Ringler, Krista Robles, Jay Smith, and Jana Rabinowitz ("Plaintiffs") in the above-captioned action. I submit this Declaration in Support of Plaintiff Adina Ringler's Motion to Compel. I make this Declaration based on my personal knowledge and if called to testify, I could and would competently testify to the matter contained herein.

## Discovery Requests and Responses

2. On May 13, 2025, Plaintiff Ringler ("Plaintiff") served Requests for Production of Documents, Interrogatories, and Requests for Admission on Defendant The J.M. Smucker Co. ("Defendant"). Attached hereto as **Exhibit 1** is a true and correct copy of Plaintiff's Requests for Production of Documents.

3. Defendant served responses to Plaintiff's Requests for Production of Documents on June 23, 2025, followed by amended responses on July 18, 2025, second supplemental responses on October 8, 2025, and third supplemental responses on November 7, 2025. Attached hereto as **Exhibit 2** is a true and correct copy of Defendant's third supplemental responses to Plaintiff's Requests for Production of Documents.

4. More than seven (7) months after Plaintiff first served her discovery requests, on December 30, 2025, Defendant completed its final document production consisting of only 1,562 documents, many of which were duplicates. In its portion of the joint stipulation that Defendant refused to sign, Defendant represented that Plaintiff's revised search terms would yield approximately 54,000 documents, underscoring that Defendant's production of only 1,562 documents is plainly insufficient and that thousands of additional responsive documents exist.

## Meet and Confer Efforts

5. The parties met and conferred regarding Defendant's deficient

responses, search terms, and document production on August 11, 2025, August 13, 2025, September 10, 2025, October 1, 2025, October 14, 2025, October 23, 2025, and January 9, 2026. The Parties also exchanged multiple drafts of proposed search terms between September 22, 2025 and November 11, 2025.

  6. On December 31, 2026, Plaintiff sent Defendant an email outlining the deficiencies with Defendant's document production and the Parties met and conferred via videoconference on January 9, 2026. During the January 9, 2026 meet and confer, Defendant took the blanket position that it would not conduct any additional searches or produce any additional documents.

Plaintiff's Compliance with Local Rules

  7. On January 13, 2026, Plaintiff served Defendant with Plaintiff's portion of a joint stipulation pursuant to Local Rule 37-2.2, together with all declarations and exhibits to be offered in support of Plaintiff's position. Attached hereto as **Exhibit 3** is a PDF version of the draft joint stipulation sent to Defendant's counsel on January 13, 2026.

  8. Defendant returned its portion of the joint stipulation on January 20, 2026, and instructed that Plaintiff did not have permission to file until January 22, 2026, when Defendant expected to submit an additional declaration in support of its position. Defendant's version of the joint stipulation further deleted or altered portions of Plaintiff's text and reformatted the document to present Defendant's positions first (including attempting to recast Plaintiff's motion to compel as a motion for protective order brought by Defendant) rather than presenting each issue with both parties' respective contentions as required by the Local Rules.

  9. Despite Defendant's untimely submission of additional materials and inappropriate alteration of the joint stipulation, pursuant to L.R. 37-2.2, Plaintiff added Defendant's materials to the joint stipulation sent by Plaintiff on January 13, 2026 and requested Defendant's signature on January 21, 2026. However, Defendant refused to sign and did not return a signed copy of the joint stipulation as required

by Local Rule 37-2.2, necessitating the filing of this Motion pursuant to Local Rule 37-2.4. Specifically, after Plaintiff requested Defendant's signature on the joint stipulation, Defendant did not provide a signed copy and instead stated "You do not have our permission to file the stipulation in its current form." On January 22, 2026, Plaintiff's counsel advised Defendant's counsel that since no signed stipulation had been received by the 5:00 p.m. deadline, Plaintiff would proceed with filing under Local Rule 37-2.4 unless Defendant authorized filing. Defendant did not respond and has since failed to sign and return the joint stipulation as required by Local Rule 37-2.2.

## Disputes Regarding Search Terms

10. Defendant proposed an initial set of search terms, and without insight into Defendant's internal terminology or document structure, and with much resistance from Defendant, Plaintiffs suggested additions and modifications in an attempt to ensure that responsive documents would be captured.

11. During the Parties' meet and confer conferences regarding search terms, Defendant's counsel dismissed Plaintiffs' concerns regarding Defendant's proposed search terms as premature, and insisted that any issues could be addressed after Plaintiffs reviewed Defendant's document production. On October 22, 2025, Defendant's counsel sent Plaintiff's counsel an email stating, *inter alia*, "As we've said several times on meet and confer calls with you, the most efficient way to address the issues raised by Plaintiffs is to review Defendant's document productions as they become available and then raise with us any perceived deficiencies." Defendant's counsel reiterated the same position later that day, stating, *inter alia*, "As we have previously suggested, we again suggest Plaintiffs review Defendant's forthcoming production and, should they perceive any deficiencies, we are of course willing to further meet and confer."

12. After reviewing Defendant's December 30, 2025 production, however, Plaintiffs identified significant deficiencies warranting additional searches and

further production. For example, it does not appear that documents were produced in response to RFP Nos. 2, 3, 4, 7, 8, 10, 11, 23, 28, 29, 40, 45, 46, and 47, despite Defendant agreeing to produce documents responsive to these Requests. Plaintiffs have no way of knowing whether all responsive documents have been produced in response to the remaining Requests.

