Ronald Rothstein (*pro hac vice*)
RRothste@winston.com
WINSTON & STRAWN LLP
300 North LaSalle Drive, Suite 4400
Chicago, Illinois 60654-3406
Telephone: +1 312-558-5600

Jared Kessler (*pro hac vice*)
JRKessler@winston.com
WINSTON & STRAWN LLP
200 South Biscayne Boulevard, Suite 2400
Miami, Florida 33131
Telephone: +1 305-910-0500

Shawn R. Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, California 90071
Telephone: +1 213-615-1700

*Attorneys for Defendant*
*The J. M. Smucker Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE J. M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>**DISCOVERY MATTER**<br><br>**DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**<br><br>Date: February 20, 2026<br>Time: 9:30 a.m.<br>Courtroom: 750<br>Fact Discovery Cutoff Date: September 30, 2026<br>Pretrial Conference Date: February 3, 2027<br>Trial Date: February 23, 2027 |

# DECLARATION OF RONALD Y. ROTHSTEIN

I, Ronald Y. Rothstein, declare as follows:

1. I am an attorney admitted *pro hac vice* to appear before this Court in the above-captioned action. I am a partner with the law firm Winston & Strawn LLP. I am serving as lead counsel for Defendant The J. M. Smucker Company ("Defendant") in connection with the current proceedings. I make the following declaration in support of Defendant's Motion for Protective Order. I am over the age of 18 and am competent to make this declaration. I have personal knowledge of the following facts and, if called to testify to them, could and would competently do so.

2. Plaintiff Ringler filed this case on February 10, 2025 making allegations concerning a single product, Smucker's® Natural Triple Berry Fruit Spread. *See* Dkt. No. 1.

3. On May 13, 2025, Plaintiff served voluminous discovery requests, including her first requests for production ("RFPs"). The parties proceeded to engage in discovery discussions pursuant to the Court-approved Protocol for Electronically Stored Information, Dkt. No. 35 ("ESI Protocol"). The ESI Protocol requires that the parties "meet and confer about methods to search ESI," "filter out ESI that is not subject to discovery," and "develop a mutually agreeable list of search terms and protocols prior to the production of documents," with the "goal of limiting the scope of review." ESI Protocol at 5.

4. On September 8, 2025, Plaintiff Ringler amended the complaint in this case, adding three additional plaintiffs, Krista Robles, Jay Smith, and Jana Rabinowitz (together with Plaintiff Ringler, "Plaintiffs"), and adding two additional products, Smucker's® Natural Strawberry Fruit Spread and Smucker's® Natural Red Raspberry Fruit Spread (together with Smucker's® Natural Triple Berry Fruit Spread, the "Products"). *See* Dkt. No. 44.

5. Over the course of approximately five months—beginning in or around August 2025—the parties met and conferred at least seven times to discuss, among other things, the search terms to be applied to the custodial data collected by Defendant, and the relevant time period ("RTP") to apply for the purposes of responding to Defendant's discovery requests.

6. In Plaintiff Ringler's discovery requests, she defined the RTP as "February 10, 2021, to the present" and including "all Documents and information relating to such period even though prepared, published, sent, or received, in whole or in part, prior to that period." Defendant served its initial responses and objections ("R&Os") to Plaintiff Ringler's written discovery requests on June 23, 2025. It served three sets of supplemental R&Os to Plaintiff Ringler's RFPs on July 18, 2025, October 8, 2025, and November 7, 2025, respectively.

7. In its initial R&Os as well as its first and second sets of supplemental R&Os, Defendant objected to Plaintiff Ringler's definition of the RTP as follows: "Defendant objects to the Requests to the extent that that the definition of the relevant time period is overbroad, is unduly burdensome, seeks documents that are not relevant to any adequately pled claim or any defense raised in this action, and/or is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the Requests to the extent that they seek information remote in time to this litigation, information for purposes other than this litigation, or documents outside the period from February 10, 2021, through February 10, 2025. Defendant will respond according to its understanding of the relevant time period, as indicated above."

8. During this time, the parties met and conferred regarding the appropriate definition of the RTP on numerous occasions, including via videoconference on October 1, 2025 and via email throughout the month of October. Counsel for Plaintiff Ringler insisted that the RTP should run through the present, which Defendant explained was

2

DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
CASE NO. 2:25-cv-01138-AH-E

untenable, unduly burdensome, and would necessarily capture periods of time not relevant to any of Plaintiffs' claims. On October 24, 2025, counsel for Plaintiff Ringler emailed Defendant's counsel, writing, "[r]egarding the relevant time period, we can agree to a search through September 8, 2025 . . . for purposes of production we can use that date for now[.]"

9. When Defendant served its third supplemental R&Os to Plaintiff Ringler's RFPs, it objected to Plaintiff Ringler's definition of the RTP as follows: "Defendant objects to the Requests to the extent that that the definition of the relevant time period is overbroad, is unduly burdensome, seeks documents that are not relevant to any adequately pled claim or any defense raised in this action, and/or is not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to the Requests to the extent that they seek information remote in time to this litigation, information for purposes other than this litigation, or documents outside the period from February 10, 2021, through February 10, 2025. Notwithstanding the foregoing, Defendant will interpret the relevant time period to mean February 10, 2021 through September 8, 2025 for the purpose of responding to these Requests." Plaintiff's counsel never requested the RTP be applied prior to February 10, 2021 after Defendant served its R&Os.

