**CROSNER LEGAL, P.C.**
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
***Attorneys for Plaintiffs and the Proposed Class***

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>**DISCOVERY MATTER**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date:    Feb. 20, 2026<br>Time:   9:30 a.m.<br>Ctrm:   750<br>Judge:   Hon. Charles F. Eick<br><br>Complaint Filed: Feb. 10, 2025<br>Trial Date:       Aug. 4, 2026 |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   DEFENDANT'S NON-COMPLIANCE WITH THE LOCAL RULES
      WARRANTS DENIAL OF ITS MOTION ............................................... 1

      A.    Defendant's Motion Should be Denied for Failure to Comply
            with Local Rule 37-1 .................................................................... 1

      B.    Defendant's Motion Should be Denied for Failure to Comply
            with Local Rule 37-2 .................................................................... 2

      C.    Defendant Cannot Rely on Local Rule 37-4 to Excuse Its
            Noncompliance .............................................................................. 3

III.  ARGUMENT ........................................................................................... 4

      A.    Defendant's Withholding of Responsive Documents is
            Improper ........................................................................................ 4

            1.    Defendant's Arguments Regarding Search Terms are
                  Unavailing ........................................................................... 6

            2.    Defendant's Failure to Include all Relevant Custodians is
                  Improper .............................................................................. 9

            3.    Plaintiff Has Identified Significant Deficiencies in
                  Defendant's Document Production ..................................... 10

      B.    Defendant's Unilateral Limitation of the Relevant Time Period
            Was Improper ............................................................................... 11

      C.    Defendant's Unilateral Redactions to Otherwise Responsive
            Documents are Improper .............................................................. 13

      D.    Defendant Should be Compelled to Produce Missing
            Documents ................................................................................... 15

      E.    The Court Should Order Defendant to Produce its Document
            Retention Policies ....................................................................... 19

      F.    The Court Should Award Plaintiff Attorneys' Fees ........................... 20

IV.   CONCLUSION ...................................................................................... 21

-i-

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Ang v. Bimbo Bakeries USA, Inc.*,
    2014 WL 1940178 (N.D. Cal. May 14, 2014) .................................................. 12

*BlackBerry Ltd. v. Facebook, Inc.*,
    2019 WL 4544425 (C.D. Cal. Aug. 19, 2019) .................................................... 9

*Faulk v. Gen. Elec. Co.*,
    2024 WL 5506976 (C.D. Cal. Dec. 5, 2024) ..................................................... 19

*Clark v. City of L.A.*,
    2023 WL 9687608 (C.D. Cal. Nov. 20, 2023) ..................................................... 6

*In re: Coca-cola Prods. Mktg. & Sales Pracs. Litig. (No. II)*,
    2016 WL 6245899 (N.D. Cal. Oct. 26, 2016) .................................................... 12

*Corker v. Costco Wholesale Corp.*,
    2022 WL 2391770 (W.D. Wash. July 1, 2022) ................................................... 13

*Da Silva Moore v. Publicis Groupe*,
    287 F.R.D. 182 (S.D.N.Y. 2012) ....................................................................... 5

*DiGiacinto v. RB Health (US) LLC*,
    2024 WL 4660917 (N.D. Cal. Feb. 16, 2024) ................................................... 15

*Evon v. Law Offices of Sidney Mickell*,
    2010 WL 455476 (E.D. Cal. Feb. 3, 2010) ....................................................... 15

*Hall v. Marriott Int'l, Inc.*,
    2021 WL 1906464 (S.D. Cal. May 12, 2021) ...................................................... 4

*Hawkins v. Kroger Co.*,
    2019 WL 4416132 (S.D. Cal. Sept. 16, 2019) ............................................ 19, 20

*Holman v. Experian Info. Solutions, Inc.*,
    2012 WL 2501085 (N.D. Cal. June 27, 2012) ................................................... 14

*Jensen v. BMW of N. Am., LLC*,
    328 F.R.D. 557 (S.D. Cal. 2019) ...................................................................... 19

-ii-

*Live Nation Merch., Inc. v. Miller*,

    2014 WL 1877912 (N.D. Cal. May 9, 2014) ......................................................14

*Markson v. CRST Int'l, Inc.*,

    2019 WL 7905896 (C.D. Cal. Dec. 16, 2019) ......................................................8

*In re Medeva Securities Litigation*,

    1995 WL 943468 (C.D. Cal. May 30, 1995)........................................................15

*NetCurrents Info. Servs. v. Dow Jones & Co.*,

    2008 WL 11338879 (C.D. Cal. June 11, 2008)...................................................14

*Ogden v. Bumble Bee Foods, LLC*,

    292 F.R.D. 620 (2013)........................................................................................12

*Patrick McMorrow et al. v. Mondelez Int'l, Inc.*,

    2019 WL 3852498 (S.D. Cal. Apr. 19, 2019) ....................................................20

*Rg Abrams Ins. v. L. Offs. of C.R. Abrams*,

    2021 WL 10312431 (C.D. Cal. Dec. 22, 2021) ..................................................19

*Rodriguez v. Vizio Inc.*,

    2015 WL 11439029 (S.D. Cal. Jan. 6, 2015) .....................................................14

*Sharma v. BMW of N. Am. LLC*,

    2016 WL 1019668 (N.D. Cal. Mar. 15, 2016) ...................................................19

*Taylor v. Google LLC*,

    2024 WL 4947270 (N.D. Cal. Dec. 3, 2024) .....................................................19

*Terpin v. AT&T Inc.*,

    2022 WL 3013153 (C.D. Cal. June 13, 2022).....................................................19

*Toyo Tires & Rubber Co., Ltd. v. CIA Wheel Group*,

    2016 WL 6246384 (C.D. Cal. Feb. 23, 2016).....................................................15

*Trevino v. ACB Am., Inc.*,

    232 F.R.D. 612 (N.D. Cal. 2006) ..............................................................13, 14

*United States Aviation Underwriters Inc. v. Aerospike Iron, LLC*,

    2023 WL 2414265 (S.D. Cal. Mar. 8, 2023)......................................................14

-iii-

*William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*,

256 F.R.D. 134 (S.D.N.Y. 2009) ........................................................................... 6

*Zaragoza v. Ford Motor Co.*,

2022 WL 22911169 (C.D. Cal. July 7, 2022) ..................................................... 19

**<u>Rules</u>**

C.D. Cal. Local Rule 7-3 ................................................................................... 1, 2, 11

