1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CROSNER LEGAL, P.C.**
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429
***Attorneys for Plaintiffs and the Proposed
Classes***

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Date: Wednesday, May 27, 2026<br>Time: 1:30 p.m.<br>Ctrm: 9C<br>Judge: Hon. Anne Hwang<br><br>Compl. Filed: Feb. 10, 2025<br>Trial Date: Feb. 23, 2027 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Wednesday, May 27, 2026, at 1:30 p.m., or as soon after as the matter may be heard, in Courtroom 9C of this Court, located at 350 W. 1st Street, Los Angeles, CA 90012 California, before the Honorable Anne Hwang, attorneys for Plaintiffs Adina Ringler, Krista Robles, Jay Smith, and Jana Rabinowitz (collectively, "Plaintiffs") move the Court for an order certifying the following two classes:

Plaintiffs Ringler, Robles, and Smith move the Court for an Order pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(c)(4) certifying, with respect to their claims for violations of (1) the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); (2) the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); and (3) breach of express and implied warranties, a California class defined as follows:

**All persons who purchased the Products[1] in California for personal and household use and not for resale between February 10, 2021 and the date class notice is disseminated**.

Plaintiff Rabinowitz respectfully moves the Court for an Order pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(c)(4) certifying her claims for violations of New York General Business Law §§ 349 and 350, a New York class defined as follows:

**All persons who purchased the Smucker's Natural Strawberry Fruit Spread product in New York for personal and household use and not for resale between February 10, 2022 and the date class notice is disseminated**.

---

[1] The "Products" are Smucker's Natural Triple Berry Fruit Spread, Smucker's Natural Strawberry Fruit Spread, and Smucker's Natural Red Raspberry Fruit Spread products.

Excluded from the classes above are Defendant The J.M. Smucker Company's ("Defendant" or "Smucker") current and former officers and directors and their immediate family members; Defendant's legal representatives, heirs, successors, and assigns; any entity in which Defendant has or had a controlling interest during the Class Period; the judicial officers assigned to this action and their immediate family members; and any class members who received a full refund for all purchases of the Products.

As set forth in the memorandum in support of this motion below, Plaintiffs satisfy the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(3), and 23(c)(4) warranting class certification. Further, Plaintiffs meet the requirements for the appointment as Class Representatives and Craig W. Straub, Lilach H. Klein, Michael T. Houchin, and Zachary M. Crosner of Crosner Legal, P.C. meet each of the requirements of Rule 23(g)(1).

This motion is based on the accompanying memorandum, the Declaration of Craig W. Straub ("Straub Decl."), the declaration of Charles L. Baum, Ph.D. ("Baum Decl."), the declaration of Greg M. Allenby, Ph.D. ("Allenby Decl."), the declaration of Kurt M. Hong, M.D. Ph.D., FACN ("Hong Decl."), and the declarations of Adina Ringler, Krista Robles, Jay Smith, and Jana Rabinowitz, all exhibits attached thereto, the pleadings, papers and other documents on file herein, and such further material or argument as the Court may consider at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 10, 2026.

Dated: February 25, 2026          CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*
Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*

-ii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed
Classes*

-iii-

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION.................................................................i

I.      INTRODUCTION................................................................................1

II.     BACKGROUND..................................................................................2

III.    THE TYPE OF FACTS TO BE PRESENTED AT CLASS TRIAL ............2

      A.      Common Evidence Confirms Artificial Citric Acid in the
Products............................................................................................2

      B.      Common Evidence of Consumer Deception and Materiality..............6

      C.      Plaintiffs' Purchases and Reliance...................................................8

IV.     THE CLAIMS PLAINTIFFS SEEK TO CERTIFY.....................................8

      A.      The California UCL Claim ................................................................8

      B.      The California CLRA Claim...............................................................9

      C.      The California Warranty Claims......................................................10

      D.      The New York GBL Sections 349 and 350 Claims...........................10

V.      THE CLASSES SHOULD BE CERTIFIED .............................................11

      A.      The Requirements of Rule 23(a) Are Satisfied.................................12

            1.      Numerosity .........................................................................12

            2.      Commonality ......................................................................12

            3.      Typicality ...........................................................................13

            4.      Adequacy ...........................................................................14

      B.      The Classes Should Be Certified Under Rule 23(b)(3) .....................15

            1.      Common Issues Predominate ...............................................15

                  a.      Smucker's Liability Will be Adjudicated Pursuant
to Objective Standards, Using Common Evidence........15

                        i.      California Consumer Protection Claims..............15

                        ii.     New York Consumer Protection Claims .............18

                        iii.    California Warranty Claims................................18

                    b.      Relief Can be Determined on a Classwide Basis...........19

-iv-

2.    Superiority ........................................................................22

C.    The Requirements of Rule 23(c)(4) Are Satisfied .............................23

VI.    CONCLUSION ...........................................................................23

1
2

# **TABLE OF AUTHORITIES**

**Cases**

3   *Allen v. Similasan Corp.*, 306 F.R.D. 635 (S.D. Cal. 2015)....................................19

4   *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997).............................................11, 15

5   *Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ...............................................12

6   *Bradach v. Pharmavite, LLC*, 735 F. App'x 251 (9th Cir. 2018) ...........................16

7   *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011)................19

8   *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217 (2013) .........................................16

9   *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) .............11

10   *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006)...................10

11   *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)..............................................16, 20

12   *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015)...........................passim

13   *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163 (2000) ..................9

14   *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) .............................11

15   *Elkies v. Johnson & Johnson Servs., Inc.*,
     2018 WL 11223465 (C.D. Cal. Oct. 18, 2018) .............................................15, 16

16   *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011) .......................15

17
18   *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
     326 F.R.D. 592 (N.D. Cal. 2018) ...........................................................2, 13, 16

19   *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330 (1999).........................10

20   *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,
     317 F.R.D. 374 (S.D.N.Y. 2016)...................................................................1, 13

21   *Guido v. L'Oréal, USA, Inc.*, 2013 WL 3353857 (C.D. Cal. July 1, 2013) ............13

22   *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ...........................11

23   *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017) ..................10

24   *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) .........2, 13, 16

25   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)...................12, 13, 14, 15

26   *Hauter v. Zogarts*, 14 Cal. 3d 104 (1975) ............................................................18

27   *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ...................10

28

-vi-

*In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334 (N.D. Cal. 2018).......21

*In re Brazilian Blowout Litig.*, 2011 WL 10962891 (C.D. Cal. Apr. 12, 2011) .....14

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ..........................13

*In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919 (C.D. Cal. 2015) .............................6

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) .................................10

*In re JUUL Labs., Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
    609 F. Supp. 3d 942 (N.D. Cal. 2022)...................................................................15

*In re Live Concert Antitrust Litig.*, 247 F.R.D. 98 (C.D. Cal. 2007) .....................11

*In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015)..............11, 13, 18, 22

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ........................................................9

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    2012 WL 4904412 (C.D. Cal. Sept. 20, 2012)......................................................22

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012) .................................11, 20

*Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) ........................11, 17

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017)........................................19

*Karim v. Hewlett-Packard Co.*, 311 F.R.D. 568 (N.D. Cal. 2015) ........................18

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
    2020 WL 5901116 (C.D. Cal. Sept. 23, 2020).....................................................21

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)......................................9

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)...............................18

*Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011) ...............................................9

*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017) .....................19, 20

*Leyva v. Medline Indus. Inc.*, 726 F.3d 510 (9th Cir. 2013) ..................................19

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) ............................14, 23

*Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011 (9th Cir. 2024).....................20, 21

*Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047 (C.D. Cal. May 6, 2022)........21

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019)..21

*Mary Pickford Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501 (1939) .............................10

*McCrary v. Elations Co., LLC*, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014).......19

-vii-

*McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457 (2006).....................................9

*Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163 (S.D. Cal. May 12, 2016) ........12

*Montera v. Premier Nutrition Corp.*, 111 F.4th 1018 (9th Cir. 2024) ...................18

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) ..........17

*Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854 (9th Cir. 2025)...11, 20

*Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019)............................................19

*Odyssey Wireless, Inc. v. Apple Inc.*,
    2016 WL 7644790 (S.D. Cal. Sept. 14, 2016) ....................................................21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)...............................................................................20

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (1995)...........................................................................................18

*People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509 (1984) ...9

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012)............1, 12

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ...........................12

*Schmitt v. Younique LLC*, 2019 WL 1431906 (C.D. Cal. Jan. 10, 2019)................22

*Sinatro v. Barilla Am., Inc.*, 2024 WL 2750018 (N.D. Cal. May 28, 2024).......2, 17

*Spann v. J.C. Penney Corp.*, 307 F.R.D. 508 (C.D. Cal. 2015) .............................12

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) .............................16

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ....11, 16, 23

*Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).........................23

*Vasquez v. Super. Ct.*, 4 Cal. 3d 800 (1971).......................................................9, 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).....................................12, 13

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010)...........................18

*Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009)......................................20

*Williams v. Gerber Food Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)............9, 15, 16

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)...................22

**Statutes**

Cal. Com. Code § 2313 .............................................................................................18

Cal. Com. Code §§ 2313(1)(a)–(b) ......................................................... 10

California Consumers Legal Remedies Act ("CLRA") ............................ 9

California's Unfair Competition Law ("UCL") ....................................... 8

New York General Business Law ("GBL") ............................................ 10

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed. 2004) ..................................... 10

**Rules**

Fed. R. Civ. P. 23(a)(1) ......................................................................... 12

Fed. R. Civ. P. 23(a)(2) ......................................................................... 12

Fed. R. Civ. P. 23(a)(3) ......................................................................... 13

Fed. R. Civ. P. 23(a)(4) ......................................................................... 13

Fed. R. Civ. P. 23(b)(3) ................................................................... 14, 22

Fed. R. Civ. P. 23(c)(4) ......................................................................... 22

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# I.    INTRODUCTION

This false advertising class action challenges Smucker's uniform representations that its fruit spreads are "natural" and "made with ingredients from natural sources." *See* ECF No. 44 ("FAC"), at ¶¶ 3-4, 21-39. Discovery has confirmed these representations are objectively false. ███████████
█████████████████████████████████████████
█████████████████████████████████████████
Because Smucker's labeling is uniform across the Class and the manufacturing process is undisputed, whether these representations are deceptive presents a common question suitable for classwide resolution.

The question at class certification is not whether Smucker's statements are true (that is for trial), but whether Plaintiffs' claims can be resolved on a classwide basis. They can. Whether the Products are "natural" turns on common, objective evidence, including Smucker's uniform labeling; its testimony, internal records, and expert analysis regarding the industrial manufacture of citric acid; and a common methodology to measure any resulting price premium.

The governing standard is whether Smucker's uniform "natural" representations are likely to mislead a reasonable consumer—an inquiry well suited to classwide resolution. Courts routinely certify food-labeling cases, including "natural" claims, because they present common questions resolved through common proof. *See, e.g.*, *ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1018, 1035–36 (C.D. Cal. 2015) (certifying California and New York classes challenging "natural" labeling); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (certifying class challenging "all natural" iced tea); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 317 F.R.D. 374, 403 (S.D.N.Y. 2016) (certifying New York and California classes challenging "Active Naturals" branding despite artificial ingredients); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,

-1-

326 F.R.D. 592, 606 (N.D. Cal. 2018) (certifying claims challenging "Made From Real Ginger"); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1091 (N.D. Cal. 2018) (certifying claims challenging "healthy," "nutritious," or "wholesome" cereal); *Sinatro v. Barilla Am., Inc.*, 2024 WL 2750018, at *1 (N.D. Cal. May 28, 2024) (certifying class challenging "Italy's #1 Brand of Pasta" despite  ingredients sourced outside Italy); *Jeruchim v. J.M. Smucker Co.*, 2026 WL 178565, at *12, 16 (N.D. Cal. Jan. 22, 2026) (certifying class challenging "healthy" pet food).

Because this case arises from Smucker's uniform labeling, the central questions of deception can be resolved for all class members in a single proceeding using common evidence. Plaintiffs therefore request the Court certify the classes.

## II.    BACKGROUND

The FAC challenges Smucker's uniform front-label representations that the Products are "natural" and "made with ingredients from natural sources." *See* FAC ¶¶ 3–5. Discovery confirms that every Product during the Class Period bore these same representations. *See* Ex. 1 at Resp. No. 1; Ex. 2 (labels).[2] All Class members were therefore exposed to the same misrepresentations. Plaintiffs allege these claims are false because the Products contain artificial citric acid ███████████████████ ████████████████████████████████

Smucker moved to dismiss on April 7, 2025, arguing Plaintiff relied on general industry practices. ECF No. 16. The Court denied the motion in significant part, holding Plaintiffs plausibly alleged a sufficient connection between artificial citric acid manufacturing and Smucker's Products, including that natural extraction is not commercially feasible and that Smucker uses citric acid manufactured using *Aspergillus niger*. ECF No. 27 at 5.

## III.    THE TYPE OF FACTS TO BE PRESENTED AT CLASS TRIAL

### A.    Common Evidence Confirms Artificial Citric Acid in the Products

---

[2] Exhibit references are to the Straub Declaration unless otherwise indicated.

-2-



1

2

3    . *See* Ex. 3 at 53:7–12; 54:5–55:5. Smucker's corporate designee

4   testified that                                                                *Id.* at

5   31:10–14.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23                                     *Id.* at 36:4–11; *id.*, at 71:21–22 ("[P]robably

24   99.99 percent or so of the citric acid received is fermentation-based."). Chemical

25   solvents including *n*-octyl alcohol, synthetic isoparaffinic petroleum hydrocarbons,

26   and tridodecyl amine are used to extract citric acid from *Aspergillus niger*

27   fermentation liquor. *See* 21 C.F.R. § 173.280.

28

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
Plaintiffs' Motion for Class Certification

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



1
2
3
4
5 ECF No. 75
6 at 24:16-17 ("No responsive, non-privileged reply to this email chain exists. If it did,
7 it would have been produced.").

8        The artificial nature of Smucker's citric acid is further underscored by
9 industry practice. Smucker's primary competitor, Welch's,[3] does not use
10 manufactured citric acid in its "Natural" fruit spreads and instead uses lemon juice
11 concentrate, which contains naturally occurring citric acid. *See* Ex. 3 (Schmidt
12 Depo.) at 129:3–12.

13        Plaintiffs have also retained Dr. Kurt Hong, M.D., Ph.D., a physician,
14 nutrition scientist, and food-science expert with extensive experience evaluating
15 food ingredients, sourcing, and manufacturing processes. *See* Hong Decl., ¶¶ 1–9;
16 Ex. F (Hong CV). Based on his education, training, and review of Smucker's
17 sourcing, manufacturing records, testimony, and regulatory materials, Dr. Hong
18 concludes that
19
20                                          . Hong Decl., ¶¶ 11, 54; *see also* 21 CFR
21 184.1033(a) (identifying citric acid can be sourced from natural fruits). Dr. Hong
22 explains that under commonly accepted food-science and regulatory principles, such
23 citric acid is properly characterized as artificially manufactured rather than "natural"
24 or "from natural sources." Hong Decl., ¶¶ 14–17, 40, 43, 51, 53–54.

25        Evidence that the Products' citric acid is artificial is common to the class and

26 ─────────────
27 [3]

28

1    does not vary by consumer or Product.

2        **B.    Common Evidence of Consumer Deception and Materiality**

3        Common evidence also establishes that Smucker's uniform "natural" labeling

4    is likely to deceive reasonable consumers and is material to their purchasing

5    decisions.

6        Plaintiffs have retained Dr. Greg Allenby, a nationally recognized expert in

7    consumer perception, pricing, and quantitative marketing, to evaluate whether

8    Smucker's "natural" representations influence consumer choice and pricing. *See*

9    Allenby Decl. ¶¶ 1–6; Ex. A (CV). Dr. Allenby has designed a conjoint analysis

10   survey, consistent with accepted principles of marketing science, to measure the

11   extent to which the Products' "natural" labeling affects consumer preferences and

12   willingness to pay. *See id*. ¶¶ 15–20. "Marketers and marketing researchers have

13   used conjoint analysis since the early 1970's to determine the values consumers

14   ascribe to specific attributes of multi-attribute products and to understand the

15   features driving product preferences." *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919,

16   1026 (C.D. Cal. 2015) ("*ConAgra*").

17       Dr. Allenby's proposed methodology is consistent with a substantial body of

18   marketing research showing that product labels, and "natural" claims in particular,

19   influence consumer perceptions and purchasing decisions. Allenby Decl. ¶¶ 43–44.

20   Prior studies conducted by organizations such as Consumer Reports demonstrate that

21   consumers actively seek out "natural" claims and that such representations

22   materially influence product choice in competitive environments. *Id.* As Dr. Allenby

23   explains, this established research confirms that consumers treat "natural" claims as

24   meaningful attributes that are traded off against price, making them well-suited for

25   a conjoint analysis to isolate the resulting price premium. *See id.* ¶¶ 50, 52

26       Smucker has confirmed uniform front label "natural" representations across

27   all Products. *See* Ex. 1 at No. 1; *see also* Ex. 3 (Schmidt Depo.) at 40:14–20; Ex. 2.

28

-6-

1  Throughout the class period, the Products' front labels consistently stated "Natural"

2  and "made with ingredients **FROM NATURAL SOURCES**." *See* Exs. 1-2; Ex. 3

3  (Schmidt Depo.) at 39:16-19. Reinforcing those front-label claims, the back label

4  states, "Made with real fruit" and "NO artificial flavors or colors."  Ex. 2.[4]



its Simply Fruit product which *does not* contain citric acid. *See* Ex.
10;   https://www.smuckers.com/fruit-spreads/simply-fruit/simply-fruit-strawberry-
fruit-spread.

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION



This common evidence arises from Smucker's uniform conduct and is capable of evaluation on a classwide basis.

### C.    Plaintiffs' Purchases and Reliance

Plaintiffs purchased the Products in California and New York within the Class Period. *See* Ringler Decl., ¶ 5; Robles Decl., ¶ 5; Smith Decl., ¶ 5; Rabinowitz Decl., ¶ 5, *filed concurrently herewith*. When purchasing the Products, Plaintiffs read and relied on the labels, including the Products' front-label "natural" representations. *See* Ringler Decl., ¶ 6; Robles Decl., ¶ 6; Smith Decl., ¶ 6; Rabinowitz Decl., ¶ 6. Plaintiffs would not have purchased the Products, or would not have paid as much as they had, if they had known that the Products contained an artificial ingredient. *See* Ringler Decl., ¶ 7; Robles Decl., ¶ 7; Smith Decl., ¶ 7; Rabinowitz Decl., ¶ 7.

### IV.    THE CLAIMS PLAINTIFFS SEEK TO CERTIFY

### A.    The California UCL Claim

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. The UCL is "sweeping"

in scope and grants courts broad equitable authority to remedy violations. *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011).[5] Each prong—unlawful, unfair, and fraudulent—is separately actionable. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). The statute imposes strict liability for violations. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181 (2000).

The "unlawful" prong borrows violations of other laws, including the CLRA, and treats them as *per se* UCL violations. *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006). The "unfair" prong prohibits business practices that offend established public policy or are immoral, unethical, oppressive, or substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984). False advertising has no legitimate utility. *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971).

To state a UCL claim, Plaintiffs need only show that members of the public are likely to be deceived, judged under an objective "reasonable consumer" standard. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *Williams v. Gerber Food Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The UCL focuses on the defendant's conduct, not individual damages. *Tobacco II*, 46 Cal. 4th at 312.

The UCL also prohibits "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Advertising broadly includes express or implied statements made in connection with the sale of goods, including statements and pictures on product labels. *Williams*, 552 F.3d at 939 n.3.

## B. The California CLRA Claim

The California Consumers Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. A defendant is liable under the CLRA if it advertises or represents an aspect of a product which the product lacks. Cal. Civ. Code §§ 1770(a)(5), (7), (9) and (16).

---

[5] Unless noted, internal citations, brackets, and quotations are omitted.

1  The statute applies to violations occurring "in a transaction intended to result or that
2  results in the sale or lease of goods or services." Cal. Civ. Code § 1770(a).

3          The UCL and CLRA are to be "liberally construed and applied" to promote
4  their underlying purposes of consumer protection, and the same "reasonable
5  consumer" standard applies to claims under both. *Herron v. Best Buy Co. Inc.*, 924
6  F. Supp. 2d 1161, 1172 (E.D. Cal. 2013) (citing *Colgan v. Leatherman Tool Grp.,*
7  *Inc.*, 135 Cal. App. 4th 663, 682 (2006)). In determining whether a statement is
8  misleading, the primary evidence is the advertising itself. *Colgan*, 135 Cal. App. 4th
9  at 679.

10         **C.    The California Warranty Claims**

11         A warranty is a seller's guarantee that a product will have specified
12  characteristics, placing the risk of nonconformity on the seller. *See Mary Pickford*
13  *Co. v. Bayly Bros., Inc.*, 12 Cal. 2d 501, 520 (1939). A breach of warranty claim
14  requires: (1) an affirmation of fact, promise, or description by the seller; (2) that the
15  statement formed part of the "basis of the bargain"; and (3) a breach. *ConAgra*, 90
16  F. Supp. 3d at 984; *see also* Cal. Com. Code §§ 2313(1)(a)–(b). Warranties are
17  "conclusively presumed to be material." BLACK'S LAW DICTIONARY (8th ed.
18  2004), at 1618. "[A] claim under California consumer protection statutes is sufficient
19  to state a claim for express warranty." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d
20  1052, 1095 (N.D. Cal. 2017). An implied warranty is likewise breached when goods
21  fail to conform to label promises. *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1118
22  (S.D. Cal. 2011); ECF No. 27 at 11–12.

23         **D.    The New York GBL Sections 349 and 350 Claims**

24         Section 349 of New York General Business Law ("GBL") broadly prohibits
25  "[d]eceptive acts or practices in the conduct of any business, trade or commerce."
26  GBL § 349(a); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 343 (1999).
27  Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or

28

commerce." The analysis under both provisions is the same, and where all class members are exposed to the same challenged representation, deception presents a common question capable of classwide resolution. *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (certifying §§ 349 and 350 claims based on uniform labeling); *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014) (same, despite differing purchase motivations); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012) (same re: UCL, CLRA, and GBL claims). Section 349 provides recovery of actual damages or $50 per unit sold, whichever is greater. GBL § 349(h); *see also* GBL 350-e (actual damages or $500).

## V.    THE CLASSES SHOULD BE CERTIFIED

Consumer protection claims are ideal for class certification. *See*, *e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Vasquez*, 4 Cal. 3d at 808; *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) ("[D]istrict courts in California routinely certify consumer class actions"); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 559 (S.D. Cal. 2012) (certifying UCL and CLRA false advertising claims); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282, 289 (C.D. Cal. 2011) (certifying UCL and CLRA yogurt false advertising claims); *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 378–79 (N.D. Cal. 2010) (same).

"A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 863 (9th Cir. 2025). Class treatment is particularly appropriate where "the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct." *Vasquez*, 4 Cal. 3d at 808.

The court "is bound to take the substantive allegations of the complaint as true[.]" *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 107 (C.D. Cal. 2007)

-11-

1    (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975)). California "has
2    a public policy which encourages the use of the class action device." *Sav-On Drug*
3    *Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004). At class certification, the court
4    makes no findings of fact or conclusions on plaintiffs' claims. *Spann v. J.C. Penney*
5    *Corp.*, 307 F.R.D. 508, 515 (C.D. Cal. 2015). Consequently, the evidence considered
6    need not be admissible at trial. *Id*.

       **A.    The Requirements of Rule 23(a) Are Satisfied**

             **1.    *Numerosity***

9        Rule 23(a)(1) is satisfied if "the class is so numerous that joinder of all
10   members is impracticable." Here, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11   ▮▮▮▮▮. *See* Ex. 18. Numerosity is satisfied. *See Chavez*, 268 F.R.D. at 377
12   (mass-market purchases satisfied numerosity).

             **2.    *Commonality***

14       Rule 23(a)(2) requires "questions of law or fact common to the class." This
15   requirement is satisfied when class members' claims depend on a common
16   contention whose truth or falsity "will resolve an issue that is central to the validity
17   of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.
18   338, 350 (2011) ("*Dukes*"). "[E]ven a single common question will do." *Id*. at 359.
19   Commonality exists where claims share a "common core of salient facts" or common
20   legal issues, even if factual circumstances vary among class members. *Hanlon v.*
21   *Chrysler Corp.*, 150 F.3d 1011, 1019–20 (9th Cir. 1998). The burden to establish
22   commonality is "minimal." *Ries*, 287 F.R.D. at 537 (quoting *Hanlon*, 150 F.3d at
23   1019–20).

24       Here, the class consists of consumers who purchased Products uniformly
25   labeled with the "natural" representations. *See* Exs. 1-2. The gravamen of the class
26   claims is that Smucker's Products do not conform to those representations because
27   they contain manufactured citric acid, an artificial ingredient. *See* FAC ¶ 21; Hong

Decl., ¶ 54. This common contention is "capable of classwide resolution," *Dukes*,
564 U.S. at 350, because Smucker's liability turns on the same questions for all class
members. Additional common questions include whether Smucker represented that
the Products are "natural," whether those representations are material to consumers,
and whether the representations are likely to mislead a reasonable consumer.
Because the "natural" claim is either true or false for every jar produced, the core
liability question is a binary one that can—and should—be resolved in a single
stroke for the classes.

Commonality is readily met in deceptive advertising cases like this one. *See
Conagra*, 90 F. Supp. 3d at 981–82 (uniform food labeling and likelihood of
deception resolved with common evidence); *Spann*, 307 F.R.D. at 518 (uniform
advertising presented common questions of falsity, deception, materiality, and
damages); *Guido v. L'Oréal, USA, Inc.*, 2013 WL 3353857, at *5 (C.D. Cal. July 1,
2013) (uniform packaging presented common questions resolvable "in one stroke");
*In re Scotts*, 304 F.R.D. at 409 (materiality is a common question under an objective
standard); *Goldemberg*, 317 F.R.D. at 389–90 ("[C]ommon questions predominate
over individual issues under New York law with regard to the deceptive quality of a
particular product's inclusion of the Active Naturals trademark in its packaging.");
*Fitzhenry-Russell*, 326 F.R.D. at 612 (certifying claims challenging "Made From
Real Ginger" labeling based on uniform representations); *Hadley*, 324 F. Supp. 3d
at 1091 (certifying claims challenging "healthy," "nutritious," and "wholesome"
cereal labeling).

### 3.    *Typicality*

Rule 23(a)(3) requires that the class representatives' claims be typical of those
of the class, meaning they arise from the same course of conduct and are based on
the same legal theory. *Hanlon*, 150 F.3d at 1020. Typicality does not require

-13-

1    identical claims, only that they be reasonably coextensive. *Id.*

2        Typicality is satisfied because Plaintiffs and class members were exposed to

3    the same "natural" labeling and suffered the same alleged injury—paying a price

4    premium for Products containing a non-natural ingredient. *See* Ex. 2; *see also*

5    Ringler Decl., ¶¶ 5–7; Robles Decl., ¶ 5–7; Smith Decl., ¶ 5–7; Rabinowitz Decl., ¶

6    5–7; *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) (typicality

7    satisfied where plaintiffs purchased the same or similar products as the class).

8        **4.**    ***Adequacy***

9        Rule 23(a)(4) requires that "the representative parties will fairly and

10   adequately protect the interests of the class." Adequacy turns on whether the named

11   plaintiffs and their counsel have conflicts with the class and whether they will

12   prosecute the action vigorously. *Hanlon*, 150 F.3d at 1020.

13       Plaintiffs satisfy these requirements. They have standing, have no conflicts

14   with other class members, understand their responsibilities as class representatives,

15   and have prosecuted and will continue to prosecute this action vigorously on behalf

16   of the class. *See* Ringler Decl., ¶¶ 7–10; Robles Decl., ¶¶ 7–10; Smith Decl., ¶¶ 7–

17   10; Rabinowitz Decl., ¶¶ 7–10; *In re Brazilian Blowout Litig.*, 2011 WL 10962891,

18   at *5 (C.D. Cal. Apr. 12, 2011) (adequacy satisfied where plaintiffs declared no

19   conflicts and intent to vigorously prosecute claims).

20       Like absent class members, Plaintiffs purchased the Products bearing the

21   challenged "natural" representations, paid a price premium as a result, and seek relief

22   equally applicable to the entire Class. Ringler Decl., ¶¶ 7, 10; Robles Decl., ¶¶ 7, 10;

23   Smith Decl., ¶¶ 7, 10; Rabinowitz Decl., ¶¶ 7, 10. Plaintiffs are familiar with the

24   claims and have remained informed about the case. *See* Ringler Decl., ¶¶ 8–9; Robles

25   Decl., ¶¶ 8–9; Smith Decl., ¶¶ 8–9; Rabinowitz Decl., ¶¶ 8–9.

26       Plaintiffs' counsel are also adequate. Crosner Legal, P.C. has substantial

27   experience litigating consumer protection and false advertising class actions, has no

28

-14-

conflicts, and has the resources necessary to prosecute this action vigorously on behalf of the Class. Straub Decl., ¶¶ 4–12; Ex. 19 (Firm Resume). The adequacy requirement is satisfied.

### B. The Classes Should Be Certified Under Rule 23(b)(3)

#### 1. *Common Issues Predominate*

"Predominance is a test readily met in certain cases alleging consumer [] fraud . . ." *Amchem*, 521 U.S. at 625. "When common questions present a significant aspect of the case and they can be resolved for all members of the Class in a single adjudication," class treatment is appropriate. *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) requires only that common issues predominate—not that they be exclusive or unanimous.

#### a. Smucker's Liability Will be Adjudicated Pursuant to Objective Standards, Using Common Evidence

In assessing predominance, courts begin with the elements of the underlying causes of action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

##### i. *California Consumer Protection Claims*

As set forth above in Section IV, Plaintiffs' UCL and CLRA claims are governed by an objective "reasonable consumer" standard. *Williams*, 552 F.3d at 938. Under this standard, "actual falsehood, the perpetrator's knowledge of falsity, and reliance on the false statements are not required to show a violation of Section 17200." *Elkies v. Johnson & Johnson Servs., Inc.*, 2018 WL 11223465, at *8 (C.D. Cal. Oct. 18, 2018).[6] Similarly, under the CLRA, "if a material misrepresentation

---

[6] "[A]s long as named plaintiffs are able to demonstrate reliance . . . that caused them injury, a presumption of reliance arises on behalf of all class members." *In re JUUL Labs., Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 986–87 (N.D. Cal. 2022). Here, Plaintiffs testified they read and relied on the "natural" representations. *See* Ringler Decl., ¶ 6; Robles Decl., ¶ 6; Smith Decl., ¶ 6; Rabinowitz Decl., ¶ 6.

-15-

has been made to the entire class, an inference of reliance arises as to the class." *Id.*

> Each statute allows plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material. The standard does not require that class members have a uniform understanding of the meaning of the challenged representation.

*Fitzhenry-Russell*, 326 F.R.D. at 612; *see also Elkies*, 2018 WL 11223465, at *8 (collecting cases and observing reliance is "inferred from the misrepresentation of a material fact" and no requirement "that class members have a uniform understanding of the meaning of the challenged representation").

In *Bradach v. Pharmavite, LLC*, 735 F. App'x 251 (9th Cir. 2018), the Ninth Circuit reversed the denial of class certification in a false labeling action because "the district court's conclusion that it would need to inquire into the motives of each individual class member was premised on an error of law." *Id.* at 255. For this reason, the Ninth Circuit recognized "CLRA and UCL claims are 'ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'" *Id.* (quoting *Tait*, 289 F.R.D. at 480). Thus, any dispute about "consumers having a variety of reasons for purchasing" the Products is "a merits dispute as to materiality" which can be resolved on a classwide basis. *Hadley.*, 324 F. Supp. 3d at 1117.

For materiality, a representation is material if a reasonable consumer "would attach importance" to it. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). And whether a statement is material, is generally a question of fact, making it particularly well-suited for classwide resolution. *See Williams*, 552 F.3d at 938; *Johnson*, 275 F.R.D. at 287 ("materiality is generally a question of fact for the jury"). As such, "actual reliance, or causation, is inferred from the misrepresentation of a material fact." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 229 (2013).

1    Smucker's "Natural" and "made with ingredients **FROM NATURAL**
2    **SOURCES**" representations are prominently and conspicuously displayed in large,
3    bolded font on the Products' front labels and are reinforced by the back-label
4    statements "Made with real fruit" and "NO artificial flavors or colors." *See* Ex. 2.
5    This alone is a common issue that predominates. *See Johnson*, 275 F.R.D. at 289
6    ("[T]he common issue that predominates is whether General Mills' packaging and
7    marketing communicated a persistent and material message that YoPlus promotes
8    digestive health.").

9    ████████████████████████████████████████████
10   ████████████████████████████████████████████
11   ███████████████████████████████  Courts routinely rely on a
12   defendant's internal marketing and consumer research to assess deception and
13   materiality at the class certification stage. *Mullins v. Premier Nutrition Corp.*, 178
14   F. Supp. 3d 867, 879–80 (N.D. Cal. 2016); *Sinatro*, 2024 WL 2750018, at *8.

15   Consistent with this evidence, Plaintiffs' expert, Dr. Greg Allenby, explains
16   established marketing research, including widely cited third-party consumer
17   surveys, demonstrate that "natural" claims on food labels are meaningful to
18   consumers and influence purchasing decisions. Allenby Decl., ¶¶ 43–52. Courts
19   have relied on similar empirical research to confirm that materiality may be assessed
20   using common, objective evidence rather than individualized inquiry. *See, e.g.*,
21   *ConAgra*, 90 F. Supp. 3d at 981–82.

22   The named Plaintiffs' testimony is consistent with this common evidence, as
23   each purchased the Products in reliance on the "natural" representations. *See* Ringler
24   Decl., ¶ 6; Robles Decl., ¶ 6; Smith Decl., ¶ 6; Rabinowitz Decl., ¶ 6. Taken together,
25   this evidence demonstrates that whether Smucker's "natural" representations are
26   material is a question capable of classwide determination under the applicable
27   objective standard. The Court should therefore find that common issues
28

-17-

1    predominate.

2                    ii.  _New York Consumer Protection Claims_

3             The same predominance analysis applies under New York's GBL, which

4    prohibits deceptive acts and applies an objective reasonable-consumer standard.

5    _Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A._, 85 N.Y.2d

6    20, 26 (1995); _supra_, § IV.D. Reliance is also not an element of a GBL claim. _In re_

7    _Scotts_, 304 F.R.D. at 409; _Montera v. Premier Nutrition Corp._, 111 F.4th 1018, 1033

8    (9th Cir. 2024) ("[R]eliance is not required . . . under GBL §§ 349 and 350.") (citing

9    _Koch v. Acker, Merrall & Condit Co._, 18 N.Y.3d 940, 941 (2012)). Accordingly,

10   common issues predominate as to the New York class.

11                   iii. _California Warranty Claims_

12            Plaintiffs allege Smucker made the same warranty to every class member—

13   that the Products are "natural" and "made with ingredients from natural sources."

14   _See_ Ex. 2 (labels). Resolution of the warranty claims therefore turns on common

15   questions, including whether Smucker's uniform label statements constitute

16   warranties and whether the Products conformed to those promises.

17            Reliance is not an element of an express warranty claim under California law.

18   _See Karim v. Hewlett-Packard Co._, 311 F.R.D. 568, 573 (N.D. Cal. 2015); _see also_

19   _ConAgra_, 90 F. Supp. 3d at 984 ("Proof of reliance on specific promises or

20   representations is not required"); _Hauter v. Zogarts_, 14 Cal. 3d 104, 115 (1975).

21   "Because reliance is not an element of express warranty claims under California law,

22   common questions predominate and class action treatment is appropriate." _In re_

23   _Scotts_, 304 F.R.D. at 411. Moreover, seller affirmations become part of the basis of

24   the bargain "unless good reason is shown to the contrary." _Karim_, 311 F.R.D. at 574

25   (quoting Cal. Com. Code § 2313, comment 8); _see also Weinstat v. Dentsply Int'l,_

26   _Inc._, 180 Cal. App. 4th 1213, 1229 (2010).

27            Accordingly, common questions predominate on the class's breach of

28                                    -18-

warranty claims. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) (certifying breach of warranty claims based on uniform advertising statements); *ConAgra*, 90 F. Supp. 3d at 985 (misrepresentation and warranty issues were common to the class); *Allen v. Similasan Corp.*, 306 F.R.D. 635, 648-49 (S.D. Cal. 2015) (whether label statements are warranties is subject to common proof ).

### b. Relief Can be Determined on a Classwide Basis

"Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183 (9th Cir. 2017), *rev'd on other grounds by Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019).

Individualized damages issues do not defeat class certification. "[T]he amount of damages, even if it is an individual question, does not defeat class certification." *Spann*, 307 F.R.D. at 31 (C.D. Cal. 2015) (quoting *McCrary v. Elations Co., LLC*, 2014 WL 1779243, at *15 (C.D. Cal. Jan. 13, 2014)). The Ninth Circuit has held "individualized damages cannot, by itself, defeat class certification." *Leyva v. Medline Indus. Inc.,* 726 F.3d 510, 514 (9th Cir. 2013). So long as class members were harmed by the same course of conduct, variations in the amount of damages do not preclude certification. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022) (en banc).

-19-

To satisfy predominance, Plaintiffs need only present a damages model that is consistent with their theory of liability. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiffs are not required to "actually prove that classwide damages exist in order to obtain class certification." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1025 (9th Cir. 2024). Rather, class treatment is appropriate where plaintiffs show "damages *could* be calculated on a classwide basis, even where such calculations have not yet been performed." *Id.* (emphasis original). "'[P]recise data is unnecessary for class certification' because 'the question is only whether plaintiff has presented a workable method.'" *Id.* (quoting *Lambert*, 870 F.3d at 1184).

Here, damages can be calculated on a classwide basis by showing the price premium attributable to Smucker's "natural" representations. *See Johns*, 280 F.R.D. at 559. Thus, "damages for plaintiff's CLRA claim 'can be calculated by subtracting the value of the product without the claimed [] benefit, a uniform value to be determined based on the evidence presented at trial, from the price the particular class member is able to prove he or she paid.'" *Id.* (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009)).

Plaintiffs' expert, Dr. Greg Allenby, has developed a choice-based conjoint analysis to measure the price premium attributable to the Products' "natural" representations. Allenby Decl., ¶¶ 15–18, 40–42; *see also supra* § III.B. Conjoint analysis is a well-established method that isolates the value consumers place on specific product attributes by analyzing tradeoffs among features. Allenby Decl., ¶¶ 19–26. Dr. Allenby's analysis will assess how Smucker's "natural" labeling contributed to the price consumers paid, consistent with Plaintiffs' overpayment theory.[7] *Id.* ¶¶ 40–41; *see also Noohi*, 146 F.4th at 861 (certifying class where expert

---

[7] Once the price premium is estimated, Plaintiffs' economic expert, Dr. Baum, will calculate aggregate damages by applying that price premium to real-world unit sales of the Products. Specifically, total overpayment damages will be calculated by

-20-

used "quantitative surveying and market analysis to measure the economic value to consumers of the 'oil-free' statement."). Dr. Allenby has already charted the path to obtain the necessary market data and has validated his methodology through pre-testing. Allenby Decl., ¶¶ 32–35, 41 n.27. This constitutes a "workable method" for calculating classwide damages at the certification stage. *See Lytle*, 114 F.4th at 1025.

"[C]onjoint analysis is a well-accepted technique that is frequently used to establish damages in CLRA actions." *Lytle*, 114 F.4th at 1033. Numerous classes have been certified where plaintiffs proposed conjoint analysis to value specific product attributes and measure overpayment. *See, e.g.*, *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *4 (E.D. Cal. Mar. 29, 2019); *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116, at *6 (C.D. Cal. Sept. 23, 2020); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *17 (C.D. Cal. May 6, 2022); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 370 (N.D. Cal. 2018); *Odyssey Wireless, Inc. v. Apple Inc.*, 2016 WL 7644790, at *9 (S.D. Cal. Sept. 14, 2016).

Plaintiffs' economic expert, Dr. Charles Baum, is a Ph.D. economist and university professor with extensive experience teaching and applying econometric methods to calculate damages using real-world sales data. *See* Baum Decl. at 1; Ex. A (CV). Dr. Baum proposes three classwide methodologies—each independently capable of calculating classwide overpayment damages and each consistent with Plaintiffs' liability theory that consumers overpaid due to Smucker's "natural" representations. *See id.* at 51–53. These methodologies include applying a price premium estimated through conjoint analysis to Smucker's real-world sales data, as well as alternative econometric approaches, such as hedonic regression, using transaction-level pricing and sales data. *Id.* Dr. Baum's proposals are designed to

---

multiplying total retail sales by the estimated price-premium percentage. Baum Decl. at 52.

-21-

isolate the price premium attributable to the "natural" labeling including controls for brand loyalty, flavor, size, packaging format (glass jar, plastic jar, squeeze), variations of demand and prices over time, seasonal patterns, product features and characteristics, locations, and consumer demographics. Baum Decl. at 18, 21, 33–34, 36–41. Each methodology is designed to measure only the overpayment attributable to the challenged "natural" representations. *Id*. at 51–52.

Courts recognize that statistical and econometric models such as hedonic regression are appropriate and reliable tools for calculating classwide damages. *See e.g.*, *ConAgra*, 90 F. Supp. 3d 919, 947-48 (C.D. Cal. 2015) (certifying class where expert proposed hedonic regression to calculate price premium); *Schmitt v. Younique LLC*, 2019 WL 1431906, at *10 (C.D. Cal. Jan. 10, 2019) (holding proffered "hedonic regression" methodology was a "plausible theory of classwide recovery"); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2012 WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012) (holding "hedonic regression" is sufficiently reliable and has "been tested, and [] part of peer-reviewed studies); *In re Scotts*, 304 F.R.D. at 413 (certifying class with proposed hedonic regression damages model).

Accordingly, Plaintiffs have demonstrated that damages can be determined on a classwide basis using common evidence and workable methodologies consistent with their theory of liability.

### 2.    *Superiority*

Rule 23(b)(3) requires that a class action be superior to other available methods of adjudication. The inquiry focuses on efficiency and whether class treatment will fairly resolve the controversy. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1023.

Superiority is satisfied here. Plaintiffs' claims arise from Smucker's uniform "natural" representations and are governed by an objective reasonable-consumer

-22-

1  standard, making a single proceeding far more efficient than numerous individual

2  suits. Given the small individual damages ███████████████████████ individual

3  litigation is not economically feasible.[8] *See Tait*, 289 F.R.D. at 486. There is also no

4  evidence of competing litigation. A class action is therefore the superior—and only

5  realistic—method of adjudication.

6      **C.**    **The Requirements of Rule 23(c)(4) Are Satisfied**

7      In the alternative, or in addition to certification under (b)(3), Plaintiffs request

8  certification under Rule 23(c)(4). The Ninth Circuit endorses the use of issue classes.

9  *ConAgra*, 90 F. Supp. 3d at 1035 (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d

10  1227, 1234 (9th Cir. 1996)). Courts regularly certify Rule 23(c)(4) classes for

11  resolving common liability issues. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244

12  (N.D. Cal. 2014).

13            **VI.**    **CONCLUSION**

14      For the foregoing reasons, Plaintiffs request the Court grant their motion for

15  class certification, appoint Plaintiffs as representatives of the classes, and appoint

16  Crosner Legal, P.C. as class counsel.

17                          Respectfully submitted,

18     Dated: February 25, 2026          CROSNER LEGAL, P.C.

19

20                          By: */s/ Craig W. Straub*

21

22

23

24

25

26

27

28    [8] *See* Ex. 17.

                          -23-

      *Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E

         PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Craig W. Straub (SBN 249032)
*craig@crosnerlegal.com*
Lilach H. Klein (SBN 323202)
*lilach@crosnerlegal.com*
Michael T. Houchin (SBN 305541)
*mhouchin@crosnerlegal.com*
Zachary M. Crosner (SBN 272295)
*zach@crosnerlegal.com*
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (866) 276-7637
Fax: (310) 510-6429

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief contains 6,973 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 25, 2026        CROSNER LEGAL, P.C.

By: */s/ Craig W. Straub*

*Ringler, et al. v. The J.M. Smucker Co.*, Case No. 2:25-cv-01138-AH-E
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION