# EXHIBIT A

Page 1

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4       ADINA RINGLER, KRISTA ROBLES,  )  Case No. 2:25-cv-01138-AH-E

        JAY SMITH, and JANA             )

5       RABINOWITZ, individually and    )

        on behalf of all others         )

6       similarly situated,             )

                                        )

7                 Plaintiffs,           )

                                        )

8            vs.                        )

                                        )

9       THE J.M. SMUCKER COMPANY,       )

                                        )

10                Defendant.            )

        _____)

11

12

13

14              VIDEO DEPOSITION OF ADINA RINGLER

15                   Los Angeles, California

16                Thursday, February 5, 2026

17                         Volume I

18

19

20

21

22      Reported by:

        Elaine Smith, RPR, RMR

23      CSR No. 5421

24      Job No. FLA 7878592

25      PAGES 1 - 299

Page 2

```
 1                UNITED STATES DISTRICT COURT
 2                CENTRAL DISTRICT OF CALIFORNIA
 3
 4    ADINA RINGLER, KRISTA ROBLES,  )  Case No. 2:25-cv-01138-AH-E
      JAY SMITH, and JANA            )
 5    RABINOWITZ, individually and   )
      on behalf of all others        )
 6    similarly situated,            )
                                     )
 7              Plaintiffs,          )
                                     )
 8        vs.                        )
                                     )
 9    THE J.M. SMUCKER COMPANY,      )
                                     )
10              Defendant.           )
      _____)
11
12
13
14         Video Deposition of ADINA RINGLER, Volume I,
15    taken on behalf of Defendant, by videoconference,
16    all parties, the witness, videographer, and court
17    reporter attending remotely, beginning at 10:33 a.m.
18    and ending at 6:21 p.m. on Thursday, February 5,
19    2026, before Elaine Smith, RPR, RMR, Certified
20    Shorthand Reporter No. 5421.
21
22
23
24
25
```

Page 59

```
 1            THE WITNESS:  I --
 2            MR. STRAUB:  Objection.  Vague.
 3    BY MR. ROTHSTEIN:
 4       Q    You can answer.
 5       A    I saw --
 6            MR. STRAUB:  If you understand what --
 7            MR. ROTHSTEIN:  You don't have to explain it
 8    to her.  Just go ahead.  You just interrupted her.
 9    BY MR. ROTHSTEIN:
10       Q    Please go ahead.
11       A    I -- I lost my train of thought.  Could you
12    please repeat the question.
13       Q    I just said what happened next?
14       A    After speaking with my attorneys?
15       Q    Yeah.
16       A    Then I signed on to be involved in this
17    case.
18       Q    Okay.  And then what happened?
19       A    Then I was involved with a discovery
20    process, with learning about the case, with
21    submitting evidence and my personal experience with
22    this product, and I've been in touch with them ever
23    since.
24       Q    Did you get involved in preparing a
25    complaint?
```

Page 61

1              MR. STRAUB:  Object.

2     BY MR. ROTHSTEIN:

3         Q    You did see it before it was filed?

4         A    The attorneys have been great with

5     communicating all stages of this process with me.

6         Q    Okay.  Not my question.  Did you see the

7     complaint prior to it being filed?

8         A    Yes.

9         Q    Okay.  And how was it sent to you?

10        A    I mean, the documents that I signed I get a

11    copy of through the DocuSign or whatever service we

12    use.

13        Q    I didn't mention anyone signing any

14    documents.

15        A    Uh-huh.

16        Q    How was the complaint sent to you?

17        A    Electronically.

18        Q    Was it sent in a draft format?

19        A    I don't recall.

20        Q    Okay.  And do you know if at the time that

21    it was sent to you, if it was, in fact, filed then or

22    not?

23        A    I don't know.

24        Q    Okay.  Did you provide any commentary or

25    input into the content of the complaint before it was

Page 62

1     filed?

2         A     I spoke with my attorneys, gave them my

3     experience, as a consumer who purchased this product

4     was relying on the "natural" labeling, and I reviewed

5     everything before it was filed, yes.

6         Q     Okay.  And did you provide any commentary

7     about the content of the complaint?

8         A     I did not --

9               MR. STRAUB:  Objection.  Asked and answered.

10    BY MR. ROTHSTEIN:

11        Q     Go ahead.  You can answer.

12        A     I didn't have any commentary.

13        Q     And do you recall whether the complaint was

14    drafted specific to your experiences with the

15    product, or was it a general complaint that had been

16    used and reused in other circumstances in other

17    cases?

18              MR. STRAUB:  Objection.  Vague.

19    BY MR. ROTHSTEIN:

20        Q     Just tell me what you understood.

21        A     I understood it to be my experience with the

22    product.

23        Q     Okay.

24        A     And as a -- as a typical consumer.

25              MR. ROTHSTEIN:  Okay.  We can take a break

Page 78

1          MR. STRAUB:  Objection.  So if it's any
2    communications, it's going to be privileged, and you
3    shouldn't answer it.
4    BY MR. ROTHSTEIN:
5        Q    Well, I just want to know why, just
6    generally.  I'm not asking you what the content of
7    the communication is.  I just want to know why.
8        A    Just copies of whatever documents are
9    submitted and updates on where the case is at.
10       Q    Okay.  Have you ever had any disagreements
11   with your attorneys?
12       A    No.
13       Q    Do you have any control over any decisions
14   that are made in connection with this lawsuit?
15       A    Yes.
16       Q    And what is that?
17       A    I work with my attorneys.  I -- I hired
18   them.  I'm -- I'm working with them, yeah.
19       Q    Have you ever given them any input that they
20   have utilized in connection with this case?
21       A    I verify that everything that's submitted is
22   an accurate reflection of my experience.
23       Q    Okay.  I'm going to talk about your social
24   media usage.  Are you active on social media?
25       A    No.

Page 106

1    made from natural sources."  Do you understand that?

2        A    Yes.

3        Q    Okay.  And is that why you believe the

4    representations are false?

5              MR. STRAUB:  Objection.  Vague.

6              THE WITNESS:  I believe that citric acid

7    used in this product is not of natural sources,

8    correct.

9    BY MR. ROTHSTEIN:

10       Q    So let me just make sure I understand this.

11   In paragraph 3, you talk about images of fresh fruit;

12   right?

13       A    Yes.

14       Q    You talk about the word "natural"; is that

15   right?

16       A    Yes.

17       Q    And you talk about the phrase "made with

18   ingredients from natural sources"; is that right?

19       A    Yes.

20       Q    Okay.  Among all of that, what do you claim

21   is false?

22              MR. STRAUB:  Objection.  Ambiguous.

23   BY MR. ROTHSTEIN:

24       Q    Go ahead.

25       A    What I claim is false is one of the

Page 107

1    ingredients on the ingredient list is not made of
2    natural sources.
3        Q    Okay.  So you are saying that one of the
4    ingredients is not made from a natural source, and
5    that's your complaint?
6        A    Yes.
7        Q    Okay.  Anything else?
8        A    My complaint is that the label is misleading
9    because that one ingredient is not made from natural
10   sources.
11       Q    Okay.  Do you believe that Smucker Natural
12   Fruit Spread is a premium product?
13             MR. STRAUB:  Objection.  Ambiguous.
14             THE WITNESS:  I don't know.
15   BY MR. ROTHSTEIN:
16       Q    I didn't quite understand that.  Was the
17   answer "I don't know" or "I don't, no"?
18       A    I don't know.
19       Q    Do you -- do -- just so that I'm clear, I
20   just want to make sure I have an understanding of
21   what you said because I can read the answer you gave
22   in two different ways.
23       A    Sure.
24       Q    Do you believe that Smucker Natural Fruit
25   Spread is a natural -- or sorry -- is a premium

Page 109

1    BY MR. ROTHSTEIN:

2         Q    Go ahead.  Go ahead.  Answer the question.

3         A    My experience is that this product, in a

4    sense, is a step up from your normal products because

5    it does -- it does claim to be natural.  Whether that

6    makes it premium or not, I don't have a definition of

7    the word "premium," so I can't say for certain.

8         Q    Okay.

9         A    But it's probably a step up from basic

10   Smucker's products, if --

11        Q    Okay.

12        A    -- that helps.  I don't know.

13        Q    Okay.  So you're saying it's a basic step up

14   from -- or sorry.  You said that it's a step up from

15   basic --

16        A    Basic Smucker's products, yeah.

17        Q    Okay.

18        A    I would say that's -- in my experience, in

19   my understanding of what this product is.

20        Q    Okay.  All right.  Fair enough.  I'd like

21   you to scroll down to page -- paragraph 11, please.

22        A    Okay.  Hold on.  Paragraph 11.  Okay.

23        Q    Do you see paragraph 11?

24        A    Yes.

25        Q    It says, "Plaintiff Adina Ringler purchased

Page 110

1      the Smucker's Natural Triple Berry Fruit Spread

2      product from a Smart & Final store in Northridge,

3      California in or around May 2024."  Did I read that

4      correctly?

5          A    Yes.

6          Q    It continues, "When purchasing the Product,

7      Plaintiff Ringler did not expect that the Product's

8      front label 'natural' and 'made with ingredients from

9      natural sources' representations were false."  Did I

10     read that correctly?

11         A    Yes, you read it correctly.

12         Q    All right.  And it concludes with,

13     "Plaintiff Ringler did not expect Defendant to

14     publicly place deceptive statements about the

15     contents of its Products on the front label of the

16     Product."  Did I read that correctly?

17         A    Yes.

18         Q    Okay.  And does that accurately describe

19     your views as it relates to this case?

20         A    Yes.

21         Q    Okay.  All right.  Let me ask you, if you

22     saw the product in the store and had it not contained

23     the word "natural," would you have purchased it?

24              MR. STRAUB:  Objection.  Calls for

25     speculation.  Incomplete hypothetical.

Page 111

BY MR. ROTHSTEIN:

Q    Go ahead.  You can answer.

A    The word "natural" is very important to me,
and it's why I selected the product.

Q    Okay.  What other products do you purchase
that have the word "natural" on it?

A    I don't recall offhand.

Q    Do you have any on mind?

A    I don't.

Q    Do you remember any?

MR. STRAUB:  Objection.  This is
argumentative.

MR. ROTHSTEIN:  No, it's not argumentative.

BY MR. ROTHSTEIN:

Q    Please answer the question.

A    The only thing that popped in my mind was
laundry detergent.

Q    Okay.  Which one?

A    All.

Q    All?  Does All have the word "natural" on
the label?

A    I -- yeah, I think it's called, like, All
Free & Clear.

Q    Okay.  I'm asking specifically about the
word "natural."  What other products have you

Page 115

1    another five or so minutes.

2             THE VIDEOGRAPHER:  Okay.

3    BY MR. ROTHSTEIN:

4        Q    Okay.  So let me ask you this.  You claim

5    that when you went to the store you saw the Smucker

6    Natural product on the shelf; is that right?

7        A    Yes.

8        Q    Okay.  And did you -- you claim that the --

9    the factors that influenced your decision at the time

10   were seeing the word "natural" and "made from natural

11   sources" and the green top of the jar; is that right?

12       A    Yes.

13       Q    Okay.  And you testified before that price

14   wasn't really something you were thinking about at

15   the time; is that right?

16             MR. STRAUB:  Objection.  Misstates prior

17   testimony.

18   BY MR. ROTHSTEIN:

19       Q    You tell me.  How did -- how did price

20   factor into your purchase decision of this product?

21             MR. STRAUB:  Objection.  Asked and answered.

22   BY MR. ROTHSTEIN:

23       Q    Go ahead.  You can answer.

24       A    As I mentioned earlier, price is one factor

25   when I make general purchasing decisions.  When I

Page 116

1    purchased this product in particular, it was not a
2    main factor.  The main factor that made my decision
3    to purchase it was the natural claim on the front of
4    the label.
5        Q    Was price a factor at all?
6            MR. STRAUB:  Objection.  Same thing.
7    BY MR. ROTHSTEIN:
8        Q    You can answer.
9        A    I mean, I'm sure if it was, like, $50, I
10    probably would've put it down.  But if it was a
11    couple dollars more than comparable products, that
12    doesn't make a difference to me, so ...
13        Q    Yeah.  Okay.  Can you scroll down to
14    paragraph 17, please.
15        A    Yes.
16        Q    All right.  In paragraph 17, you state, "The
17    Products' front labels contain images of fresh fruit
18    and prominently represent that the Products are
19    'natural' and 'made with ingredients from natural
20    sources' thereby misleading reasonable consumers into
21    believing that the Products contain only natural
22    ingredients and are free from artificial
23    ingredients."  Do you see that?
24        A    Yes.
25        Q    Did I read that correctly?

Page 124

```
1     that you physically purchased and handed over to your
2     attorneys to photograph and then include in this
3     complaint; right?
4          A     Correct.
5          Q     This is an image that they probably found on
6     the internet; is that right?
7          A     Yes.
8          Q     Okay.  Now, scroll back to paragraph 11.
9     You allege that Plaintiff Adina Ringler purchased the
10    Smucker's Natural Triple Berry Fruit Spread product;
11    right?
12         A     Right.
13         Q     Okay.  So we're looking at the label that --
14    of -- that you believe you purchased; right?
15         A     I know I purchased, but yes.
16         Q     Well, you didn't keep the bottle; right?
17         A     Correct.
18         Q     You didn't keep your receipt; right?
19         A     Correct.
20         Q     You have no tangible proof that you actually
21    purchased the product; right?
22         A     Correct.
23         Q     Okay.  Now, I'm going to ask you to do this.
24               MR. ROTHSTEIN:  Jorge, could you please mark
25    as the next exhibit Tab 27, please?
```

Page 199

1    document.

2    BY MR. ROTHSTEIN:

3        Q    You can answer, please.

4        A    Do I believe those ingredients are

5    artificial?  I believe one ingredient on that

6    ingredient list is not derived of natural sources.

7        Q    I asked you if the Smucker Natural product

8    you're looking at is artificial.

9        A    It contains a product -- an ingredient that

10   is artificial, so it doesn't meet the claim of being

11   a natural product.

12       Q    Do you believe that the Smucker product

13   you're looking at right now is artificial?

14       A    Yes, because it has an ingredient that is

15   not natural.

16       Q    So you believe that the entire product is

17   not -- sorry.  You believe that the entire product is

18   artificial?

19            MR. STRAUB:  Objection.

20            THE WITNESS:  I believe the label is

21   misleading.

22   BY MR. ROTHSTEIN:

23       Q    No.  I asked you a question.  Do you believe

24   the Smucker Natural product that you're looking at

25   here on page 6 of your complaint is artificial?

Page 200

1       A     I believe it has an artificial ingredient.

2       Q     You've got to answer my question.  Do you

3    believe the product is artificial?

4             MR. STRAUB:  Objection.  Asked and answered.

5    BY MR. ROTHSTEIN:

6       Q     Please answer the question.

7       A     I believe, because the citric acid is not

8    derived from natural sources, then the product is not

9    natural.

10      Q     I asked you if you believed the product in

11   its entirety is artificial.

12      A     I believe the component of citric acid makes

13   the claim that this is a natural product untrue, so

14   in that regard, yes, I do believe it is artificial.

15      Q     The entire product you believe is

16   artificial?

17            MR. STRAUB:  Objection.  This is harassment.

18   BY MR. ROTHSTEIN:

19      Q     Is that your testimony?

20      A     That's not my testimony.  My testimony is --

21      Q     Thank you.

22      A     -- mislabeled --

23      Q     All right.  You told me what I needed to

24   hear.  Thank you.

25            All right.  Okay.  I would like to show you

Page 208

1    BY MR. ROTHSTEIN:

2        Q    Go ahead.

3        A    He knows I'm on a phone call today.  He -- I

4    don't have -- he doesn't have any knowledge of this

5    case or anything.  I -- it's only spoken to my

6    lawyers and that's it.

7        Q    Okay.  Let's go to No. 2.  Scroll down to

8    the bottom of page 5, please.

9        A    Okay.

10       Q    Okay.  The first question is "Identify every

11   purchase you made of the product."  Did you just make

12   one purchase of the product?

13       A    Yes.

14       Q    And that was in May of 2024?

15       A    Correct.

16       Q    Okay.  Then it asks what are the factors

17   that you considered in deciding to purchase the

18   product.  Do you see?

19       A    What line?

20       Q    24, 25.

21       A    Yes.

22       Q    Okay.  I think we established before -- if

23   we go back to the complaint and the picture we were

24   looking at in the complaint, we talked about the

25   label, the blue -- or, rather, the green top; right?

Page 209

1       A    The word "natural," yes.

2       Q    Natural.  Anything else?

3       A    I'm not looking at it now because it takes a

4    while to go back and forth, but the statement that

5    says "of natural sources."

6       Q    Okay.  Anything else?

7       A    That's it.

8       Q    Okay.  You indicated where you purchased the

9    product or you think you purchased the product.  Do

10   you remember what that is?

11      A    Yes.

12      Q    What is it?

13      A    Smart & Final in Northridge.

14      Q    And you testified you do not recall the

15   price you paid for the product?

16      A    Correct.

17      Q    Okay.  And I think that it's fair to say

18   that if you threw the product away, that you don't

19   know what the SKU number was?

20      A    Correct.

21      Q    Do you know what a SKU number is?

22      A    The bar code.

23      Q    The Stock Keeping Unit.

24      A    Uh-huh.

25      Q    Okay.  And is it fair to say that you also

Page 211

1      It says --
2          A    Okay.
3          Q    -- "Identify every labeling, advertising, or
4      marketing statement made by Defendant that You relied
5      on in deciding whether to purchase the Product."
6      Okay?  Do you see this?
7          A    Yes.
8          Q    Okay.  So I think you testified that you
9      relied on the blue or -- I keep saying blue -- the
10     green cap; is that right?
11         A    Uh-huh.
12         Q    Is that a yes?
13         A    I primarily relied upon the word "natural,"
14     which is the largest part of the front label.
15         Q    You got to --
16         A    Below it --
17         Q    -- answer.
18         A    The below it, "from natural sources."
19         Q    I'm just asking --
20         A    And the overall green --
21         Q    Okay.
22         A    -- esthetic of the label.
23         Q    Ms. Ringler, just -- just work with me.
24              MR. STRAUB:  Ron, don't cut her off.  She's
25     speaking.

Page 212

```
 1              MR. ROTHSTEIN:  I --
 2              MR. STRAUB:  Please.
 3     BY MR. ROTHSTEIN:
 4        Q    -- need you to answer the question that I'm
 5     asking, okay, because I'll get to that.  Okay.
 6              The first thing you said you relied on was
 7     the green top; is that right?
 8        A    The first thing I relied upon was the word
 9     "natural" on the front of the label.
10        Q    I'll rephrase the question.  One of the
11     things you said you relied upon was the green top;
12     right?
13        A    Correct.
14        Q    Another thing you said you relied on was
15     your familiarity with the Smucker's name; is that
16     right?
17              MR. STRAUB:  Objection.  Mischaracterizes
18     testimony.
19     BY MR. ROTHSTEIN:
20        Q    Go ahead.
21        A    I don't recall saying that.
22        Q    I think you said you recognized the Smucker
23     name; right?
24        A    I do recognize it.
25              MR. STRAUB:  Objection.
```

Page 213

1              THE WITNESS:  But that wasn't a factor in me

2      choosing this product.

3      BY MR. ROTHSTEIN:

4          Q    Well, you said that you relied on the

5      "natural" part of the label as well?

6          A    Correct.

7          Q    And "from natural sources"; right?

8          A    Correct.

9          Q    And you also said you saw the non-GMO

10     statement; is that --

11             MR. STRAUB:  Object.

12     BY MR. ROTHSTEIN:

13         Q    -- right?

14             MR. STRAUB:  Objection.

15     BY MR. ROTHSTEIN:

16         Q    Go ahead.  You can answer.

17         A    I never said that.

18         Q    You said you saw it.

19         A    Maybe when you pointed it out, I said, yeah,

20     I could see that, but I never --

21         Q    And you relied on --

22         A    That would never -- I never -- it was not in

23     my consciousness when I purchased the product.

24         Q    Okay.  And you relied on the ingredient

25     panel; is that right?

Page 225

```
 1        Q    Okay.  And there's nothing that stuck out to
 2    you on the label that caused you to want to buy it?
 3            MR. STRAUB:  Objection.  Asked and answered.
 4    Verging on harassment.
 5    BY MR. ROTHSTEIN:
 6        Q    Go ahead, please.
 7        A    The flavor caught my eye.
 8        Q    So none of the claims on the label?
 9        A    Wild blueberry.
10            MR. STRAUB:  Objection.  This --
11            THE WITNESS:  That's it.
12    BY MR. ROTHSTEIN:
13        Q    All right.  All right.  Go to No. 9, please.
14    What I'd like to know from you is how do you believe
15    you've been injured in this case?
16        A    I believe I purchased a prod- -- product
17    that I probably wouldn't have if I -- if there was
18    truth in the labeling.
19        Q    Okay.  So you're saying that you would have
20    not purchased the product at all?
21        A    I don't know, but I do know that the natural
22    claim on the label is what enticed me to buy this
23    product.
24        Q    Okay.  So let me just get to the bottom of
25    this story here.  You purchased the product in May of
```

Page 227

1     purchase of the Smucker Natural Triple Berry Fruit

2     Spread that you purchased, that you used in its

3     entirety and you enjoyed without issue, how have you

4     been damaged?

5                    MR. STRAUB:  Objection.  Misstates prior

6     testimony.

7     BY MR. ROTHSTEIN:

8          Q     Go ahead.

9          A     Economic damages and mistrust in product

10    labeling.

11         Q     What economic damages?  Describe them.

12                MR. STRAUB:  Objection.  Requires legal --

13                MR. ROTHSTEIN:  No.  She used the term.

14    BY MR. ROTHSTEIN:

15         Q     Please describe it.

16         A     I purchased a product I may not have

17    otherwise purchased if the label was not misleading.

18         Q     Okay.  So what do you want?

19                MR. STRAUB:  Objection.  Vague.

20                THE WITNESS:  I want truthful labeling.

21    BY MR. ROTHSTEIN:

22         Q     You just mentioned economic damages or

23    injury.  What economic damages do you seek?

24         A     I purchased a product that was mislabeled or

25    untruthfully labeled, so I believe that that warrants

Page 241

1                 C E R T I F I C A T E
2
3
4    STATE OF CALIFORNIA        )
5                               )    ss:
6    COUNTY OF LOS ANGELES      )
7
8

9            I HEREBY CERTIFY that the foregoing transcript
     was taken before me; that I was then and there a
     Registered Professional Reporter and Registered Merit
10   Reporter, License No. 14315 in the State of California;
     that the witness before testifying was duly sworn by me
11   to testify to the whole truth; that the questions
     propounded by counsel and the answers of the witness
12   thereto were taken down by me in shorthand and thereafter
     transcribed under my direction; and that the foregoing
13   pages contain a full, true, and accurate transcript of
     all deposition testimony and proceedings had, all done to
14   the best of my skill and ability.
15           I FURTHER CERTIFY that I am in no way related
     to, nor employed by any of the parties hereto, nor am I
16   in any way interested in the outcome.
17           I have no direct contract with any party in
     this action and my compensation is based solely on the
18   terms of my subcontractor agreement.
19           Nothing in the arrangements made for this
     proceeding impacts my absolute commitment to serve all
20   parties as an impartial officer of the court.
21           DATED this 18th day of February, 2026.
22
23

24
             MARCELLA L. DAUGHTRY, RPR, RMR, CRR
25           CA CSR 14315