Ronald Rothstein (*pro hac vice*)
RRothste@winston.com
WINSTON & STRAWN LLP
300 North LaSalle Drive, Suite 4400
Chicago, Illinois 60654-3406
Telephone: +1 312-558-5600

Jared Kessler (*pro hac vice*)
JRKessler@winston.com
WINSTON & STRAWN LLP
200 South Biscayne Boulevard, Suite 2400
Miami, Florida 33131
Telephone: +1 305-910-0500

Shawn R. Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, California 90071
Telephone: +1 213-615-1700

*Attorneys for Defendant*
*The J. M. Smucker Company*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADINA RINGLER, KRISTA ROBLES, JAY SMITH, and JANA RABINOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE J. M. SMUCKER COMPANY,<br><br>Defendant. | Case No. 2:25-cv-01138-AH-E<br><br>Hon. Anne Hwang<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR EXTENSION TO FILE OPPOSITION TO CLASS CERTIFICATION MOTION**<br><br>Hearing Date: March 25, 2026<br>Time: 1:30 p.m.<br>Courtroom: 9C, 9th Floor |

## I. Introduction

Plaintiffs' opposition to Defendant's Motion for Extension to File Opposition to Class Certification Motion ("Motion") confirms what Defendant's Motion already established: the scope and complexity of this class certification briefing necessitate additional time and space for Defendant to prepare an adequate response. Rather than address the substance of Defendant's requests, Plaintiffs resort to procedural objections and mischaracterizations of the record, while simultaneously using their opposition to seek their own 60-day extension without filing a separate motion, meeting and conferring with Defendant, or complying with the same Local Rules they accuse Defendant of violating. None of Plaintiffs' arguments withstands scrutiny, and the Court should grant Defendant's Motion in its entirety.

## II. Argument

### A. Defendant Complied with the Local Rules

Plaintiffs insist that Defendant's Motion should be denied for alleged violations of Local Rules 6–1 and 7–3. Pls.' Opp'n at 2. This argument is meritless. The parties met and conferred via videoconference on February 26, 2026, the day after Plaintiffs filed their Motion for Class Certification and expert declarations. Defendant exhausted the meet and confer process and filed its Motion the following day after it became abundantly clear that the parties would not be able to agree.

Plaintiffs oddly assert that Defendant acted *too* quickly in requesting a meet and confer within "minutes" of Plaintiffs' filing. *See* Pls.' Opp'n at 2. But promptly requesting to meet and confer after receiving the opening memorandum and three expert declarations totaling 270 pages and countless references and exhibits is hardly unusual, especially when the substance of the meet and confer request was not discussed until the following day. And Plaintiffs cannot have it both ways: faulting Defendant for acting without delay while ignoring that the compressed timeline left Defendant no alternative but to act with haste. With only 42 days until the Opposition deadline of April 8, 2026, waiting seven days to

file would have further narrowed the already limited window to secure a hearing before the deadline passed, and as discussed below, the only available hearing dates required immediate action. The speed with which Defendant moved only reflects the urgency of the situation.

Plaintiffs' opposition also mischaracterizes the parties' meet and confer. In response to Defendants' request for a 60-day extension to file the Opposition to Class Certification, expert reports, depose their experts and prepare *Daubert* motions, Plaintiffs countered that they would agree only to Defendants having 60 *total* days after the Class Certification filing (a mere 18-day extension from the existing deadline), conditioned entirely on Defendants agreeing to grant Plaintiffs 60 days for their reply (a 45-day extension from their existing deadline). This counteroffer was a non-starter and not made in good faith, particularly since the current scheduling order properly contemplates a much shorter and standard briefing schedule for the reply. Plaintiffs now complain that Defendant did not accept this disproportionate counterproposal, but a party is not required to accept an unreasonable offer simply because one is extended, especially when it is clear from the tone and tenor of the conversation that the offer was not serious.

This is only reinforced by the fact that counsel for Defendant contacted counsel for Plaintiffs on March 9, 2026, to further understand their surprising assertion in their opposition that they were open to compromise. At the supplemental meet and confer, Defendant asked what compromise Plaintiffs had in mind, and the response was identical to what was offered at the February 26 meet and confer. Defendant then suggested that Plaintiffs agree to a 40-page limit and a 60-day extension for Defendant and a 30-day extension for Plaintiffs. Plaintiffs flatly rejected the proposal, and when asked if they had a counter, they responded that they had none. The meet and confer ended without any compromise, further cementing Defendant's conclusion that Plaintiffs' February 26 offer was not made in good faith.

With respect to Local Rule 6–1, Defendant acknowledged in its Motion the need for

a shortened timeline and expressly requested that the Court allow for the March 25, 2026 hearing date or another date in advance of the April 8, 2026 Opposition deadline. Defendant investigated all available dates and would have noticed the Motion for hearing on April 1, 2026, but that date was not available on the Court's calendar. The circumstances required prompt action, as any delay in seeking relief would have rendered the Motion moot. Had Defendant instead noticed the Motion for April 8, 2026—the date Defendant's Opposition was due—the hearing would have come too late to provide any meaningful relief. Defendant acted transparently and in good faith by identifying the issue and requesting the Court's guidance. Plaintiffs' suggestion that Defendant engaged in a "deliberate effort to create a procedural disadvantage" is unfounded. Pls.' Opp'n at 3:2. To the contrary, Defendant promptly notified Plaintiffs of the need for an extension, met and conferred the following day, and filed its Motion only after it became clear the parties could not agree. The compressed timeline was a product of necessity, not gamesmanship, as Defendant was duty-bound to move as quickly as possible under the Local Rules.

### B. Good Cause Exists for a 60-Day Extension

Defendant provided six compelling reasons why an extension is appropriate here in its Motion. Further underscoring those reasons is the fact that Plaintiffs have had over a year since they filed the Class Action Complaint to carefully consider and prepare their Class Certification Motion. To suggest Defendant needs only six weeks to oppose class certification, file expert reports, depose their experts, and draft three *Daubert* motions is disingenuous. Pls.' Opp'n at 3. The prior schedule could not have accounted for the actual volume, complexity, and deficiencies of the Class Certification Motion and supporting declarations.

The three expert reports collectively total 270 pages, spanning conjoint survey methodology, damages calculations, and nutrition science, citing over 100 combined sources—all disclosed for the first time on February 25, 2026. Defendant must now identify and retain rebuttal experts, review the voluminous materials, and prepare rebuttal reports—

a process that cannot reasonably be completed in less than a month from today.

Plaintiffs dismiss these concerns by arguing they filed expert "declarations" rather than "reports," and that formal reports are not due until October 14, 2026. Pls.' Opp'n at 3. This distinction is irrelevant. Regardless of labeling, the three submissions are detailed reports spanning hundreds of pages that form the backbone of Plaintiffs' Motion, and Defendant must substantively respond to and, where appropriate, challenge them under *Daubert*. Further, Plaintiffs' Motion contains substantive differences from the allegations in their First Amended Complaint that warrant analysis and response, including completely changing their theory about what constitutes "natural" citric acid.

Plaintiffs also contend that Defendant's deposition concerns are "unavailing" because counsel agreed to accept service of subpoenas. Pls.' Opp'n at 3. But the issue is not service—it is that the reports are facially deficient under Rule 26(a)(2)(B) because documents referenced and relied upon were not produced. Defendant cannot conduct meaningful depositions until it has received all materials upon which the experts relied. Their apparent unwillingness to serve those documents until the expert witnesses arrive at their deposition has necessitated the service of formal subpoenas on the experts specifying that the documents should be served at least 5 business days before their respective depositions. And the depositions of these experts must be conducted in this compressed timeframe concurrently with all the other activities described in the motion and herein in detail.

Finally, Plaintiffs' assertion that Defendant should not need 60 days to review "five documents and three emails" from a third-party supplier entirely misses the point. Pls.' Opp'n at 4. These documents were produced for the first time on February 25, 2026—the same day Plaintiffs filed their Motion—and were quoted in a key argument therein. Defendant must evaluate these materials, potentially depose relevant witnesses, and assess their impact on class certification. That Plaintiffs' counsel possessed these documents since at least December 2025 yet withheld them until *after* filing their class certification motion

only underscores the need for additional time. And Plaintiffs offer no reason why they held onto the documents, which leads to the inescapable conclusion that they intended to disadvantage Defendant.

### C. Good Cause Exists for a Word-Limit Extension

Plaintiffs argue that parity requires holding Defendant to the same 7,000-word limit, but the opposing party's burden is inherently greater. Defendant must respond to Plaintiffs' arguments across four causes of action under two states' laws, address 270 pages of expert material, present arguments against certification, and satisfy Rule 23(a) and (b) as to both the California and New York classes—each involving distinct legal standards.

None of the cases Plaintiffs cite involved an opposition of comparable complexity. The complexity of this motion is precisely the type of circumstance that warrants an expanded word limit. Requiring Defendant to compress its opposition to 7,000 words would deprive the Court of a full and fair presentation of the issues and would prejudice Defendant far more than any marginal increase in briefing length would prejudice Plaintiffs.

### D. Plaintiffs May Not Seek Affirmative Relief in Their Opposition

Plaintiffs' opposition does not merely oppose Defendant's Motion; Plaintiffs affirmatively request that the Court adopt Plaintiffs' own proposed briefing schedule, including a 60-day extension of their Reply deadline from April 29, 2026, to June 29, 2026. Pls.' Opp'n at 6–7. It is well established that a party may not use an opposition brief to request affirmative relief; rather, it must first meet and confer, and such relief must be sought by a separately noticed motion that complies with the applicable procedural rules. L.R. 7–3; L.R. 6–1; *see RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D. 461, 530 (C.D. Cal. Nov. 2, 2022) ("[A] request for affirmative relief is not proper when raised for the first time in an opposition.").

Plaintiffs filed no such motion. Nor did they meet and confer with Defendant regarding their proposed 60-day extension before seeking it from the Court—the very same

procedural requirement Plaintiffs accuse Defendant of violating. By improperly embedding their own scheduling requests within an opposition, Plaintiffs deprived Defendant of the opportunity to respond through proper briefing and have circumvented the procedural safeguards the Local Rules require.

Plaintiffs' request is also premature; Defendant has not yet filed its Opposition, expert reports, or *Daubert* motions, and Plaintiffs therefore have no basis to assess whether additional time for their Reply is even necessary. If Plaintiffs ultimately need more time after reviewing Defendant's filings, the proper course is to file their own motion at that time and not to inappropriately and preemptively secure relief through their opposition. Of course, it would be improper for Plaintiffs to introduce new arguments or evidence on reply, so it is not even clear why they would need an equal extension of time. *See FT Travel—New York, LLC v. Your Travel Center, Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. June 26, 2015) ("Courts decline to consider arguments that are raised for the first time in reply.").

The irony is not lost on Defendant. Plaintiffs devote much of their Opposition to criticizing Defendant's alleged procedural shortcomings and request for a 60-day extension, yet Plaintiffs themselves made no attempt to comply with Local Rules 6–1 or 7–3 before requesting their own 60-day extension. If any party's conduct warrants scrutiny, it is Plaintiffs'—not Defendant's. The Court should decline to grant such relief that Plaintiffs failed to properly raise in their own noticed motion.

### E. Plaintiffs' Proposed Briefing Schedule Supports the Need for Additional Time

Plaintiffs' own proposed schedule undermines their position. While arguing Defendant needs no extension beyond April 8, 2026, Plaintiffs request a 60-day extension of their own reply deadline—from April 29 to June 29, 2026—citing only the need to depose rebuttal experts and brief *Daubert* motions.

These are a mere subset of the same tasks Defendant must complete before filing its

Opposition. If Plaintiffs need 60 additional days for a reply, expert depositions, and *Daubert* motions, it defies logic to argue Defendant does not need additional time to address those tasks plus the preparation of rebuttal expert reports.

### III. Conclusion

For the foregoing reasons, Defendant respectfully requests the Court grant its Motion for Extension, setting Defendant's deadline to June 8, 2026, and expanding the word limit to 14,000 words.

### CERTIFICATION

I certify that the parties twice met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated: March 10, 2026        WINSTON & STRAWN LLP

By: */s/ Ronald Rothstein*
Ronald Rothstein (*pro hac vice*)
RRothste@winston.com
WINSTON & STRAWN LLP
300 North LaSalle Drive, Suite 4400
Chicago, Illinois 60654-3406
Telephone: +1 312-558-5600

Jared Kessler (*pro hac vice*)
JRKessler@winston.com
WINSTON & STRAWN LLP
200 South Biscayne Boulevard, Suite 2400
Miami, Florida 33131
Telephone: +1 305-910-0500

Shawn R. Obi (SBN: 288088)
SObi@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, California 90071
Telephone: +1 213-615-1700

*Attorneys for Defendant
The J. M. Smucker Company*

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Winston & Strawn LLP certifies that this brief contains 2,084 words, which complies with the word limit of L.R. 11–6.1.

Dated: March 10, 2026

WINSTON & STRAWN LLP

By: /s/ Ronald Rothstein
Ronald Rothstein (*pro hac vice*)
RRothste@winston.com
WINSTON & STRAWN LLP
300 North LaSalle Drive, Suite 4400
Chicago, Illinois 60654-3406
Telephone: +1 312-558-5600

*Attorney for Defendant
The J. M. Smucker Company*