13. During the Parties' meet and confer conferences regarding search terms, Defendant requested to use the following search terms to capture the Products at issue: (("berry W/5 spread") OR ("triple W/5 spread") OR strawberry OR raspberry). Without having insight into how Defendant internally refers to the Products, Plaintiffs requested that the term "fruit spread" also be included. Defendant opposed that request, arguing that the Smucker's line contains multiple fruit spreads, and that such a search would return non-responsive documents concerning unrelated products. Defendant's counsel further insisted that this issue was premature, and would be better addressed after Plaintiffs reviewed Defendant's document production and could assess how Defendant referred to the Products at issue. As such, Plaintiff's counsel agreed to "table the issue pending document review" but expressly noted, "[i]f it appears that Smucker predominantly refers to the Products as 'fruit spreads,' we may revisit this."

14. After reviewing Defendant's December 30, 2025 document production, Plaintiffs learned that Defendant refers to the Products internally as the "natural" products. Plaintiffs therefore requested that Defendant re-run search term numbers 2, 3, 4, 6, 7, 17, and 18 using the term "natural," rather than limiting those searches to (("berry W/5 spread") OR ("triple W/5 spread") OR strawberry OR raspberry). Defendant flatly refused, and asserted that because the Parties had previously agreed to the existing search terms, it would not conduct any additional searches. Defendant's refusal is particularly troubling because Defendant's counsel repeatedly dismissed Plaintiffs' earlier concerns about the proposed search terms as premature and assured Plaintiffs that any deficiencies could be addressed after Plaintiffs

4

reviewed Defendant's production.

15. Defendant's December 30, 2025 document production also contained almost no documents with the term "*Aspergillus niger*."[1] However, Defendant's Rule 30(b)(6) witness testified that the citric acid used in the Products is manufactured using *Aspergillus niger*. Accordingly, Plaintiffs requested that Defendant conduct a search for the term "*Aspergillus niger*" without additional limitations. Defendant refused to do so.

16. Defendant also unilaterally selected the custodians whose files were searched. However, Plaintiffs' review of Defendant's production revealed that Drew Ziegler likely possesses relevant information, including documents related to testing of the Products. Plaintiffs requested that Mr. Ziegler be added as a custodian, but Defendant has refused.

<u>Additional Deficiencies with Defendant's Document Production</u>

17. Several documents produced by Defendant were unilaterally redacted "for Non Responsive Trade Secret Information."

18. Plaintiffs have identified several documents referenced in Defendant's document production that have not themselves been produced and have requested that Defendant produce those documents. For example, Defendant has produced results of conjoint studies and other studies, but not the studies themselves. Defendant has also produced emails referencing attachments, shared files, and other documents that do not appear to have been produced. During the parties' meet and confer, Defendant argued that because the documents referenced in Defendant's production but not produced were not captured by search terms, they are not relevant to this matter. Defendant also represented that one such document was withheld on

---

[1] In support of Defendant's portion of the joint stipulation that Defendant's counsel refused to sign, Defendant's counsel represented that Defendant "produced at least one document containing the term 'aspergillus niger'" but did not identify that document.

the basis of privilege. However, Defendant has not produced a privilege log, preventing Plaintiffs from evaluating the applicability of any claimed privilege.

19. The precise timing of Defendant's labeling and formulation decisions is unknown to Plaintiff and is information uniquely within Defendant's possession. Plaintiff therefore defined a time period broad enough to capture those pre-launch decisions and related documents.

20. After reviewing Defendant's document production, Plaintiffs learned that Defendant imposed a February 10, 2021 beginning cutoff date on its document searches. Yet, Defendant's discovery responses revealed that the Products launched in 2021 and before 2021. As a result, Defendant did not produce documents concerning, *inter alia*, pre-launch testing of the Products, internal discussions or marketing decisions regarding the use of the terms "natural" or "made with ingredients from natural sources" on the Products' front labels, or discussions regarding the inclusion of manufactured citric acid in the Products' formulations.

21. Prior to Defendant's document production, the Parties addressed a dispute regarding Defendant's imposition of a February 10, 2025 end cutoff date (the filing date of Plaintiff's Complaint) in its responses to Plaintiff's Requests. Plaintiffs ultimately agreed to use a September 8, 2025 end cutoff date for Defendant's document search based on Defendant's representation that it required a definitive date to enter in its document search, but expressly maintained that the relevant time period extends through the present and until the Court certifies the putative classes.

<u>Orders Establishing the Case Schedule in this Matter</u>

22. Pursuant to C.D. Cal. Local Rule 37-2.1, attached hereto as **Exhibit 4** is ECF No. 38, the Order establishing the initial case schedule in this matter.

23. Pursuant to C.D. Cal. Local Rule 37-2.1, attached hereto as **Exhibit 5** is ECF No. 68, the Order granting stipulation to modify scheduling order entered in this matter.

Dated: January 23, 2026

CROSNER LEGAL, P.C.

By:     */s/ Lilach H. Klein*
          Lilach H. Klein

9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
lilach@crosnerlegal.com

***Attorneys for Plaintiffs and the Proposed Class***