10. Following Plaintiff Ringler's October 24, 2025 agreement as to the applicable RTP, the issue was not raised again until December 31, 2025 when Plaintiff Ringler's counsel emailed Defendant's counsel, writing, "[w]e . . . did not see documents dated prior to 2021. As you know, the Relevant Time Period begins on February 10, 2021, but expressly includes documents prepared, published, sent, or received prior to that date if they relate to the Relevant Time Period. Please confirm . . . whether Smucker applied a 2021 time limitation when searching for documents. If so, please also confirm . . . that Smucker will re-run the searches without that limitation." Defendant explained in both a

3

DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
CASE NO. 2:25-cv-01138-AH-E

January 6, 2026 email and January 9, 2026 teleconference that it had in fact produced documents prior to 2021 where the documents were attached to responsive documents encompassed by the parties' agreed-upon RTP. Defendant's counsel also reminded Plaintiff Ringler's counsel that it had objected multiple times to Plaintiff Ringler's proposed definition of the RTP. At no point did Defendant agree to search for documents pursuant to Plaintiff Ringler's RTP definition that purports to include documents prior to February 10, 2021 with no set beginning date.

11. With respect to custodians, Defendant disclosed its six designees in conjunction with its second supplemental R&Os to Plaintiff Ringler's RFPs, which were served on October 8, 2025. Plaintiff Ringler did not raise any concerns regarding Defendant's designated custodians until January 9, 2026.

12. The parties also met and conferred—both via video conference and via email—on numerous occasions from September 2025 through November 2025 regarding mutually agreeable search terms to apply to Defendant's custodial data collections. Defendant acquiesced to nearly all of Plaintiff Ringler's demands, except for changing a "w/100" proximity connector to an "AND" connector in one search (out of over 20) and removing flavor-specific search terms.

13. On November 11, 2025—following yet another meet and confer requested by Plaintiff Ringler's counsel—counsel for Defendant wrote to Plaintiff Ringler's counsel: "Given that this was the only remaining item of discussion on search terms, we consider the meet and confer process on terms to be complete and the attached list of terms to be final." Nonetheless, nearly a month later on December 2, 2025, Plaintiff Ringler requested *additional* search terms, which Defendant agreed to run in good faith. Over the course of search term-related negotiations, Plaintiff sought no less than eight revisions of the parties' search strings. Every time Defendant agreed, Plaintiff Ringler would return again, just weeks later, with even more search term variations.

14. Moreover, during the roughly five months of discovery-related negotiations, Plaintiff Ringler never conveyed to Defendant that its document productions were deficient because Defendant "did not produce any documents reflecting its decision-making regarding (i) the formulation of the Products with manufactured citric acid, (ii) the use of the terms 'natural' and 'made with ingredients from natural sources' on the Products' labels despite containing manufactured citric acid not extracted from natural fruits, or (iii) pre-launch testing of the Products." *See* Joint Stipulation Re Pl.'s Mot. to Compel Part I.b. These topics are also not encompassed by Plaintiff Ringler's RFPs. Plaintiff Ringler never requested a meet and confer on these purported issues. Plaintiff Ringler also never conveyed to Defendant that it believed documents had not been produced in response to RFP Nos. 2, 3, 4, 7, 8, 10, 11, 23, 28, 29, 40, 45, 46, and 47.

15. In sum, after months of extensive negotiations, during which Defendant acquiesced to nearly all of Plaintiff's voluminous demands, the parties agreed to: (1) a date-certain RTP from February 10, 2021 to September 8, 2025; (2) six custodians; and (3) search terms.

16. Defendant then followed the typical discovery procedure by collecting documents from the agreed-upon custodians, applying the mutually negotiated terms, performing an extensive review. Defendant began rolling productions on September 21, 2025. On December 30, 2025, Defendant substantially completed its document production, producing approximately 1,500 documents comprising 3,508 pages. In meeting its discovery obligations, Defendant relied on the agreements reached by the parties during their numerous meet-and-confers: it ran the negotiated terms, incurred substantial vendor costs, reviewed thousands of documents, and substantially completed its production comprising of ~1,500 documents.

5

DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
CASE NO. 2:25-cv-01138-AH-E

17. Defendant's document productions reveal that the at-issue products are referred to be flavor. Defendant also produced at least one document containing the term "aspergillus niger."

18. Now, after Defendant has substantially completed its document productions and has satisfied its discovery obligations, Plaintiff Ringler is raising new purported "deficiencies" with Defendant's productions. First, she asserts she is entitled to documents referenced in Defendant's production that relate to other brands or products, are withheld for attorney-client privilege, or that simply do not exist. Plaintiff Ringler never explained why she is entitled to these documents in the parties' correspondences or videoconferences.

19. Plaintiff Ringler also demands Defendant remove narrow redactions on approximately six documents that protect non-responsive trade secrets concerning products and processes that are not at issue in this case. Over correspondence and during a January 9, 2025 meet and confer, Defendant explained to Plaintiff that the redactions are limited to specific phrases or words in about six documents out of approximately 1,500. Plaintiff Ringler never explained why the removal of the redactions is necessary, how the redacted material is relevant, or what provision under the Federal Rules of Civil Procedure entitles them to non-responsive documents and information.

20. Plaintiff Ringler requests the addition of Drew Ziegler as a document custodian as well. Drew Ziegler is a scientist in product research.

21. Defendant already designated the following six custodians:
    a. Caroline Bredemus – Senior Brand Manager Marketing, Consumer Foods;
    b. Carrie Fisher – Manager, Frozen Handheld & Spreads R&D - Fruit Spreads, Toppings, Away From Home;
    c. David Siciliano – Senior Scientist, TSO Consumer Foods;
    d. Jennifer Gostkowski – Manager, Supply Quality Assurance;
    e. Jennifer Washinger – Manager, Supply Quality Assurance; and

  f. Steve Westphal – Sr. Sourcing Manager-Ingredients.

22. Each of Defendant's designated custodians was thoughtfully selected by Defendant and possesses unique, relevant information about the products and claims at issue in this action. Each of them handles distinct aspects of supply, marketing, sourcing, science, and research and development for the at-issue products. Notably, two of them (Ms. Fisher and Mr. Siciliano) are involved in the science and research and development aspects of the at-issue products. Defendant also produced documents related to research and development.

23. On December 9, 2026, Defendant conveyed to Plaintiff's counsel via electronic mail that it would produce a privilege log by February 2, 2026. During the January 9, 2026 meet and confer, Plaintiff's counsel told counsel for Defendant that their only basis for adding Mr. Ziegler as a custodian was that he appears on "a lot of" emails and counsel "thinks" he might have relevant documents. When asked what deficiency this addresses, Plaintiff first admitted there was none and then said Mr. Ziegler "seems" relevant. However, Mr. Ziegler appears on just eight emails out of approximately 1,500 produced documents.

24. Finally, Plaintiff Ringler alleges that a number of documents are "missing" from Defendant's productions. For example, Plaintiff Ringler alleges a reply to the email JMS_0000671 is missing. During the January 9, 2026 meet and confer, counsel for Defendant told Plaintiff's counsel that it conducted a search and there was no reply to the email. Plaintiff in her Joint Stipulation seeks to compel product of a document that does not exist.

25. The revised terms would result in over 54,000 additional documents to review.

26. On January 13, 2026, Plaintiff's counsel transmitted to Defendant's counsel their portion of the Joint Stipulation, which they styled solely as a "Joint Stipulation re

7

DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
CASE NO. 2:25-cv-01138-AH-E

1  Plaintiff Adina Ringler's Motion to Compel." However, during the January 9, 2026 meet
2  and confer, counsel for Defendant told Plaintiff that it would be filing a motion for
3  protective as the lead position in the parties' forthcoming joint stipulation which would
4  address overlapping issues with Plaintiff's Motion to Compel. Counsel for Plaintiff
5  agreed. After receiving Plaintiff's draft, Defendant inserted its portions reflecting its
6  anticipated motion for protective order, consistent with what had been expressly
7  conveyed during the meet and confer and in follow-up electronic communications.
8  Defendant returned its portion to Plaintiff's counsel on January 20, 2026, in a timely
9  manner and in compliance with the local rules.

10    27.   On January 21, 2026, Plaintiff's counsel returned a revised version of the
11  Joint Stipulation that removed any reference in the document title to Defendant's motion
12  for protective order and altered the sequence of the parties' respective positions so that
13  Defendant's Motion for Protective was no longer the lead position. Plaintiff's counsel
14  requested Defendant's consent to file that revised version, which Defendant's counsel
15  declined to provide. Counsel for Defendant reminded Plaintiff's counsel of their
16  agreement during the January 9, 2026 meet and confer and requested they sign the version
17  of the joint stipulation transmitted on January 20, 2026 consistent with the parties'
18  agreement on January 9, 2026. Plaintiff's counsel outright refused and indicated that they
19  would proceed with filing their motion alone without Defendant's previously provided
20  portions of the Joint Stipulation.

21    28.   I certify under the penalty of perjury under the laws of the United States of
22  America and the State of California that the foregoing is true and correct.

24  Executed on January 30, 2026 in Chicago, Illinois.

1
2  Dated: January 30, 2026              WINSTON & STRAWN LLP
3
4                                       By: /s/ Ronald Y. Rothstein
5                                           Ronald Y. Rothstein (*pro hac vice*)
6                                           *Attorney for Defendant*
7                                           *The J. M. Smucker Company*
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

9

DECLARATION OF RONALD Y. ROTHSTEIN IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
CASE NO. 2:25-cv-01138-AH-E