C.D. Cal. Local Rule 37-1 .................................................................................. 1, 11

C.D. Cal. Local Rule 37-2 ........................................................................ 1, 2, 3, 10

C.D. Cal. Local Rule 37-4 ........................................................................................ 3

Fed. R. Civ. P. 11 .................................................................................................... 1

Fed. R. Civ. P. 34 ................................................................................................... 14

Fed. R. Civ. P. 37(a)(5)(B) .......................................................................... 1, 20, 21

-iv-

# I.    **INTRODUCTION**

Defendant The J.M. Smucker Company ("Defendant") filed the instant Motion for Protective Order ("Mot.") in response to Plaintiff's Motion to Compel (ECF No. 72), rather than opposing Plaintiff's Motion or submitting a joint stipulation pursuant to Local Rule 37-2. This has resulted in unnecessary, duplicative motion practice, and needlessly increased litigation costs in violation of Federal Rule of Civil Procedure 11.

In addition to being procedurally improper – and despite this Court's prior admonition to Defendant for failing to comply with Local Rules[1] – Defendant's Motion is premised on multiple mischaracterizations of fact, unsupported by case law, and contrary to established legal principles. Defendant has no legitimate basis for a protective order, and its Motion should be denied in its entirety.

Plaintiff further requests monetary sanctions pursuant to Federal Rule of Civil Procedure 37. *See* Fed. R. Civ. P. 37(a)(5)(B) ("If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.").

# II.    **DEFENDANT'S NON-COMPLIANCE WITH THE LOCAL RULES WARRANTS DENIAL OF ITS MOTION**

## A.    **Defendant's Motion Should be Denied for Failure to Comply with Local Rule 37-1**

Local Rule 37-1 requires a good faith meet and confer regarding **each** dispute that is the subject of a discovery motion. Defendant did not satisfy that requirement.

Plaintiff's counsel arranged a meet and confer videoconference regarding

---

[1] *See* ECF No. 63 at p. 6, fn. 1 ("the Court admonishes Defendant for its failure to comply with Local Rule 7-3 . . . failure to abide by the rules of this Court may result in sanctions in the future.").

-1-

Plaintiff's anticipated Motion to Compel, and the Parties conferred on January 9, 2026. *See* Declaration of Lilach Klein, filed concurrently herewith ("Klein Decl."), at ¶¶ 3-4 & Ex. 1. During that call, Defendant's counsel stated that Defendant would seek a protective order if Plaintiff challenged Defendant's unilateral redactions to otherwise responsive discovery. *Id*. Defendant did not state any intention to seek – nor did the Parties meet and confer regarding – any request for a protective order as to Sections A, B, D, and E of Defendant's Motion. *Id*., ¶¶ 4-5 & Ex. 1.

Because Defendant failed to meet and confer regarding those sections, Defendant's Motion as to Sections A, B, D, and E should be denied. This Court has previously admonished Defendant for failing to comply with the Local Rules governing pre-filing conferences. *See* ECF No. 63 at 6, fn.1 ("the Court admonishes Defendant for its failure to comply with Local Rule 7-3 . . . failure to abide by the rules of this Court may result in sanctions in the future"). Defendant's continued disregard of the meet and confer requirement warrants denial of the Motion.

**B.     Defendant's Motion Should be Denied for Failure to Comply with Local Rule 37-2**

Local Rule 37-2 establishes a mandatory procedure for discovery motions, requiring the moving party to prepare and serve a proposed joint stipulation with all supporting materials, and provide the opposing party at least seven days to insert its portion before filing. Defendant did not comply with any of these requirements.

Defendant did not serve Plaintiff with a Notice of Motion or a proposed joint stipulation that allowed Plaintiff seven days to address Defendant's Motion for Protective Order. Klein Decl., ¶ 9. Defendant only inserted its arguments into a joint stipulation that Plaintiff had prepared for a separate Motion to Compel, which it then refused to sign and return for filing. *Id*., ¶¶ 7-8. Defendant's attempt to repurpose that document as compliance with Local Rule 37-2 is improper and contrary to the

-2-

Local Rules.[2]

Moreover, contrary to Defendant's counsel's representations to the Court, Defendant never requested that Plaintiff sign a joint stipulation for Defendant to file, and filed a Motion for Protective Order without providing Plaintiff seven days to insert her portions. Klein Decl., ¶¶ 8-9 & Ex. 2. Defendant's Motion should be denied for failure to comply with Local Rule 37-2.

## C. Defendant Cannot Rely on Local Rule 37-4 to Excuse Its Noncompliance

Defendant's reliance on Local Rule 37-4 is improper. That rule applies only where the opposing party fails to confer, refuses to provide its portion of a joint stipulation, or declines to sign a completed stipulation – none of which occurred here. Defendant did not even request a meet and confer regarding multiple sections of its Motion, did not provide Plaintiff an opportunity to provide her portion of a joint stipulation addressing Defendant's Motion for Protective Order,[3] and never asked Plaintiff to sign a completed joint stipulation for Defendant to file. Klein Decl., ¶¶ 4-9. Indeed, the only signature on the joint stipulation Defendant appears to rely on (prepared by Plaintiff regarding her Motion to Compel) was that of Plaintiff's counsel's, as Defendant's counsel refused to sign. *See id.*, ¶ 9 & Ex. 2.

Having bypassed the required process at every step, Defendant cannot invoke Local Rule 37-4 to claim compliance with the Local Rules. Defendant's Motion for Protective Order is procedurally improper and should be denied in its entirety.

---

[2] Defendant's assertion that Plaintiff agreed Defendant would "lead with its forthcoming motion for protective order" (Mot. at 5:25) is false. No such agreement was ever proposed or reached. *See* Klein Decl. ¶¶ 4-5 & Ex. 1. Defendant's own memorialization of the January 9 meet and confer confirms this, as nowhere does it reflect any such agreement. *See id.*

[3] To the extent Defendant relies on the joint stipulation Plaintiff prepared for a separate Motion to Compel, that does not satisfy Local Rule 37-4, as Defendant filed its Motion for Protective Order just three days after inserting its portions, without affording Plaintiff an opportunity to respond. Klein Decl., ¶ 9.

-3-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    ARGUMENT

### A.    Defendant's Withholding of Responsive Documents is Improper

"This case presents the classic problem of asymmetric discovery—Defendant has nearly all the information that both sides need for the case, as well as the knowledge about where that information is kept, how it is stored, and how it can be accessed. The imbalance of access to information reduces the incentive to compromise. Discovery that should be self-executing becomes protracted and expensive." *See Hall v. Marriott Int'l, Inc.*, No. 3:19-CV-01715-JLS-AHG, 2021 WL 1906464, at *1 (S.D. Cal. May 12, 2021).

That dynamic is present here. Defendant argues that it strictly relied on search terms agreed to prior to the production of documents and therefore cannot re-run or supplement those searches. *See* Mot. at 6:9-22.[4] However, that position is irreconcilable with Defendant's repeated representations during the meet and confer process that Plaintiff should accept Defendant's proposed search terms, review Defendant's production, and then revisit the search terms if necessary. For example, on October 22, 2025, Defendant's counsel wrote, "As we've said several times on meet and confer calls with you, the most efficient way to address the [search term] issues raised by Plaintiffs is to review Defendant's document productions as they become available and then raise with us any perceived deficiencies." *See* Klein Decl., ¶ 11 & Ex. 3; *see also id.* ("As we have previously suggested, we again suggest Plaintiffs review Defendant's forthcoming production and, should they perceive any deficiencies, we are of course willing to further meet and confer.").

Plaintiff relied on these representations, particularly regarding the terminology used to search for the Products. For example, Plaintiff proposed that

---

[4] Defendant also argues that Plaintiff makes an "eleventh-hour attempt" to re-do discovery (Mot. at 6:10), however, fact discovery does not close until September 30, 2026 – another 9 months – and Plaintiff raised these issues with Defendant one (1) day after Defendant completed its document production. Klein Decl., ¶ 3; ECF No. 68.

-4-

1    Defendant use the phrase "fruit spread" to search for the Products at issue. Klein

2    Decl., ¶ 12 & Ex. 3. Defendant rejected that proposal and insisted that the Products

3    be searched using only the following flavor-based terms: (("berry W/5 spread") OR

4    ("triple W/5 spread") OR strawberry OR raspberry). *Id*. Defendant further

5    maintained that the issue was premature and should be revisited after Plaintiff

6    reviewed Defendant's production and could assess how Defendant internally

7    referred to the Products. *Id*. Accordingly, Plaintiff agreed to "table the issue pending

8    document review," but expressly noted, "[i]f it appears that Smucker predominantly

9    refers to the Products as 'fruit spreads,' we may revisit this." *Id*.

10         Defendant's document production revealed that Defendant refers to the

11   Products as the "Natural" products. *See, e.g*., Klein Decl., ¶¶ 13-19 & Exs. 4-9, 12.

12   As such, Plaintiff requested that Defendant re-run the parties' previously agreed-

13   upon search strings using the term "Natural" to capture the Products rather than the

14   limiting terminology (("berry W/5 spread") OR ("triple W/5 spread") OR strawberry

15   OR raspberry) that Defendant previously required. Klein Decl., ¶¶ 3-4 & Ex. 1; *see*

16   *also Da Silva Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012)

17   ("The requesting party guesses which keywords might produce evidence to support

18   its case without having much, if any, knowledge of the responding party's "cards"

19   (i.e., the terminology used by the responding party's custodians). Indeed, the

20   responding party's counsel often does not know what is in its own client 'cards.'").

21   Plaintiff also requested that Defendant conduct a targeted search for the term

22   "*Aspergillus niger*," as hardly any documents containing this term were produced.

23   Klein Decl., ¶ 21 & Ex. 1.

24         Defendant's refusal to revisit any search terms or produce any additional

25   documents, despite (1) knowing from the outset how it internally refers to the

26   Products and withholding this critical information while negotiating search terms,

27   (2) inducing Plaintiff to agree to search terms by insisting they could be revisited

28   after document review, and (3) failing to produce thousands of responsive

-5-

documents that it previously agreed to produce is improper and its Motion should be denied.[5]

### 1. *Defendant's Arguments Regarding Search Terms are Unavailing*

Defendant argues that Plaintiff seeks to run search terms "without any other terms relating to Plaintiff's claims." Mot. at 7:10-14 (emphasis removed). Not so. Plaintiff seeks only to have Defendant run the previously agreed-upon search strings using the term "Natural" to capture the Products at issue instead of Defendant's limiting terms (("berry W/5 spread") OR ("triple W/5 spread") OR strawberry OR raspberry). This is reasonable because Defendant refers to the Products as the "Natural" products. *See* Klein Decl., ¶¶ 13-19 & Exs. 4-9, 12. Plaintiff also requests that Defendant run a search for "*Aspergillus niger*," which is directly relevant to Plaintiff's claims. Defendant's cited case in inapposite, as it dealt with racial profiling by the Los Angeles Police Department, and the Court held that the terms "Honda," Sony," and "stash" in the course of law enforcement was generic and common. *Clark v. City of L.A.*, No. CV 20-10768 CAS (PVCx), 2023 WL 9687608, at *1, 9-10 (C.D. Cal. Nov. 20, 2023). By contrast, here, Plaintiff only requests that Defendant run searches using the terminology that it uses internally to refer to the Products at issue. S*ee, e.g., William A. Gross Constr. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 134 (S.D.N.Y. 2009) (There is a "need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other [ESI].")

Defendant argues that courts deny "belated attempts to expand search terms where a defendant already searched and produced documents in reliance on negotiated terms and the movant identifies no specific deficiency." Mot. at 7:19–20.

---

[5] *See* Mot. at 4:15-16 (stating that 54,000 additional documents may exist). Defendant's argument that none of the approximately 54,000 additional documents are relevant to this case strains credulity. *See* Mot. at 6:24 – 7:1.

-6-

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

Here, however, Defendant knew from the outset that it internally referred to the Products as the "Natural" products, yet insisted on search terms limited to (("berry W/5 spread") OR ("triple W/5 spread") OR strawberry OR raspberry). Defendant cannot now claim reliance on negotiated terms where it insisted on using search terms it knew were unduly limiting and unlikely to capture all responsive documents. Further, Plaintiff identified specific deficiencies – including that the searches did not use Defendant's internal terminology to refer to the Products at issue – and notified Defendant of that deficiency one (1) day after Defendant's final document production. *See* Klein Decl., ¶¶ 3-4 & Ex. 1.

**"Natural" Search Term.** Defendant argues that Plaintiff seeks searches containing the word "natural" without connecting them to the Products. Mot. at 8:19-21. However, "Natural" is the term Defendant itself uses to refer to the Products. *See* Klein Decl., ¶¶ 13-19 & Exs. 4-9, 12. Defendant's speculative concern that the term might yield documents relating to other brands is unavailing. *See* Mot. at 6-7.[6] The searches are limited to custodians involved with the Products, and Defendant expressly refers to the Products as the "Natural" products. *See* Klein Decl., ¶¶ 13-19 & Exs. 4-9, 12. Moreover, Defendant's position is undermined by its prior agreement to search for the Products by flavor, such as "strawberry," despite marketing numerous strawberry-flavored products across multiple brands. *See* Mot. at Appendix B; *see also* https://www.smuckers.com/products.

**Citric Acid Search Terms.** Defendant contends that Plaintiff demands a broad search for "citric acid" without any nexus to the Products or claims. Mot. at 8:8-9. Not so. Plaintiff seeks only that Defendant apply previously agreed-upon citric acid search terms in conjunction with "Natural," which is how Defendant internally refers to the Products. Further, documents reflecting Defendant's understanding of citric acid as a natural or non-natural ingredient are directly

---

[6] Defendant's argument that none of the approximately 54,000 additional documents are relevant to this case strains credulity.

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

relevant to Plaintiff's claims and are responsive to Requests for which Defendant has already agreed to produce documents. *See* Mot. at Appendix A [Request Nos. 19-22, 24, 27-29].

**Competition Terms.** Defendant objects to search terms such as (compet* OR alternat* OR substitute* OR replac*). *See* Mot. at 10:17-18. That objection lacks merit because Plaintiff seeks only that Defendant apply these previously agreed-upon terms—terms Defendant has already run—in conjunction with "Natural," the term Defendant uses to refer to the Products. *See* Mot. at Appendix B [Search No. 7].

**Aspergillus niger.** Defendant asserts that a search for "Aspergillus niger" is overbroad and untethered to Plaintiff's claims. Mot. at 10:27. However, Defendant's Rule 30(b)(6) witness testified that the citric acid used in the Products is manufactured using *Aspergillus niger*. *See* Klein Decl. ¶ 21. Despite this testimony, Defendant's December 30, 2025 production contained almost no documents referencing that term. *Id*. This discrepancy demonstrates that Defendant's existing search terms failed to capture responsive documents directly relevant to Plaintiff's claims. Notably, Defendant does not identify how many documents such a search would yield. *See* Mot. Moreover, Defendant's own authority recognizes that when a party later identifies a deficiency in search terms, it is appropriate to revisit those terms through the meet and confer process. *Markson v. CRST Int'l, Inc.*, No. EDCV171261, 2019 WL 7905896, at *5 (C.D. Cal. Dec. 16, 2019).

Finally, Defendant's claim that Plaintiff has had "enough bites at the apple" is baseless. Plaintiff sought modification of search terms one (1) day after reviewing Defendant's production and discovering that responsive documents were missing – precisely the process Defendant repeatedly insisted upon. *See* Klein Decl. ¶¶ 3, 11. Defendant cannot now justify withholding responsive materials and its Motion should be denied.

//

-8-

1      **2.      *Defendant's Failure to Include all Relevant Custodians is
2      Improper***

3      Defendant argues that the Court should "deny Plaintiff's request to add Drew
4      Ziegler as a new custodian because he is duplicative." Mot. at 11:9-10. As an initial
5      matter, neither the Court nor the parties can assess whether Mr. Ziegler's documents
6      are "duplicative" because Defendant has not conducted any search or sampling of
7      his files. Further, here, Defendant's own documents indicate that Mr. Ziegler
8      possesses relevant information responsive to Plaintiff's Requests. *See, e.g.*, Klein
9      Decl., ¶ 22 & Ex. 8. Under Defendant's own cited authority, Defendant should be
10     required to search the files of this relevant custodian. *See* Mot. at 11:23-24, citing *In
11     re Facebook, Inc. Consumer Priv. User Profile Litig.*, No. 3:18-MD-02843-VC-JSC,
12     2021 WL 10282213, at *1-2 (N.D. Cal. Nov. 14, 2021) (ordering designation of
13     additional custodians where additional custodians possess information relevant to
14     the Plaintiffs' allegations).[7]

15     Defendant further contends that "Mr. Ziegler possesses no unique knowledge
16     about the at-issue claims or Products that is not already captured by the current
17     custodians." Mot. at 12:10-11. However, Defendant admits that Mr. Ziegler works
18     in product research, and Defendant's documents identify Mr. Ziegler as ████████
19     ████████████. *See* Mot. at 12:9; *see also* Klein Decl., ¶ 22 & Ex. 8. Yet, the
20     custodians Defendant has designated are not identified as having knowledge
21     regarding product research or testing. For example, Defendant stated in its
22     Interrogatory Responses that Ms. Fisher's knowledge relates to "technical
23     management and product development," and Mr. Siciliano's knowledge concerns
24     "product formulations and processes." *See* Klein Decl., ¶ 23. Neither appear to
25     overlap with Mr. Ziegler's role in product research and testing. Because Mr. Ziegler

26
27     [7] Defendant's citation to *BlackBerry* is inapposite, as *BlackBerry* did not address the
       addition of a previously unsearched custodian. *See* Mot. at 11:10-12, citing
28     *BlackBerry Ltd. v. Facebook, Inc.*, No. CV 18-1844-GW (KSx), 2019 WL 4544425,
       at *6–7 (C.D. Cal. Aug. 19, 2019).

-9-

appears to possess uniquely relevant information not available from the custodians Defendant has already designated, Defendant's attempt to label him "duplicative" is unsupported, and its Motion should be denied.

### 3.    *Plaintiff Has Identified Significant Deficiencies in Defendant's Document Production*

Defendant's contention that Plaintiff violated Civil Local Rule 37-2 by allegedly raising "new issues" for the first time in her Motion to Compel is incorrect. After reviewing Defendant's document production, Plaintiff discovered that large categories of responsive documents were missing. *See* Klein Decl. ¶ 2. Plaintiff met and conferred with Defendant regarding the likely causes of these deficiencies, including Defendant's failure to use its internal terminology in search terms, its unilateral imposition of a temporal limitation on its document search, and its failure to search all relevant custodians. *See* Klein Decl. ¶¶ 3-4 & Ex. 1. Defendant, however, refused to conduct any additional searches or produce further documents. *See id*.

Defendant's argument that it agreed to produce documents only "'if any' exist" is misleading. *See* Mot. at 13:12. Defendant has not submitted a declaration stating that no such documents exist, nor explained how a reasonable search could yield no documents on issues central to this case.[8] To the contrary, Defendant's own Motion confirms that responsive documents exist but were not produced. *See* Mot. at 4:6-16 (acknowledging that as many as 54,000 additional documents may exist). Here, it is evident that additional responsive documents exist, including documents reflecting pre-launch decision-making, yet Defendant has failed to produce them.

---

[8] To the extent Defendant now claims responsive documents do not exist, it should be required to amend its discovery responses to confirm that it conducted a reasonable search, state whether responsive documents were found or do not exist, and identify any documents being withheld.

-10-

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

An order compelling further production is therefore warranted.[9]

### B.    Defendant's Unilateral Limitation of the Relevant Time Period Was Improper

Defendant contends the Parties "agreed to a date-certain RTP from February 10, 2021 to September 8, 2025." Mot. at 14:7–8. That is incorrect. Plaintiff defined the Relevant Time Period as "February 10, 2021, to the present, and it shall include all Documents and information relating to such period even though prepared, published, sent, or received, in whole or in part, prior to that period." *See* ECF No. 72-2.[10]

Plaintiff did not learn that Defendant had imposed a February 10, 2021 beginning cutoff in its document search until reviewing Defendant's production and discovering that highly relevant pre-launch documents were missing. Klein Decl., ¶ 24. Plaintiff raised this issue with Defendant on December 31, 2025 and the parties met and conferred on January 9, 2026. *See* Klein Decl., ¶¶ 3-4 & Ex. 1. Defendant's argument that Plaintiff failed to meet and confer pursuant to Local Rule 7-3 regarding this issue is unsupported. *See* Mot. at 14:7-20.[11] In fact, following the Parties' meet and confer, Defendant's counsel circulated a follow-up email memorializing the meet and confer discussion, which included the parties' disagreement regarding the Relevant Time Period. *See* Klein Decl., ¶ 5 & Ex. 1.

---

[9] Defendant's accusation (Mot. at 13:26 – 14:2) misrepresents the record. Plaintiff filed a declaration stating that Defendant's production contained "almost no documents with the term '*Aspergillus niger*.'" *See* ECF No. 72-1 at ¶ 15. This is consistent with Defendant's counsel declaration, which acknowledges only a single document containing the term *Aspergillus niger*. *See* ECF No. 73-2, at ¶ 17.

[10] The Parties previously met and conferred regarding a separate issue over Defendant's imposition of a February 10, 2025 end cutoff date and ultimately agreed to a document search through September 8, 2025, with the understanding that the issue would be revisited after class certification. Klein Decl., ¶ 25 & Ex. 3.

[11] Local Rule 7-3 does not apply to discovery motions. Plaintiff satisfied her meet and confer obligations under Local Rule 37-1.

-11-

1   Defendant also argues that "reopening the RTP would require duplicative
2   vendor processing and attorney review for thousands of additional documents with
3   no demonstrated relevance." Mot. at 15:9–10. However, that burden is entirely of
4   Defendant's own making. Defendant unilaterally imposed a time limitation
5   inconsistent with Plaintiff's Requests and excluded responsive, relevant documents
6   from its search. *See* Mot. at 15:9-10 (acknowledging "thousands of additional
7   documents" were not produced).

8   Defendant's contention that such documents are irrelevant is unsupported, as
9   the documents solely fall within categories Defendant agreed to produce documents
10  for, including Request Nos. 10-20, 27-30, 35, 37. *See* Mot. at Appendix A. Further,
11  courts have repeatedly recognized that pre-launch decision-making materials are
12  highly relevant in cases of this nature. *See, e.g.*, *Ogden v. Bumble Bee Foods, LLC*,
13  292 F.R.D. 620 (2013) (information about manufacturer's marketing and labeling
14  decisions before statute of limitations period relevant in misbranding class action
15  case); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196, 2014 WL 1940178, at
16  *2 (N.D. Cal. May 14, 2014) ("information about defendant's marketing and
17  labeling decisions concerning the products in this food misbranding case would
18  either be relevant to plaintiffs' claims or could lead to admissible evidence
19  supporting their claims."); *In re: Coca-cola Prods. Mktg. & Sales Pracs. Litig. (No.*
20  *II)*, No. 14MD02555JSWMEJ, 2016 WL 6245899, at *6 (N.D. Cal. Oct. 26, 2016)
21  ("Pre-class period discovery is often relevant, particularly in misleading advertising
22  cases.").

23  Here, documents concerning the Products' formulation, Defendant's
24  decision-making regarding the Representations on the Product labels, discussions
25  about including citric acid in the Products, and any pre-launch testing, including
26  sensory testing of the Products with citric acid and consumer preference studies, are
27  directly relevant to Plaintiff's Requests that Defendant agreed to produce documents
28  for and must be produced. *See* Mot. at Appendix A [Request Nos. 10-20, 27-30, 35,

-12-

37].

Defendant's sole cited authority – a Washington case – is distinguishable. *See* Mot. at 15:12-16. In *Corker*, the plaintiff sought discovery from February 2015, and at the end of discovery requested documents prior to February 2015. *See Corker v. Costco Wholesale Corp.*, No. C19-0290RSL, 2022 WL 2391770, at *1 (W.D. Wash. July 1, 2022). The Court found that while the requested information was relevant and proportional, expanding the temporal scope "at the very end of fact discovery would impose an undue burden" on defendants, particularly where plaintiffs knew of their arguments "for years and yet sought discovery dating back only to February 2015." *See id.* Notwithstanding, the court noted, "[t]he fact that a party is willing to make a concession or accede to a limitation during the meet and confer process does not forever bar it from pursuing the information if it is relevant and proportional to the needs of the case." *Id.* By contrast, here, Plaintiff only seeks discovery regarding the Relevant Time Period as defined in her Requests. *See* ECF No. 72-2. Responsive documents that were not produced due to Defendant's unilateral imposition of a February 10, 2021 temporal limitation are clearly relevant and must be produced.

### C.    Defendant's Unilateral Redactions to Otherwise Responsive Documents are Improper

Defendant's unilateral redactions to otherwise responsive documents are improper. The parties agreed to, and the Court entered, a Stipulated Protective Order governing confidential information and documents, including "trade secrets or proprietary or other highly confidential business information." *See* ECF No. 34. The protective order does not authorize partial or redacted productions. *See id.* Defendant's argument that producing unredacted documents risks competitive injury is unpersuasive, as Plaintiff is not Defendant's competitor. *See Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) ("plaintiffs are not competitors of defendants, so with a stipulated protective order in place, there is virtually no risk that defendants' 'secrets' will be disclosed.")

-13-

Defendant's sole authority is distinguishable. *See* Mot. at 16:8-11. The case it cites concerns source code – material widely recognized as a trade secret – and even there the court acknowledged that such information may ultimately be discoverable. *See NetCurrents Info. Servs. v. Dow Jones & Co.*, No. CV 07-4027 JFW (RCx), 2008 WL 11338879, at *5, n.5 (C.D. Cal. June 11, 2008). Here, Defendant has not shown that the redacted material constitutes trade secrets or otherwise merits heightened protection. Instead, Defendant represents that the redactions are "minimal and surgical"[12] and "limited to nonresponsive phrases" (Mot. at 16:13–14) without explaining how "nonresponsive phrases" contain trade secret information.

In any event, the weight of authority holds that unilateral redactions of otherwise discoverable documents are improper where a protective order is in place. *See, e.g.*, *Live Nation Merch., Inc. v. Miller*, 2014 WL 1877912, at *2 (N.D. Cal. May 9, 2014) ("[R]edactions of otherwise discoverable documents here are unwarranted . . .  and confidential/proprietary information could be addressed through a protective order."); *Holman v. Experian Info. Solutions, Inc.*, No. 11-cv-00180 CW (DMR), 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (ordering production of unredacted documents notwithstanding claims of highly sensitive business information); *Trevino*, 232 F.R.D. at 617 (same); *United States Aviation Underwriters Inc. v. Aerospike Iron, LLC*, No. 21-cv-758-GPC (BLM), 2023 WL 2414265, at *2 (S.D. Cal. Mar. 8, 2023) (finding no legal basis for redactions based on relevance or sensitivity where a protective order exists); *Rodriguez v. Vizio Inc.*, 2015 WL 11439029, at *4 (S.D. Cal. Jan. 6, 2015) (consistent with Rule 34, responsive documents must be produced "as they are kept in the usual course of business," which presumptively means unredacted).

Further, Defendant may not unilaterally redact otherwise responsive material based on relevance. *See* ECF No. 35 at 13:10-12 (ESI Protocol: "[a] producing party may not redact information on the basis that it believes the information to be

---

[12] Entire pages of documents appear to be redacted. *See* Klein Decl., ¶ 28 & Ex. 11.

-14-

irrelevant."); *see also, e.g.*, *Toyo Tires & Rubber Co., Ltd. v. CIA Wheel Group*, 2016 WL 6246384, at *2 (C.D. Cal. Feb. 23, 2016), citing *Bonnell v. Carnival Corp.*, No. 13-22265, 2014 WL 10979823, at *4 (S.D. Fla. Jan. 31, 2014); *Evon v. Law Offices of Sidney Mickell*, No. 09-0760, 2010 WL 455476, at *2 (E.D. Cal. Feb. 3, 2010) ("Redaction is, after all, an alteration of potential evidence . . . a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."); *In re Medeva Securities Litigation*, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995) ("The Court does not welcome unilateral editing of documents by the producing party. Even when implemented with restraint and in good faith, the practice frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured."); *DiGiacinto v. RB Health (US) LLC*, No. 22-CV-04690, 2024 WL 4660917, at *1 (N.D. Cal. Feb. 16, 2024) (finding no legal basis for redactions grounded in relevance and responsiveness and ordering production of unredacted documents).

Notwithstanding, Defendant's redactions do appear to contain relevant information. *See, e.g*., Klein Decl. ¶ 27 & Ex. 10.

Because the Federal Rules, controlling case law, and the ESI Protocol in this case do not permit unilateral redactions of responsive documents, and Defendant's concerns are already addressed by the existing Protective Order, Defendant's Motion should be denied.

### D.    Defendant Should be Compelled to Produce Missing Documents

Plaintiff identified several documents referenced in Defendant's document production that have not themselves been produced and requested that Defendant produce them. Klein Decl., ¶¶ 3-4, 29 & Ex. 1. This is not a fishing expedition; rather, Plaintiff has pinpointed concrete gaps revealed by Defendant's own documents. For example, when a produced document cites studies, analyses, or data, the absence of the underlying materials raises a legitimate question about the

-15-

completeness of production. Defendant's refusal to produce these documents is improper.

Plaintiff's reply to Defendant's document-by-document chart is set forth below:

| Missing Documents | Defendant's Response | Plaintiff's Reply |
|---|---|---|
| The conjoint studies discussed in JMS_0000147 | This is not responsive to any of the RFPs propounded by Plaintiff. | Conjoint studies analyzing consumer preferences for the Products are responsive to Request Nos. 10, 35, 37, 38. Without production of the study itself, Plaintiff cannot determine what additional questions were asked or what additional results exist. Defendant's own documents indicate that additional, relevant questions were likely posed. *See, e.g.*, Klein Decl., ¶ 30 & Ex. 12 at pp. 62-68. |
| The conjoint studies discussed in JMS_0001488, JMS_0002407, JMS_0002750 | There are no conjoint studies or analyses in these documents. | The documents expressly reference a study and discuss questions posed to survey participants and results responsive to Request Nos. 10, 12, 35, 37, 38, 39. *See* Klein Decl. ¶ 30 & Ex. 12 at pp. 67-68, 72. |
| The conjoint studies discussed in JMS_0002043, JMS_0002551, JMS_0002861 | The conjoint studies referenced did not hit upon agreed-upon search parameters in accordance with the ESI protocol and are not responsive to Plaintiff's discovery requests. For example, at least one study pertains to Defendant's peanut butter product line. | Defendant cannot rely on search-term limitations to withhold otherwise responsive documents. Studies addressing consumer willingness to pay for "natural" claims and premium pricing for natural representations are plainly responsive to Request Nos. |

-16-

| | | 10, 11, 12, 13, 14, 35, 37, 38. |
|---|---|---|
| The studies and data discussed in JMS_0001310–1353, JMS_0002154 | Plaintiff does not identify with specificity what is meant by "studies and data." For instance, nearly all the 44 slides in Bates No. JMS_0001310 contain data source citations. It is unclear to which of these data sources Plaintiff contends are "missing." Defendant is unable to ascertain what specific data is purportedly "missing" from its productions. Further, most of the data cited in Bates JMS_0001310 pertains to other Smucker product lines (i.e., JIF), is outside the agreed-upon RTP (e.g., an October 2020 conjoint study which took place before the Products were even released), or is otherwise not responsive to Plaintiff's discovery requests or their claims in this action (e.g., data regarding fruit spread product *sizing*). | Plaintiff has identified with specificity the documents sought. *See* Klein Decl., ¶ 3 & Ex. 1. Plaintiff seeks studies and data regarding consumer preferences for "natural" claims and premium pricing for natural claims, which are plainly responsive to Request Nos. 10, 11, 12, 13, 14, 35, 37, 38.<br><br>Defendant's argument that the data may also pertain to other Smucker product lines misses the mark, as studies concerning premium pricing for "natural" claims are directly relevant to Plaintiff's claims. *See* ECF No. 44. Defendant's argument regarding the Relevant Time Period is addressed in Section III(B), *supra*. |
| Attachments and documents referenced in JMS_0000115 | The attachment to this document was withheld for attorney-client privilege. Defendant produced a slipsheet indicating as much. | Defendant has not produced a privilege log, so Plaintiff is unable to ascertain any privilege. |
| Attachments and documents referenced in JMS_0000438–439 | These documents are non-responsive. | This document appears as an attachment to an email that was not produced. *See* Klein Decl., ¶ 31 & Ex. 13. However, the ESI protocol entered in this case requires that "[a]ttachments, enclosures, and/or exhibits to |

-17-

| | | any parent document should also be produced and proximately linked to the respective parent document…" ECF No. 35 at 8:24 – 9:1. Because it was withheld, Plaintiff cannot review its contents, but it appears responsive to Request Nos. 16-18, 35. |
|---|---|---|
| The attachments and documents referenced in JMS_0000658–659, JMS_0000912, JMS_0003312–3384, JMS_0003295–3308, JMS_0003390–3403, JMS_0003409–3463, JMS_0003468–3497 | These documents were produced. *See, e.g.,* JMS_0000011, JMS_0003286, JMS_0003385, JMS_0003498. | Approximately nine attachments and nineteen categories of documents are referenced, yet Defendant identifies only four documents, two of which are duplicates. The remaining referenced documents and attachments must be produced. *See* Klein Decl. ¶ 32 & Ex. 14. |
| The full email chain and attachments referenced in JMS_0000671–674 | No responsive, non-privileged reply to this email chain exists. If it did, it would have been produced. Furthermore, numerous COFCO specification and other information sheets were previously produced. *See, e.g.,* JMS_0000005–0000006, JMS_0000462, JMS_0000503–0000523, JMS_0000526, JMS_0000992, JMS_00001020, | Defendant now asserts that no "non-privileged" documents exist relating to an email chain ███████ ██████████. *See* Klein Decl., ¶ 33 & Ex. 15. However, copying counsel on an email after the fact does not retroactively confer privilege. To the extent Defendant is withholding any documents on the basis of privilege, |

-18-

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER

| | JMS_00001033–00001034, JMS_0001131–0001132, JMS_0003287–0003292. | Defendant must produce a privilege log so that Plaintiff may assess the applicability of any claimed privilege.<br><br>Further, although Defendant produced other COFCO information sheets, it does not appear that a COFCO "specification sheet" was produced. |
|---|---|---|

### E. The Court Should Order Defendant to Produce its Document Retention Policies

None of the authorities cited by Defendant address document retention policies or hold that such policies are protected from discovery. *See* Mot. at 19-20.[13] That is because courts routinely consider document retention policies relevant and discoverable. *See, e.g., Sharma v. BMW of N. Am. LLC*, No. 13-cv-02274-MMC (KAW), 2016 WL 1019668, at *4 (N.D. Cal. Mar. 15, 2016) ("that information is relevant. The document retention policies may help Plaintiffs determine the universe of responsive documents and evaluate any gaps in document production."); *Hawkins v. Kroger Co.*, 2019 WL 4416132, at *12 (S.D. Cal. Sept. 16, 2019) (finding document retention policies relevant and granting motion to compel).

Defendant's argument that Plaintiff must first make a "particularized

---

[13] *Citing Faulk v. Gen. Elec. Co.*, No. 2:23-CV-05132, 2024 WL 5506976, at *11 (C.D. Cal. Dec. 5, 2024) (discovery into how a party searched for documents); *Zaragoza v. Ford Motor Co.*, No. CV 22-1959, 2022 WL 22911169, at *7 (C.D. Cal. July 7, 2022) (testimony regarding documents produced in the litigation); *Terpin v. AT&T Inc.*, No. CV 18-6975, 2022 WL 3013153, at *2 (C.D. Cal. June 13, 2022) (request to compel defendant to disclose search terms used); *Rg Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 221CV00194, 2021 WL 10312431, at *11 (C.D. Cal. Dec. 22, 2021) (litigation hold notices); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (preservation and search efforts); *Taylor v. Google LLC*, No. 20-CV-07956, 2024 WL 4947270, at *2 (N.D. Cal. Dec. 3, 2024) (preservation and collection efforts).

-19-

1  showing" of spoliation, deficiency, or a concrete gap in production is likewise

2  unsupported. *See* Mot. at 19:11-13. Courts have expressly rejected that heightened

3  standard and permit discovery of retention policies without such a showing. *See*

4  *Patrick McMorrow et al. v. Mondelez Int'l, Inc*., 2019 WL 3852498, at *3 (S.D. Cal.

5  Apr. 19, 2019) ("This Court does not find that a showing of spoliation or discovery

6  misconduct is necessary before requiring production of a party's document retention

7  policies.") (citing *Sharma*, 2016 WL 1019668, at *4 and *In re Takata Airbag Prod.*

8  *Liab. Litig*., 2017 WL 8812734, *6 (S.D. Fla. July 5, 2017)); *Hawkins v. Kroger Co*.,

9  2019 WL 4416132, at *12 (S.D. Cal. Sept. 16, 2019) (same).

10      Here, the production of Defendant's document retention policies will enable

11  Plaintiff to determine the universe of responsive documents and identify any gaps in

12  Defendant's document production. *Patrick McMorrow et al. v. Mondelez Int'l, Inc*.,

13  2019 WL 3852498, at *3 (S.D. Cal. Apr. 19, 2019) ("The moving party need only

14  demonstrate that production of the non-moving party's document retention policies

15  would enable it to determine the universe of responsive documents..."). The Court

16  should order Defendant to produce its document retention policies in response to

17  Plaintiff's Request No. 42. *See* Mot. at Appendix A.

18      **F.    The Court Should Award Plaintiff Attorneys' Fees**

19      The Court should deny Defendant's Motion and grant Plaintiff's request for

20  monetary sanctions pursuant to Federal Rule of Civil Procedure 37. *See* Fed. R. Civ.

21  P. 37(a)(5)(B) ("If the motion is denied, the court may issue any protective order

22  authorized under Rule 26(c) and ***must***, after giving an opportunity to be heard,

23  require the movant, the attorney filing the motion, or both to pay the party or

24  deponent who opposed the motion its reasonable expenses incurred in opposing the

25  motion, including attorney's fees.") (emphasis added). Defendant's Motion is

26  procedurally improper, premised on mischaracterizations of fact, substantively

27  unsupported by controlling case law, and wholly duplicative of Plaintiff's Motion to

28  Compel, which needlessly increased motion practice and litigation costs. Under

-20-

these circumstances, an award of fees is warranted.

## IV.    **CONCLUSION**

Defendant's Motion should be denied in its entirety, and the Court should grant Plaintiff attorneys' fees pursuant to Fed. R. Civ. P. 37.

Dated: January 30, 2026                    CROSNER LEGAL, P.C.


                                           By:      */s/ Lilach H. Klein*
                                                    Lilach H. Klein

                                           9440 Santa Monica Blvd. Suite 301
                                           Beverly Hills, CA 90210
                                           Tel: (866) 276-7637
                                           Fax: (310) 510-6429
                                           lilach@crosnerlegal.com

                                           *Attorneys for Plaintiffs and the Proposed
                                           Class*

-21-

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief contains 6,208 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 30, 2026                    CROSNER LEGAL, P.C.


By:        */s/  Lilach H. Klein*
_____
                          LILACH H. KLEIN

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFF ADINA RINGLER'S OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER